**EXHIBIT A**

# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

                      :

UNITED STATES OF AMERICA

                      :

       - v. -

                      :

REZA ZARRAB,
    a/k/a "Riza Sarraf,"       :
CAMELIA JAMSHIDY,
    a/k/a "Kamelia Jamshidy," and :
HOSSEIN NAJAFZADEH,

                      :

           Defendants.

                      :

- - - - - - - - - - - - - - - - - -x

**SUPERSEDING
INDICTMENT**

S1 15 Cr. 867 (RMB)



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 30 2016

## BACKGROUND

### The International Emergency Economic Powers Act

    1.    The International Emergency Economic Powers Act
("IEEPA"), codified at Title 50, United States Code, Sections
1701-1706, confers upon the President authority to deal with
unusual and extraordinary threats to the national security and
foreign policy of the United States.  Section 1705 provides, in
part, that "[i]t shall be unlawful for a person to violate,
attempt to violate, conspire to violate, or cause a violation of
any license, order, regulation, or prohibition issued under this
title." 50 U.S.C. § 1705(a).

    2.    Beginning with Executive Order No. 12170, issued
on November 14, 1979, the President found that "the situation in
Iran constitutes an unusual and extraordinary threat to the
national security, foreign policy and economy of the United

States and declare[d] a national emergency to deal with that threat."

       3.    On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations (renamed in 2013, the Iranian Transactions and Sanctions Regulations, the "ITSR") implementing the sanctions imposed by the Executive Orders.

       4.    The ITSR, Title 31, Code of Federal Regulations, Section 560.204, prohibits, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States Person, of goods, technology, or services to Iran or the Government of Iran (with certain limited exceptions), including the exportation, reexportation, sale or supply of goods, technology or services

2

to a third country knowing that such goods, technology or services are intended for Iran or the Government of Iran, without a license from the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC").

5.    The ITSR further prohibit transactions that evade or avoid, have the purpose of evading or avoiding, cause a violation of, or attempt to violate the ITSR.  31 C.F.R. § 560.203.

6.    Appendix A to the ITSR contained a list of persons determined to be the Government of Iran.  At all times relevant to this Indictment, Bank Mellat was an Iranian state-owned bank on the list in Appendix A.  At all times relevant to this Indictment, the National Iranian Oil Company ("NIOC") was an Iranian Oil Company on the list in Appendix A.  At all times relevant to this Indictment, Naftiran Intertrade Company Ltd. ("NICO"), an Iranian company located in the United Kingdom and Naftiran Intertrade Company Sarl ("NICO Sarl"), an Iranian company located in Switzerland, were on the list in Appendix A.

7.    Bank Mellat and all of its branches and subsidiaries were designated by OFAC on or about October 25, 2007, as Specially Designated Nationals ("SDNs") under the ITSR, the Iranian Financial Sanctions Regulations ("IFSR"), 31 C.F.R. Part 561, and the Weapons of Mass Destruction Proliferators

3

Sanctions Regulations ("WMD Sanctions"), 31 C.F.R. Part 544. Mellat Exchange Company ("Mellat Exchange") was a money services business owned and controlled by Bank Mellat.  At all times relevant to this Indictment, Bank Mellat was an SDN.

8.    On or about July 12, 2012, OFAC designated Hong Kong Intertrade Company ("HKICO") as an SDN pursuant to the ITSR.  OFAC further identified NIOC as an agent or affiliate of Iran's Islamic Revolutionary Guard Corp ("IRGC") pursuant to Executive Order 13599 on or about September 24, 2012, and designated Seifollah Jashnsaz, chairman of NICO, NICO Sarl, and HKICO, as an SDN under the WMD Sanctions on or about May 23, 2012.  At all times relevant to this Indictment after on or about July 12, 2012, HKICKO was an SDN. At all times relevant to this Indictment after May 23, 2012, Jashnsaz was an SDN.  At all times relevant to this Indictment after September 24, 2012, NIOC was identified as an agent or affiliate of the IRGC.

### The Defendants

9.    At all times relevant to this Indictment, REZA ZARRAB, a/k/a "Riza Sarraf," the defendant, owned and operated a network of companies located in Turkey and in the United Arab Emirates, including a group of companies under Royal Holding A.S. ("Royal Holding"), a holding company in Turkey, Durak Doviz Exchange, a money services business in Turkey, and Al Nafees

4

Exchange LLC ("Al Nafees Exchange"), a money services business in the United Arab Emirates. The Royal Holding group of entities includes Royal Emerald Investments, among others.

10. At all times relevant to this Indictment, CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," the defendant, was an employee of REZA ZARRAB, a/k/a "Riza Sarraf," the defendant, at Royal Holding and related entities.

11. At all times relevant to this Indictment, HOSSEIN NAJAFZADEH, the defendant, was a senior officer at Mellat Exchange.

12. At all times relevant to this Indictment, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADHEH, the defendants, and others assisted Iranian individuals and companies, including Bank Mellat, Mellat Exchange, NIOC, HKNICO, and others, to evade U.S. sanctions by conducting international financial transactions using Turkish and Emirati companies on behalf of and for the benefit of these Iranian individuals and entities in order to conceal from U.S. banks and others that services were being provided to Iran, to the Government of Iran, and to agents or affiliates of the IRGC in violation of the IEEPA, the ITSR, and the IFSR.

5

## COUNT ONE

### (Conspiracy to Defraud the United States)

The Grand Jury charges:

13.   From at least in or about 2010, up to and including in or about 2015, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, to impair, impede, and obstruct the lawful and legitimate governmental functions and operations of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC") in the enforcement of economic sanctions laws and regulations administered by that agency.

### Overt Acts

14.   In furtherance of the conspiracy and to effect the illegal object thereof, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others committed the following overt acts, among others:

a.   On or about January 26, 2011, a co-

6

conspirator not named as a defendant herein ("CC-1"), an employee of Mellat Exchange, described in paragraph 7 above, sent an email to a second co-conspirator not named as a defendant herein ("CC-2"), an employee of Al Nafees Exchange, described in paragraph 9 above, with instructions for Al Nafees Exchange to make international financial transfers on behalf of Mellat Exchange.  Included in the instructions was a payment in the amount of approximately $953,288.85 to a company located in Canada ("Canadian Company-1") described as "transfer by MAPNA." MAPNA is a reference to MAPNA Group, an Iranian construction and power plant company.

      b.   On or about January 27, 2011, Royal Emerald Investments, a co-conspirator not named as a defendant herein, caused an international wire transfer from the UAE to Canadian Company-1 in the amount of approximately $953,289, which was processed by a United States bank ("U.S. Bank-1").  The wire transfer information provided to U.S. Bank-1 purported that the payment was related to fire equipment, but made no mention of MAPNA Group.

      c.   On or about February 28, 2011, CC-1 of Mellat Exchange sent an email to CC-2 of Al Nafees Exchange with instructions for making several international financial transfers, including four transfers in United States currency,

7

on behalf of Mellat Exchange.  Included in the instructions was
a payment in the amount of approximately $76,950 to a company
located in China ("Chinese Company-1"), identifying the
"Intermediary Bank" for the transaction as a bank located in the
United States ("U.S. Bank-2").

      d.  On or about March 1, 2011, CC-1 sent an
email to ZARRAB and to a co-conspirator not named as a defendant
herein ("CC-3"), an employee of Royal Holding, attaching a list
of the four U.S.-currency payment instructions for Mellat
Exchange described in paragraph 14(c) above.

      e.  On or about March 9, 2011, CC-1 of Mellat
Exchange sent an email to CC-2 of Al Nafees Exchange with
instructions for making several international financial
transfers in United States currency on behalf of Mellat
Exchange.  Included in the instructions was a payment in the
amount of approximately $9,225 to a company located in Hong Kong
("Hong Kong Company-1").

      f.  On or about May 24, 2011, CC-1 of Mellat
Exchange sent an email to ZARRAB, JAMSHIDY, and CC-3 of Royal
Holdings with the subject line, in Farsi, "very very
urgent!!!!!!!!!!"  Attached to the email were (1) a portion of a
SWIFT message addressed to the attention of "OFAC/Compliance
Unit" indicating that an international wire transfer in the

8

amount of approximately €3,711,365 had been stopped by U.S.
Bank-1 because of global sanctions; (2) a statement that the
payment related to services provided in connection with
development of a gas field in Iran; and (3) a letter from Mellat
Exchange to ZARRAB stating in part, in Farsi:

> Based on the results of the continuous
> follow-ups regarding the above transfer, and
> your suggestion regarding communication with
> the OFAC agency in Turkey regarding
> facilitating transfers or returns thereof,
> the information received from the credit
> applicant is reflected exactly for follow up
> and appropriate action.

   g. On or about May 31, 2011, JAMSHIDY sent an
email to CC-2 of Al Nafees Exchange attaching a letter from
Mellat Exchange, signed by NAJAFZADEH, to Al Nafees Exchange
requesting the delivery of approximately $30 million in U.S.
currency to Mellat Exchange in Tehran, Iran.

   h. On or about June 1, 2011, CC-1 of Mellat
Exchange sent an email to ZARRAB with the subject line, in
Farsi, "very urgent" and attaching, among other things, (1) a
portion of a SWIFT message noting that a payment in the amount
of approximately $9,225 had been blocked by a United States bank
("U.S. Bank-3") "pursuant to the sanctions imposed by the U.S.
Gov Dept. of Treasury OFAC"; (2) a letter from Hong Kong
Company-1's bank advising that a payment to Hong Kong Company-1
from Asi Kiymetli Madenler Turizm Otom in the amount of

9

approximately $9,200 had been blocked by U.S. Bank-3 because of OFAC; (3) a portion of a second SWIFT message noting that payment of a second international transfer to Hong Kong Company-1 in the amount of approximately $35,000 had been blocked by a United States bank ("U.S. Bank-4") as a result of OFAC sanctions; (4) a letter from Mellat Exchange dated May 15, 2011, to a relative of ZARRAB's at Al Nafees Exchange, signed by NAJAFZADEH, concerning the two blocked payments; and (5) a letter from Mellat Exchange dated June 1, 2011, to Durak Doviz Exchange, signed by NAJAFZADEH, concerning the two payments "through the Nafees Exchange," which stated in part, in Farsi:

> [T]he above amounts were blocked by OFAC, and despite repeated follow-ups to execute these transfers by providing all necessary documents, unfortunately, the transfers have not been executed and deposited in the beneficiary's account. Therefore, despite the lack of communication with you regarding the covered topic, and only with regard to your excellent achievements regarding similar prior cases, it is requested: Regarding the passage of more than 2 months, and the lack of any results from the follow-ups of Nafiss Exchange, please arrange that with your guidance this case can be closed.

i. On or about December 3, 2011, ZARRAB and NAJAFZADEH received an email attaching a draft letter in Farsi addressed to the General Manager of the Central Bank of Iran and prepared for ZARRAB's signature, stating in part:

The role that the Supreme Leader [the

10

Ayatollah Khamenei] and the esteemed officials and employees of Markazi Bank [the Central Bank of Iran] play against the sanctions, wisely neutralizes the sanctions and even turns them into opportunities by using specialized methods. It is no secret that the trend is moving towards intensifying and increasing the sanctions, and since the wise leader of the Islamic Revolution of Iran has announced this to be the year of the Economic Jihad, the Zarrab family, which has had half a century of experience in foreign exchange, while establishing branches in Turkey, United Arab Emirates, Russia, and Azerbaijan, considers it to be our national and moral duty to declare our willingness to participate in any kind of cooperation in order to implement monetary and foreign exchange anti-sanction policies . . . .

Hoping that the efforts and cooperation of the zealous children of Islamic Iran will result in an upward increase in the progress of our dear nation in all international and financial arenas.

j. On or about January 7, 2013, ZARRAB sent an email to a co-conspirator not named as a defendant herein ("CC-4"), an employee of Royal Holding, attaching instructions for an international financial transfer from Turkish company ECB Kuyumculuk Ic Vedis Sanayi Ticaret Limited Sirketi in the amount of approximately $600,000 to an energy company located in Turkmenistan ("Turkmeni Company-1").

k. On or about January 16, 2013, ZARRAB sent an email to a co-conspirator not named as a defendant herein ("CC-5") attaching a SWIFT message for a payment in the amount

11

of approximately $1,000,000 from Gunes General Trading LLC, a company located in the U.A.E., to Turkmeni Company-1.

l.   On or about January 16, 2013, Gunes General Trading LLC, a co-conspirator not named as a defendant herein, caused an international wire transfer from the U.A.E. to Turkmeni Company-1 in the amount of approximately $999,907, which was processed by a United States bank ("U.S. Bank-5").

m.   On or about November 11, 2013, a co-conspirator not named as a defendant herein ("CC-6") sent an email to ZARRAB attaching (1) a letter from HKICO, signed by Seifollah Jashnsaz and stamped "CONFIDENTIAL," addressed to HKICO's bank concerning an approximately €100 million transfer to HKICO's account; (2) a letter from NIOC concerning an international financial transfer; and (3) a letter from Turkmeni Company-1 dated May 30, 2013, addressed to the Deputy Minister of Iran's Oil Ministry, instructing that payment to Turkmeni Company-1 be made in U.S. currency.

(Title 18, United States Code, Section 371).

## COUNT TWO

### (Conspiracy to Violate the
### International Emergency Economic Powers Act)

The Grand Jury further charges:

15.   From at least in or about 2010, up to and including in or about 2015, in the Southern District of New

12

York, Turkey, the United Arab Emirates, and elsewhere, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to violate, and to cause a violation of, licenses, orders, regulations, and prohibitions issued under the International Emergency Economic Powers Act, Title 50, United States Code, Sections 1701 to 1707, Part 560 of Title 31, Code of Federal Regulations, and Part 561 of Title 31, Code of Federal Regulations.

16. It was a part and an object of the conspiracy that REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, would and did export, reexport, sell, and supply, and cause to be exported, reexported, sold, and supplied, directly and indirectly, from the United States, services, to wit, international financial transactions, to Iran and to the Government of Iran, without first obtaining the required approval of the Office of Foreign Assets Control, within the United States Department of Treasury, in violation of Title 50, United States Code, Sections 1701 to 1707, and Title 31, Code of Federal Regulations, Section 560.204.

13

17.   It was further a part and an object of the conspiracy that REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, would and did engage in a transaction that evaded and avoided, had the purpose of evading and avoiding, caused a violation of, and attempted to violate one or more of the prohibitions set forth in Title 31, Code of Federal Regulations, Part 560, in violation of Title 50, United States Code, Sections 1701 to 1707, and Title 31, Code of Federal Regulations, Section 560.203.

### Overt Acts

18.   In furtherance of the conspiracy and to effect the illegal objects thereof, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, committed the overt acts set forth in paragraph 14 of this Indictment, among others, which are fully incorporated by reference herein.

(Title 50, United States Code, Section 1705;
Title 31, Code of Federal Regulations, Sections 560.203,
560.204, 560.205, 561.202, & 561.205.)

14

## COUNT THREE

### (Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

19. From at least in or about 2010, up to and including in or about 2015, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

20. It was a part and an object of the conspiracy that REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, would and did knowingly execute and attempt to execute a scheme or artifice to defraud a financial institution, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

15

**Overt Acts**

21.   In furtherance of the conspiracy and to effect the illegal object thereof, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, committed the overt acts set forth in paragraph 14 of this Indictment, among others, which are fully incorporated by reference herein.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR

**(Conspiracy to Commit Money Laundering)**

The Grand Jury further charges:

22.   From at least in or about 2010, up to and including in or about 2015, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(2)(A).

23.   It was a part and an object of the conspiracy that REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a

16

"Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds to places in the United States from and through places outside the United States, in amounts exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity, to wit, the illegal export of services to Iran as charged in Count Two of this Indictment and bank fraud as charged in Count Three of this Indictment, in violation of Section 1956(a)(2)(A) of Title 18, United States Code.

## Overt Acts

24.  In furtherance of the conspiracy and to effect the illegal object thereof, REZA ZARRAB, a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, committed the overt acts set forth in paragraph 14 of this Indictment, among others, which are fully incorporated by reference herein.

(Title 18, United States Code, Section 1956(h).)

17

## FORFEITURE ALLEGATION

### (Counts Two and Three)

25.  As a result of committing the offenses alleged in
Counts Two and Three of this Indictment, REZA ZARRAB, a/k/a
"Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and
HOSSEIN NAJAFZADEH, the defendants, shall forfeit to the United
States, pursuant to Title 18, United States Code, Section
981(a)(1)(C) and Title 28, United States Code, Section 2461, all
property, real and personal, that constitutes or is derived from
proceeds traceable to the commission of the offenses alleged in
Counts Two and Three of this Indictment, including but not
limited to a sum of money representing the amount of proceeds
obtained as a result of the offenses.

### Substitute Assets Provision

26.  If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

    a)   cannot be located upon the exercise of due
diligence;

    b)   has been transferred or sold to, or
deposited with, a third person;

    c)   has been placed beyond the jurisdiction of
the court;

    d)   has been substantially diminished in value;
or

18

e) has been commingled with other property
which cannot be subdivided without
difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of said defendants up to the value of the above
forfeitable property.

### FORFEITURE ALLEGATION

### (Count Four)

27. As a result of committing the money laundering
offense alleged in Count Four of this Indictment, REZA ZARRAB,
a/k/a "Riza Sarraf," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy,"
and HOSSEIN NAJAFZADEH, the defendants, shall forfeit to the
United States, pursuant to Title 18, United States Code, Section
982, all property, real and personal, involved in the money
laundering offense and all property traceable to such property,
including but not limited to, a sum of money representing the
amount of property that was involved in the money laundering
offense or is traceable to such property.

### Substitute Assets Provision

28. If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

19

a)   cannot be located upon the exercise of due diligence;

b)   has been transferred or sold to, or deposited with, a third person;

c)   has been placed beyond the jurisdiction of the court;

d)   has been substantially diminished in value; or

e)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461.)

Foreperson

PREET BHARARA
United States Attorney

20

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**v.**

**REZA ZARRAB,**
**a/k/a "Riza Sarraf,"**
**CAMELIA JAMSHIDY,**
**a/k/a "Kamelia Jamshidy," and**
**HOSSEIN NAJAFZADEH,**

**Defendants.**

---

**SUPERSEDING INDICTMENT**

S1 15 Cr. 867 (RMB)

(18 U.S.C. § 371; 50 U.S.C. § 1705; 31
C.F.R. §§ 560.203, 560.205; 18 U.S.C.
§§ 1349, & 1956.)

---

PREET BHARARA
United States Attorney.

A TRUE BILL

_Foreperson._

---

3/30/16 - Filed Superseding Indictment.
A/W issued.

J Francis
USMJ