UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        v.

REZA ZARRAB, *et al.*,

           *Defendants*.

S1 15 Cr. 867 (RMB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REZA ZARRAB'S
MOTION TO RECUSE THE COURT**

BANCROFT PLLC
Viet D. Dinh
Jeffrey M. Harris
Edmund G. LaCour Jr.
500 New Jersey Avenue, NW
7th Floor
Washington, DC 20001

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Christine H. Chung
Adam M. Abensohn
51 Madison Avenue
22nd Floor
New York, NY 10010

BRAFMAN & ASSOCIATES, P.C.
Benjamin Brafman
Marc Agnifilo
Joshua D. Kirshner
767 3rd Avenue, 26th Floor
New York, NY 10017

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

BACKGROUND ...........................................................................................4

    A.    The May 2014 Symposium and Its Relation to the December 17, 2013 Cases ...............................................................................4

    B.    The Court's Remarks During the Istanbul Conference..............................8

    C.    The Court's Remarks Reported by the Turkish Media..............................9

    D.    The U.S. Prosecutors' Assertions of the Relevance of the December 17 Case  and the Steps Taken by the Turkish Government in Response .........................................................10

    E.    Recent Prosecution of YKK's Name Partners on Charges that They Plotted to  Overthrow the Turkish Government .......................................12

ARGUMENT ..............................................................................................14

CONCLUSION ...........................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>Cases</u>

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*,
  140 F.3d 898 (11th Cir. 1998) ..................................................................19

*Ligon v. City of New York*,
  736 F.3d 118 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014) ...................14, 19

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988)..........................................................................14, 19

*In re School Asbestos Litigation*,
  977 F.2d 764 (3d Cir. 1992)................................................................17, 18

*SEC v. Razmilovic*,
  738 F.3d 14 (2d Cir. 2013)..............................................................3, 14, 20

*Skoros v. City of New York*,
  437 F.3d 1 (2d Cir. 2006)........................................................................14

*United States v. Bayless*,
  201 F.3d 116 (2d Cir. 2000)................................................................13, 14

*United States v. S. Florida Water Mgmt. Dist.*,
  290 F. Supp. 2d 1356 (S.D. Fla. 2003) ..................................................18, 19

### <u>Rules / Statutes</u>

28 U.S.C. §455(a) ............................................................................13, 14, 19

### <u>Other Authorities</u>

*2014 Justice and Rule of Law Int'l Symposium Booklet* 12 (2014) ..................................... *passim*

*Erdogan Hit by Claims of Son's Corruption*, The Australian, Dec. 28, 2013, *available at*
  http://www.theaustralian.com.au/business/wall-street-journal/erdogan-hit-by-claims-
  of-sons-corruption/story-fnay3ubk-1226790745552...................................................5

*Ex-Economy Minister Traveled to Mecca With Private Jet of Key Suspect in Graft Probe*,
  Hürriyet Daily News (Jan. 3, 2014), http://www.hurriyetdailynews.com/ex-economy-
  minister-traveled-to-mecca-with-private-jet-of-key-suspect-in-graft-probe-
  report.aspx?pageID=238&nID=60534&NewsCatID=338 .......................................6

*Gülenist Prosecutor Intimidates Replacement Investigating Dec 17*, Daily Sabah, January
  19, 2015, *available at* http://www.dailysabah.com/politics/2015/01/19/gulenist-
  prosecutor-intimidates-his-replacement-investigating-dec-17 ................................7

*Rule of Law and Freedom of Press Under Attack in Turkey*, Facts on Turkey (May 9, 2014), http://factsonturkey.org/4772/rule-of-law-and-freedom-of-press-under-attack-in-turkey/..................................................................................................................2, 9, 15

*Turkey Frees Cabinet Ministers' Sons*, BBC News, Feb. 28, 2014, *available at* http://www.bbc.com/news/world-europe-26387522 ..................................................6

*Turkish Court Frees Key Corruption Suspects*, Al Jazeera, Feb. 28, 2014, *available at* http://www.aljazeera.com/news/europe/2014/02/turkish-court-frees-key-corruption-suspects-2014228134034119459.html ..................................................................15

A.Z, *A Challenge to Erdogan's Rule*, The Economist (Dec. 17, 2013), http://www.economist.com/blogs/charlemagne/2013/12/turkish-politics ..............................5

Tim Arango & Ben Hubbard, *Turkey Pursues Cleric Living in U.S., Blamed as Coup Mastermind*, N.Y. Times, July 19, 2016, http://www.nytimes.com/2016/07/20/world/europe/fethullah-Gülen-erdogan-extradition.html....................................................................................................................13

Tim Arango & Sebnem Arsu, *Graft Inquiry Intensifies Turkish Political Rivalry*, N.Y. Times, Dec. 17, 2013, *available at* http://www.nytimes.com/2013/12/18/world/europe/graft-inquiry-intensifies-turkish-political-rivalry.html?_r=0 ......................................................................................5

Tim Arango, *Corruption Scandal Is Edging Near Turkish Premier*, N.Y. Times, Dec. 25, 2013, *available at* http://www.nytimes.com/2013/12/26/world/europe/turkish-cabinet-members-resign.html. ......................................................................................................6

Daren Butler & Nick Tattersall, *Turkish Judicial Purge Brings Corruption Investigation to a Halt,* Reuters, (Jan. 22, 2014), http://www.reuters.com/article/us-turkey-corruption-idUSBREA0L1G220140122 ...............................................................6

Daren Butler & Robin Pomeroy, *Turkey Drops Corruption Case That Dogged Government*, Reuters (Oct. 17, 2014), http://uk.reuters.com/article/uk-turkey-corruption-idUKKCN0I623420141017......................................................................6

Eliana Dockterman, *Turkey Bans Twitter*,  Time, Mar. 20, 2014, *available at* http://time.com/32864/turkey-bans-twitter/ ...............................................................7

Daniel Dombey, *Turkish Prosecutor Drops High-Level Corruption Probe*, Financial Times, Oct. 18, 2014, http://www.ft.com/cms/s/0/63cf5042-56cb-11e4-a0b2-00144feab7de.html?siteedition=intl#axzz4IenMG1Ly ..........................................5, 6

Dincer Gokce, *Police Searches Yuksel-Karkin Law Partnership*, Hürriyet , July 23, 2016, *available at* http://www.hurriyet.com.tr/unlu-avukatlik-burosuna-polis-baskini-40163245 ........................................................................................................................13

Patricia Hurtado, et al., *Gold Trader at Heart of Turkey Graft Scandal Charged in U.S.*, Bloomberg (Mar. 22, 2016), http://www.bloomberg.com/news/articles/2016-03-22/gold-trader-charged-in-u-s-with-violating-iran-sanctions ............................................5, 17

International Symposium 2014, *Session 4 – Independent and Effective Judiciary*, YouTube (last visited Aug. 29, 2016), https://www.youtube.com/watch?v=nbQPIpNwo8U ...............................................8

Order of the Turkey Criminal Court of Peace, Miscellaneous Case No. 2016/233 Interrogation, July 22, 2016 ...............................................................................13

Humeyra Pamuk & Nick Tattersall, *Leaked Documents Purport to Reveal Turkish Graft Allegations*, Reuters (Mar. 14, 2014), http://www.reuters.com/article/us-turkey-corruption-idUSBREA2D1F420140314.............................................................5, 6

Humeyra Pamuk & Nick Tattersall, *U.S. Arrest of Iranian Gold Trader Reopens Wounds in Turkish Graft Scandal*, Reuters (Mar. 22, 2016), http://www.reuters.com/article/us-turkey-usa-corruption-idUSKCN0WO2X2 ...................................................................5, 16

Timothy Phelps, *From His Pa. Compound, Fethullah Gülen Shakes Up Turkey*, L.A. Times, Jan. 20, 2014, *available at* http://www.latimes.com/world/la-fg-turkey-Gulen-20140120-story.html ..................................................................................................7

Ragip Soylu, *Gülen Links Are Everywhere in Zarrab Case*, Daily Sabah, May 19, 2016, http://www.dailysabah.com/columns/ragip-soylu/2016/05/19/gulen-links-are-everywhere-in-zarrab-case ...................................................................................6, 15

Mehul Srivastava, *Turkey Crisis Put Jailed Millionaire at Heart of Gold Trail*, Bloomberg (Jan. 29, 2014), http://www.bloomberg.com/news/articles/2014-01-29/turkey-scandal-places-jailed-millionaire-at-center-of-gold-trail .........................................6

David Stuckey, *The Buzz From Turkey – YukselKarkin Shut Down*, CEE Legal Matters (July 25, 2016), http://www.ceelegalmatters.com/index.php/analysis/113-the-frame/5034-the-buzz-from-turkey-yukselkarkin-shut-down .................................................13

Tolga Tanış, *Judge Berman*, Hürriyet Daily News (May 23, 2016), *available at* http://www.hurriyetdailynews.com/judge-berman.aspx?pageID=449&nID=99508&NewsCatID=534 ...................................................12

Tolga Tanış, *The Zarrab Case and the Gülenists*, Hürriyet Daily News (May 17, 2016), http://www.hurriyetdailynews.com/the-zarrab-case-and-the-gulenists.aspx?PageID=238&NID=99253&NewsCatID=534. ...............................................12

Ceylan Yeginsu, *Turkey Issues a Warrant for Fethullah Gulen, Cleric Accused in Coup*, N.Y. Times, Aug. 4, 2016, http://www.nytimes.com/2016/08/05/world/europe/turkey-erdogan-fethullah-gulen.html?_r=0 ..............................................................................13

Ceylan Yegnsu, *Turkey Lifts Twitter Ban After Court Calls It Illegal*¸ N.Y. Times, Apr. 3, 2014, *available at* http://www.nytimes.com/2014/04/04/world/middleeast/turkey-lifts-ban-on-twitter.html...................................................................................................7

## INTRODUCTION AND SUMMARY OF ARGUMENT

At arraignment, the Court disclosed that it had participated in a legal conference in Istanbul, Turkey, in May 2014 entitled "International Symposium on the Rule of Law and Justice," which the Court reported as having been co-sponsored by the Turkish law firm Yüksel Karkin Küçük ("YKK") and the United Nations Local Compact.  The defense appreciated the Court's disclosure, which enabled it to investigate the circumstances surrounding that symposium to ensure that it would not affect Mr. Zarrab's rights.  It has become clear based on that investigation, and in light of recent events related to the coup attempt in Turkey, that it would unfortunately create an unavoidable appearance of partiality for the Court to continue to oversee this matter.  Mr. Zarrab therefore makes this application to respectfully request that the Court recuse itself from these proceedings.

The Turkish press has reported that your Honor, during the Istanbul conference and in an interview at the time, commented on prosecutions commenced in Turkey, beginning on December 17, 2013, of several persons alleged to be close to the Turkish government, which included Mr. Zarrab as the most prominent defendant.  These high-profile arrests led to a scandal in Turkey, in which government officials were accused of accepting bribes.  The Turkish government, for its part, viewed the prosecutions to be politically motivated and attributed them to followers of Fetullah Gülen, the imam who now resides in Pennsylvania.  In the next months, it reassigned, replaced, and dismissed thousands of police, prosecutors, and judges, including one of the prosecutors in Mr. Zarrab's case.  Mr. Zarrab, who had been arrested on December 17, 2013, was freed in February 2014, and thereafter exonerated.

These events and allegations were a primary focus of the Istanbul conference, during which your Honor led a panel on the topic of an "independent and effective judiciary."  Your Honor was also reported to have stated, during an interview with a Turkish newspaper, Today's Zaman, that

the "rule of law is under attack in Turkey because the independence of the judiciary has been challenged."  The Court was further quoted as saying, in reference to the December 17, 2013 cases (which had Mr. Zarrab as a lead defendant) and the Turkish government's responses, that those legal proceedings had been compromised and that "it is inappropriate to change the rules of the game while the game is taking place."[1]

The government in this case has repeatedly invoked the December 17, 2013 Turkish prosecution of Mr. Zarrab, and the surrounding scandal, and has adopted the same position concerning those events as previously attributed to your Honor in comments during the symposium your Honor attended in 2014.  In opposing bail, for instance, the U.S. prosecutors repeated allegations that Mr. Zarrab helped the Turkish government illicitly "change the rules" to "secure[] his release from Turkish prison by causing the wholesale reorganization of the Turkish prosecutor's office and police department through bribery."  (Gov't Opp. to Def. Mot. for Bail 25, ECF No. 18.) In its more recent opposition to Mr. Zarrab's Motion to Dismiss, the U.S. prosecutors alluded again to Mr. Zarrab's purported influence with Turkish government officials.  While Mr. Zarrab rejects any suggestion that he wields undue influence over Turkish officials, or that the charges brought on December 17, 2013 were dismissed on any grounds other than his innocence, it is undeniable that prosecutors in this action have sought to depict him as corrupt by drawing on the same allegations this Court reportedly credited in its own comments at the 2014 symposium.

More troubling still, it appears that YKK, the law firm that sponsored the conference and thus the Court's attendance, is in active conflict with the same Turkish authorities who, according

---

[1]  Declaration of Christine H. Chung in Support of Defendant Reza Zarrab's Motion to Recuse the Court, dated August 30, 2016 ("Chung Dec."), Ex. 1, *Rule of Law and Freedom of Press Under Attack in Turkey*, Facts on Turkey (May 9, 2014), http://factsonturkey.org/4772/rule-of-law-and-freedom-of-press-under-attack-in-turkey/.

to the U.S. prosecutors in this case, are aligned with Mr. Zarrab. Based on recent press reports, YKK had sought—until this Court's comments at arraignment were reported in the Turkish press—to avoid acknowledging its role in the conference. The other sponsor this Court identified in its comments during arraignment, the U.N. Local Compact, subsequently denied having sponsored the symposium. In the wake of the coup attempt in July, which shortly after YKK acknowledged its role in the conference, Turkish officials charged several name partners of the firm for allegedly plotting to overthrow the Turkish government as members of the "terror organization" of Fethullah Gülen, whose extradition the Turkish government has sought. Thus, it has recently come to light that the lawyers who hosted the symposium at which your Honor spoke are now being prosecuted and branded as terrorists by the same Turkish government that, according to prosecutors here, is aligned with Mr. Zarrab.

This case presents an extraordinary confluence of events. The Court attended a conference that was largely focused on the Turkish prosecution of Mr. Zarrab and others, and made public comments on that prosecution that can be understood as sympathetic to the view that Mr. Zarrab avoided conviction through purportedly corrupt ties to Turkish officials. The U.S. prosecutors in this case have repeatedly invoked the same Turkish prosecution, and the same claims of corruption, against Mr. Zarrab. And the same Turkish officials who U.S. prosecutors claim are aligned with Mr. Zarrab are now targeting the members of the law firm who sponsored the Court's participation in the symposium at which it commented on Mr. Zarrab's case. An "objective and disinterested observer, knowing and understanding all of the[se] facts and circumstances," could reasonably question whether the Court could be impartial in judging the defendant at issue, or instead would disfavor that defendant. *See SEC v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013). Because of the

unusual facts and this appearance, we respectfully request that the Court recuse itself from this case.

## BACKGROUND

Your Honor disclosed at arraignment on April 26, 2016 that, in May 2014, the Court participated in a legal conference in Istanbul, Turkey. (Arraignment Tr. 2:24-4:5, ECF No. 14.) Your Honor stated that on that occasion, you "found Istanbul and its people to be warm, welcoming, and beautiful." (*Id.* at 3:2-3.) The conference focused on the "the rule of law" (*id.* at 3:10), and the Court explained that it had moderated a panel entitled "Independent and Effective Judiciary." (*Id.* at 3:17-18.) Your Honor also noted that the symposium was cosponsored by YKK, "a leading Istanbul law firm," and the U.N. Local Compact. (*Id.* at 3:12.)

Your Honor did not believe that your participation in the conference would affect your "ability to preside over this case fairly and impartially." (*Id.* at 3:24-4:3.) As set forth below, however, there are a number of considerations, including the government's repeated injection of Mr. Zarrab's Turkish prosecution into these proceedings, that make clear that recusal would be the most prudent course.

A.      **The May 2014 Symposium and Its Relation to the December 17, 2013 Cases**

The symposium to which the Court referred was held on May 8-9, 2014, in Istanbul.[2] Twenty-two government officials, law professors, human rights lawyers, and NGO representatives from Turkey, the European Union, and the United States participated.[3] The symposium was organized to allow "international experts in the fields of law and economics" to join "with the

---

[2] Chung Dec., Ex. 2, *2014 Justice and Rule of Law Int'l Symposium Booklet* 12 (2014).

[3] *Id.* at 7.

Turkish Bar and Turkish educational institutions to consider and to speak out about recent developments affecting the Rule of Law in Turkey."[4]

Those "developments" related mostly to the Turkish government's response to the December 17, 2013 cases:  the prosecution of several dozen individuals, including sons of three Cabinet members and leading businessmen—most notably Mr. Zarrab—reputed to be in an "inner circle" with high-ranking government officials.[5]  In another prosecution known as the December 25, 2013 cases, dozens of additional business leaders were charged and prosecutors attempted to charge Prime Minister Erdogan's son.[6]  The prosecutions were widely recognized to be a challenge to the authority of Prime Minister Erdogan, and a sign of a worsening conflict between the Prime Minister and his party, the AKP, and Fethullah Gülen and his followers.[7]  News reports in Turkey and the U.S. have described Mr. Zarrab as one of the main defendants in these cases—the person "at the center of [the] bribery scandal that engulfed Turkey's leadership."[8]  Mr. Zarrab, who was

---

[4]  *Id*. at 168.

[5]  Chung Dec., Ex. 3, Daniel Dombey, *Turkish Prosecutor Drops High-Level Corruption Probe*, Financial Times, Oct. 18, 2014, *available at* http://www.ft.com/cms/s/0/63cf5042-56cb-11e4-a0b2-00144feab7de.html?siteedition=intl#axzz4IenMG1Ly.

[6]  Chung Dec., Ex. 4, *Erdogan Hit by Claims of Son's Corruption*, The Australian, Dec. 28, 2013, *available at* http://www.theaustralian.com.au/business/wall-street-journal/erdogan-hit-by-claims-of-sons-corruption/story-fnay3ubk-1226790745552.

[7]  Chung Dec., Ex. 5, Tim Arango & Sebnem Arsu, *Graft Inquiry Intensifies Turkish Political Rivalry*, N.Y. Times, Dec. 17, 2013, *available at* http://www.nytimes.com/2013/12/18/world/europe/graft-inquiry-intensifies-turkish-political-rivalry.html?_r=0; A.Z, *A Challenge to Erdogan's Rule*, The Economist (Dec. 17, 2013), http://www.economist.com/blogs/charlemagne/2013/12/turkish-politics ("The operation is seen as a further and dramatic escalation in the continuing power struggle between Mr Erdogan and Turkey's most influential cleric, Fethullah Gulen, who commands a global empire of media outlets, schools and charities from self-imposed exile in rural Pennsylvania.").

[8]  Chung Dec., Ex. 6, Patricia Hurtado, *et al.*, *Gold Trader at Heart of Turkey Graft Scandal Charged in U.S.*, Bloomberg (Mar. 22, 2016), http://www.bloomberg.com/news/articles/2016-03-22/gold-trader-charged-in-u-s-with-violating-iran-sanctions; *see also* Chung Dec., Ex. 7, Humeyra Pamuk & Nick Tattersall, *U.S. Arrest of Iranian Gold Trader Reopens Wounds in Turkish Graft Scandal*, Reuters (Mar. 22, 2016), http://www.reuters.com/article/us-turkey-usa-corruption-

one of the original December 17 detainees, was charged with bribing government officials to protect a gold-trading business.[9]  He was released from detention on February 28, 2014, and the charges against him were dismissed entirely in October 2014.[10]

The scandal resulting from the December 17 arrests ultimately caused four cabinet ministers to resign.[11]  The Erdogan government, however, swiftly pushed back against what it deemed an illegitimate "judicial coup," perpetrated by followers of Gülen among the Turkish police force and judiciary, whom the Turkish government viewed to be aided by the U.S. government.[12]  From late December 2013 to February 2014, the Turkish government removed

---

idUSKCN0WO2X2 (describing Mr. Zarrab as "at the heart of" the December 17 investigation); Chung Dec., Ex. 8, Humeyra Pamuk & Nick Tattersall, *Leaked Documents Purport to Reveal Turkish Graft Allegations*, Reuters (Mar. 14, 2014), http://www.reuters.com/article/us-turkey-corruption-idUSBREA2D1F420140314 ("Zarrab is presented as the ringleader" of "a 'criminal organization' facilitating Iranian money transfers via gold smuggling and other forms of trade"); Chung Dec., Ex. 9, Ragip Soylu, *Gülen Links Are Everywhere in Zarrab Case*, Daily Sabah, May 19, 2016, *available at* http://www.dailysabah.com/columns/ragip-soylu/2016/05/19/gulen-links-are-everywhere-in-zarrab-case (noting link between corruption investigation and Mr. Zarrab); Chung Dec., Ex. 10, *Ex-Economy Minister Traveled to Mecca With Private Jet of Key Suspect in Graft Probe,* Hürriyet Daily News (Jan. 3, 2014), http://www.hurriyetdailynews.com/ex-economy-minister-traveled-to-mecca-with-private-jet-of-key-suspect-in-graft-probe-report.aspx?pageID=238&nID=60534&NewsCatID=338 ("Zarrab … is considered the key suspect of a graft investigation that has gripped the country since mid-December.").

[9]    Chung Dec., Ex. 11, Mehul Srivastava, *Turkey Crisis Put Jailed Millionaire at Heart of Gold Trail*, Bloomberg (Jan. 29, 2014), http://www.bloomberg.com/news/articles/2014-01-29/turkey-scandal-places-jailed-millionaire-at-center-of-gold-trail; Chung Dec., Ex. 8, *supra* n.8.

[10]    Chung Dec., Ex. 12, *Turkey Frees Cabinet Ministers' Sons*, BBC News, Feb. 28, 2014, *available at* http://www.bbc.com/news/world-europe-26387522; Chung Dec., Ex. 3, *supra* n.5; Chung Dec., Ex. 13, Daren Butler & Robin Pomeroy, *Turkey Drops Corruption Case That Dogged Government*, Reuters (Oct. 17, 2014), http://uk.reuters.com/article/uk-turkey-corruption-idUKKCN0I623420141017.

[11]    Chung Dec., Ex. 3, *supra* n.5; Tim Arango, *Corruption Scandal Is Edging Near Turkish Premier*, N.Y. Times, Dec. 25, 2013, *available at* http://www.nytimes.com/2013/12/26/world/europe/turkish-cabinet-members-resign.html.

[12]    Daren Butler & Nick Tattersall, *Turkish Judicial Purge Brings Corruption Investigation to a Halt,* Reuters, (Jan. 22, 2014), http://www.reuters.com/article/us-turkey-corruption-idUSBREA0L1G220140122; Chung Dec., Ex. 11, *supra* n.9.

thousands of prosecutors and police officers from their posts, reassigned judges, and passed legislation increasing the control of the executive over the judiciary and the process of appointing judges.[13]  Among those removed from his post was one of the prosecutors of the December 17, 2013 cases.[14]  Also, little more than a month before the conference started, Turkey's constitutional court had struck down a ban on Twitter imposed by the Erdogan government, on grounds that Twitter had failed to follow court orders to remove links from their site.[15]

The focal point of the presentations at the Istanbul conference was the December 2013 cases, the Turkish government's response to those cases, and the implications for Turkey.  Many references were express.  For example, one speaker, a member of the European Parliament, referred to "divisions" in Turkey that had "erupted at the end of last year"[16]; another presenter, the European Union's Ambassador to Turkey, spoke of "following developments since the 17th of December with great attention and increasing concern."[17]  Speakers repeatedly addressed and

---

[13]  *See* Butler & Tattersall, *supra* n.12.; *see also* Timothy Phelps, *From His Pa. Compound, Fethullah Gülen Shakes Up Turkey*, L.A. Times, Jan. 20, 2014, *available at* http://www.latimes.com/world/la-fg-turkey-Gulen-20140120-story.html.

[14]  *Gülenist Prosecutor Intimidates Replacement Investigating Dec 17*, Daily Sabah, January 19, 2015, *available at* http://www.dailysabah.com/politics/2015/01/19/gulenist-prosecutor-intimidates-his-replacement-investigating-dec-17.

[15]  Eliana Dockterman, *Turkey Bans Twitter*,  Time, Mar. 20, 2014, *available at* http://time.com/32864/turkey-bans-twitter/; Ceylan Yegnsu, *Turkey Lifts Twitter Ban After Court Calls It Illegal¸* N.Y. Times, Apr. 3, 2014, *available at* http://www.nytimes.com/2014/04/04/world/middleeast/turkey-lifts-ban-on-twitter.html.

[16]  Chung Dec., Ex. 2, *supra* n.2 at 34 (statement of Marietje Schaake, European Parliament, MP).

[17]  *Id*. at 40 (statement of Stefano Manservisi, European Union's Ambassador to Turkey).  The prospects for Turkey's successful accession to the European Union, given its record on observing the "rule of law" was one of the recurring topics of the conference.  A speaker on the panel moderated by your Honor also connected the December 17 cases and the aftermath to the conference:  "We are all aware that recent developments in Turkey have raised serious concerns regarding the independence of the judiciary in the country."  *Id*. at 172.

criticized the steps taken by the Erdogan government in response to the December cases by, for example, disapproving of "tampering with the judicial branch,"[18] decrying the "effort of a majoritarian party . . . to take control of the other state institutions,"[19] or observing that the rule of law requires equal treatment for any criminal "regardless of whether he is an ordinary citizen, a wealthy businessman, a law enforcement official or a high government official."[20]

### B.        The Court's Remarks During the Istanbul Conference

On the second day of the conference, your Honor moderated a panel entitled "Independent and Effective Judiciary."[21] In its introductory remarks, the Court noted and joined the predominant view at the symposium that "rule of law" was under "attack" in Turkey:

> As we heard yesterday and we have seen here, it is no secret that the rule of law as contrasted with the rule of man is under some attack in Turkey. We heard for example, particularly from the EU representatives yesterday how concerned they were about certain developments here, in Turkey.  One of them said that Turkey erupted last year.[22]

Your Honor found to be apt a quotation from U.S. Supreme Court Justice Sandra Day O'Connor— that "it is … easier than most people imagine to damage or destroy" judicial independence.[23] Referring to the overturning of the Twitter ban that had been imposed by the Erdogan

---

[18]  *Id*. at 65 (statement of Prof. Richard Fallon).

[19]  *Id*. at 67 (statement of Prof. Ergun Ozbudun).

[20]  *Id*. at 28 (statement of Charles Hunter, U.S. Consul General in Istanbul).

[21]  *Id*. at 168.

[22]  *Id*.  The remarks from the panel moderated by the Court have been posted on YouTube and track very closely to those reported in the International Symposium Booklet.  *See* International Symposium 2014, *Session 4 – Independent and Effective Judiciary*, YouTube (last visited Aug. 29, 2016), https://www.youtube.com/watch?v=nbQPIpNwo8U.

[23]  International Symposium 2014, *Session 4 – Independent and Effective Judiciary* at 4:07-4:30, YouTube (last visited Aug. 29, 2016), https://www.youtube.com/watch?v=nbQPIpNwo8U.

administration, your Honor stated that you had "certainly read the impressive remarks of Turkey's Constitutional Court President" on the subject of judicial independence.[24]

The Court acknowledged that to participate in a debate about rule of law in Turkey, "we need to understand the Turkish [p]olitics as well."[25]  And in the warning that followed, your Honor indeed alluded to the steps taken by the Turkish government in the wake of the December 17 cases, saying, "what we should not be doing in the political realm is encouraging politics, or politicians to diminish judicial independence, or to introduce new rules or change the rules of the game much less the participants in the game while the very game is in progress."[26]  The Court continued in the same vein, saying that the "rule of law" should prevent measures such as those to which the Court believed the Turkish government had resorted:

> [T]he rule of law is what prevents the state from unilaterally and arbitrarily relocating, firing judges and prosecutors who are actively pursuing an investigation, removing police officers, crashing investigations, disrespecting court decisions, closing down the means of communications, and otherwise attempting to dominate the judiciary. It means not granting preferential treatment to some and punishment to others on the basis of rules that do not apply generally.[27]

### C.   The Court's Remarks Reported by the Turkish Media

On the same day that your Honor moderated the panel about the independence of the judiciary, the newspaper Today's Zaman published a story about the speakers at the second day of the conference and their observations.  That story, entitled "Rule of law and freedom of press under attack in Turkey," devoted five paragraphs to the Court's views and statements, as "told" to Today's Zaman.[28]

---

[24] Chung Dec., Ex. 2, *supra* n.2 at 168.

[25] *Id.* at 169.

[26] *Id.*

[27] *Id.*

[28] Chung Dec. Ex. 1, *supra* n.1.

The Today's Zaman article attributed views to your Honor that even more directly referenced the December 17, 2013 case against Mr. Zarrab:

> US District Judge Richard Berman told Today's Zaman that rule of law is under attack in Turkey because the independence of the judiciary has been challenged. Referring to the corruption probe that started on Dec. 17, 2013, Berman said that the legal proceedings have been interrupted. "It is inappropriate to change the rules of the game while the game is taking place," he said, calling attention to the changes that the Turkish government made to laws regulating the judicial system after the corruption investigations went public.

> According to Berman, the concerns of EU officials about developments in Turkey are legitimate, because the changes to the Supreme Board of Judges and Prosecutors (HSYK) and the government's granting increasing powers to the justice minister within the body are a mistake.

> There is "complete separation of powers between the executive and the judiciary" in the United States, Berman said, adding that it is inappropriate for a minister to have a supervisory role over judges.

> Finding the April 25 speech of the Constitutional Court president Haşim Kılıç "very impressive," Berman said it is wrong for senior officials to disparage the decisions of the courts. "It send a bad message to the citizens," he said, referring to Erdogan's remark that he did not respect the Constitutional Court's ruling against a ban on Twitter.

> Arguing that there is always tension between freedom of speech and the state's duty to protect national security, Berman said that the Turkish Constitutional Court's decision to strike down the ban was correct.[29]

### D.  The U.S. Prosecutors' Assertions of the Relevance of the December 17 Case and the Steps Taken by the Turkish Government in Response

The prosecutors here have invoked the same allegations of corruption leveled against Mr. Zarrab and others at the Istanbul conference, even using some of the same language attributed to your Honor in press accounts from that period.  Indeed, U.S. prosecutors have asked this Court to determine the precise matter on which the Court has already commented:  whether Turkish

---

[29] *Id.*

government officials "inappropriate[ly] … change[d] the rules of the game while the game [wa]s taking place."[30]

To start, the prosecutors here have recounted in this proceeding that the charges against Mr. Zarrab in Turkey involved "a massive bribery scheme executed by [Mr.] Zarrab and others, paying cabinet-level governmental officials and high-level bank officers tens of millions of Euro and U.S. dollars, among other currencies, to facilitate [Mr.] Zarrab's network's transactions for the benefit of Iran and to protect [Mr.] Zarrab's network from potential competitors." (Gov't Opp. to Def. Mot. for Bail 12, ECF No. 18.) The government has also contended that Mr. Zarrab was freed in Turkey because he joined with the Turkish government to change the rule of law there in his favor. Specifically, the U.S. prosecutors have argued that Mr. Zarrab obtained his liberty only because he "paid off high-ranking Turkish officials to squash the investigation, even to the point of having law enforcement officials involved in that investigation arrested, terminated, reassigned, or criminally charged." (*Id.* at 21; *see also id.* at 14 (the "close ties between Zarrab and high-ranking Turkish officials, including Erdogan," allegedly led then Prime Minister Erdogan to fire or reassign numerous Turkish law enforcement officers and prosecutors from Mr. Zarrab's case so he would be set free).)

The government's recent opposition to Mr. Zarrab's motion to dismiss the indictment again highlighted his allegedly unrivalled "level of access to … Turkish government officials." (Gov't Opp. to Def. Mot. to Dismiss 3, ECF No. 75.) And as represented by the Federal Bureau of Investigation ("FBI") in a search warrant application, the very foundation of the U.S. investigation—later apparently abandoned—was investigation of a potential charge that Mr.

---

[30] *Id.*

Zarrab had bribed government officials in Turkey.  (Warrant Application, 14 Mag. 2119 (Sept. 23, 2014).)

**E.      Recent Prosecution of YKK's Name Partners on Charges that They Plotted to Overthrow the Turkish Government**

The Court's disclosure at the April 26, 2016 arraignment of Mr. Zarrab was also widely reported in Turkey.  Following that arraignment, Turkish journalists made inquiries about the "co-sponsorship" of the conference referenced by the Court.  Turkey's leading newspaper, Hürriyet Daily News, reported on May 23, 2016, that the U.N. Global Compact denied any involvement in sponsoring the symposium, other than inviting one speaker:  "The U.N. Global Compact did not have any role in organizing or inviting speakers and did not contribute to the cost of the 2014 Justice and Rule of Law Symposium."[31]  Likewise, the chairman of the U.N. Global Compact in Turkey stated that the group "did not have an organizational or … financial contribution to the event."[32]

The Hürriyet newspaper also reported on May 17, 2016, having contacted Cüneyt Yüksel, one of YKK's name partners, who initially denied sponsoring the symposium but later admitted paying for the accommodation and flight costs of the event and described having begun preparing for the symposium in March 2014.[33]  During this call, according to the Hürriyet reporter, Yüksel denied being a member of the Gülen Movement.[34]  He recounted that tax inspections had been

---

[31] Chung Dec., Ex. 14, Tolga Taniş, *Judge Berman*, Hürriyet Daily News (May 23, 2016), http://www.hurriyetdailynews.com/judge-berman.aspx?pageID=449&nID=99508&NewsCatID=534.

[32] *Id.*

[33] Chung Dec., Ex. 15, Tolga Taniş, *The Zarrab Case and the Gülenists*, Hürriyet Daily News (May 17, 2016), http://www.hurriyetdailynews.com/the-zarrab-case-and-the-gulenists.aspx?PageID=238&NID=99253&NewsCatID=534.

[34] *Id.*

launched against his firm three months after the symposium and that the tax authorities cleared his firm after 17 months of investigation.[35]

Within weeks of the coup attempt in Turkey in July, the Chief Public Prosecutor in Istanbul charged four YKK partners, including name partners Cüneyt Yüksel, Murat Karkin, and Muharrem Küçük, with being members of an "Armed Terrorist Organization" led by Fethullah Gülen and banned them from leaving Turkey.[36]   The Hürriyet newspaper also reported in late July that the law firm's office had been subjected to a raid by "armed police" and the law firm shut down.[37] These actions came amidst rumors reported in the Turkish press that YKK was associated with Fethullah Gülen's broad network of supporters.[38]   On August 4, a Turkish court issued a warrant for Gülen's arrest for allegedly ordering the July 15 coup attempt.[39]

---

[35]   *Id*.

[36]   Chung Dec., Ex. 16, Order of the Turkey Criminal Court of Peace, Miscellaneous Case No. 2016/233 Interrogation, July 22, 2016 (barring Cüneyt Yüksel, Murat Karkin, and Muharrem Küçük from leaving Turkey).  Küçük reportedly left the firm in early 2016, and Yüksel and Karkin had reportedly already left the country when the ban issued. Chung Dec. Ex. 17, David Stuckey, *The Buzz From Turkey – YukselKarkin Shut Down*, CEE Legal Matters (July 25, 2016), http://www.ceelegalmatters.com/index.php/analysis/113-the-frame/5034-the-buzz-from-turkey-yukselkarkin-shut-down.

[37]   Chung Dec., Ex. 18, Dincer Gokce, *Police Searches Yuksel-Karkin Law Partnership*, Hürriyet , July 23, 2016, *available at* http://www.hurriyet.com.tr/unlu-avukatlik-burosuna-polis-baskini-40163245; Chung Dec., Ex. 17, *supra* n.36; *see also* Chung Dec., Ex. 16, *supra* n.36 (Turkish Court Order barring Cuneyt Yüksel, Murat Karkin, and Muharrem Küçük from leaving Turkey).

[38]   U.S. media have reported that Gülen's "supporters have long filled the ranks of the police, judiciary and, to a lesser extent, the military, something Mr. Gülen has encouraged in speeches," and a former U.S. ambassador to Turkey has stated that Gülen supporters have formed "a state within a state" in Turkey.  Tim Arango & Ben Hubbard, *Turkey Pursues Cleric Living in U.S., Blamed as Coup Mastermind*, N.Y. Times, July 19, 2016, *available at* http://www.nytimes.com/2016/07/20/world/europe/fethullah-Gülen-erdogan-extradition.html.

[39]   Ceylan Yeginsu, *Turkey Issues a Warrant for Fethullah Gulen, Cleric Accused in Coup*, N.Y. Times, Aug. 4, 2016, *available at* http://www.nytimes.com/2016/08/05/world/europe/turkey-erdogan-fethullah-gulen.html?_r=0.

## ARGUMENT

The federal statute governing recusal provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. §455(a). "Notably, under §455(a), recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).  Indeed, the "very purpose" of the provision is "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988).  "Thus, it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question" a judge's impartiality. *Id*.

The question, therefore, is not whether the Judge can "preside over this case fairly and impartially," Arraignment Tr. 4, but "whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." *Razmilovic*, 738 F.3d at 29.  In a case that involves foreign conduct by a foreign defendant, the courts should also consider the appearance of impropriety to the foreign audience. *Cf. Skoros v. City of New York*, 437 F.3d 1, 23 (2d Cir. 2006) ("[T]he intended recipient of a display message is a factor—undoubtedly an important factor—to be considered by the reasonable objective observer whose perceptions determine whether the government acts with a purpose and effect that violates the Establishment Clause …..").  Further, "if the question of whether §455(a) requires disqualification is a close one, the balance tips in favor of recusal." *Ligon v. City of New York*, 736 F.3d 118, 123-24 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014) (internal quotation marks omitted) (ordering reassignment of case, "in the interest, and appearance, of fair

and impartial administration of justice," on grounds that conduct in case, in conjunction with comments to media, had compromised the appearance of impartiality).

Press reports have attributed comments to your Honor criticizing the handling of a prior case against Mr. Zarrab, and the Court reportedly made those comments at an event sponsored by a law firm whose principals are now being prosecuted by the same Turkish government officials whom the government here claims are aligned with Mr. Zarrab.[40]   In addition to the Court's comments to the Turkish press, official materials from the Symposium recount that your Honor declared it "no secret" that "the rule of law … is under some attack in Turkey,"[41] and that the Court described that the attack was comprised of the "the state ... unilaterally and arbitrarily relocating, firing judges and prosecutors who are actively pursuing an investigation," "disrespecting court decisions," and "otherwise attempting to dominate the judiciary."[42]   Your Honor, according to the article, criticized the granting of "preferential treatment to some and punishment to others on the basis of rules that do not apply generally."[43]   To Today's Zaman, the Court stated the December 17, 2013 proceedings had been interrupted and that it was "inappropriate to change the rules of the game while the game is taking place," including by changing laws relating to the judicial system after the investigation became public.[44]

As Today's Zaman also reported at the time, the corruption allegations in Turkey which were the subject of the Istanbul conference and the Court's reported comments related directly to

---

[40]   In January 2016, The Turkish government also seized Today's Zaman, the newspaper that contemporaneously reported the Court's remarks during the conference, based on the newspaper's purported ties to the Gülen Movement.  *See* Chung Dec., Ex. 9, *supra* n.8.

[41]   Chung Dec., Ex. 2, *supra* n.2 at 168.

[42]   *Id*. at 169.

[43]   *Id*.

[44]   Chung Dec., Ex. 1, *supra* n.1.

the prosecution against Mr. Zarrab—as that paper put it, "the corruption probe that started on Dec. 17, 2013."[45]   Reuters reported after Mr. Zarrab's arrest in the United States that "Turkish prosecutors placed [Mr. Zarrab] at the heart of a Turkish government graft scandal" in December 2013, during which "[s]everal prosecutors were removed from [Mr. Zarrab's] case, police investigators [] reassigned, and the investigation [] later dropped."[46]   And prosecutors in this case argued—successfully—against Mr. Zarrab's application for bail by alleging that in the course of his Turkish case he had joined forces with the Turkish government to attack the rule of law by "pa[ying] off high-ranking Turkish officials to squash the investigation," "having law enforcement officials involved in that investigation arrested, terminated, reassigned, or criminally charged," and "causing the wholesale reorganization of the Turkish prosecutor's office and police department through bribery."  (Gov't Opp. to Def. Mot. for Bail 14, 21, 25, ECF No. 18.)

As Mr. Zarrab maintained in seeking bail, he strongly disputes these allegations.  He was set free because he was innocent and had been targeted in a politically motivated prosecution by opponents of the Turkish government.   Whatever Mr. Zarrab's view, however, the remarks attributed to your Honor in Today's Zaman, in its reporting on the Istanbul conference, reasonably are read to credit the government's theory of the 2013 case against Mr. Zarrab, and to criticize the steps taken by the same Turkish government that the prosecutors here have said are aligned with Mr. Zarrab.  It is simply unavoidable that reasonable observers could conclude that the Court already formulated opinions, prior to this case, bearing on Mr. Zarrab's purported criminality and his relationship with officials of the Turkish government.

---

[45] *Turkish Court Frees Key Corruption Suspects*, Al Jazeera, Feb. 28, 2014, *available at* http://www.aljazeera.com/news/europe/2014/02/turkish-court-frees-key-corruption-suspects-2014228134034119459.html (noting the Turkish government had responded to the corruption investigation "by sacking or reassigning hundreds of police and prosecutors").

[46] Chung Dec., Ex. 7, *supra* n.8.

The government's recent invocation of Mr. Zarrab's purportedly unparalleled "level of access to … Turkish government officials," (Gov't Opp. to Def. Mot. to Dismiss 3, ECF No. 75), only underscores that your Honor's past remarks will continue to create an appearance of partiality. As the prosecutor's applications and submissions to date show, the December 17, 2013 cases cannot be excised from the prosecution of this matter.  To obtain its first warrant to search the email accounts of Mr. Zarrab and several companies, the government's affidavit relied predominantly on an unsigned Turkish police report—maintained by Mr. Zarrab to be based on fabricated evidence—that was leaked on the internet at the time of Mr. Zarrab's arrest.  (*See* Warrant Application, 14 Mag. 2119 (Sept. 23, 2014).)  That same warrant application, which was submitted while the Turkish charges remained pending, represented that the FBI at the time was investigating Mr. Zarrab for paying bribes in Turkey.  The tight connection that the prosecution has created between the 2013 corruption allegations and this case underscores why this Court's comments have created an appearance of partiality and will continue to do so.

The extraordinary circumstances here also go beyond the fact that your Honor spoke at a conference where the prior prosecution of Mr. Zarrab was a focus, and was reported to have commented unfavorably on the circumstances that led to Mr. Zarrab's exoneration.  It is also the case that the Court made its comments as the guest of a symposium sponsor that has now been targeted by the government that your Honor criticized for its handling of Mr. Zarrab's 2013 case and that prosecutors here have claimed is aligned with Mr. Zarrab.[47]  Put starkly, the Court has been reported to have criticized the Turkish government, a purported ally of Mr. Zarrab, for its actions related Mr. Zarrab's prior case in Turkey, and as the guest of people whom the Turkish

---

[47]  News reports about this case have called attention to the "obvious connection" between Mr. Zarrab and the ruling AKP party of which President Erdogan is the leader.  *See* Chung Dec. Ex., 6, *supra* n.8.

government has now deemed criminals and terrorists.  The Court cannot preside over this case without an appearance of partiality in this highly unusual circumstance.

The Third Circuit's decision to grant a mandamus petition seeking recusal of a district court judge in *In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir. 1992), a case involving far less extreme facts, is instructive.  In that case, a nationwide products liability litigation, the district court judge "attended a predominantly pro-plaintiff conference on a key merits issue," where the conference was "indirectly sponsored by the plaintiffs," through the use of $50,000 in funding from a settlement fund that the judge had approved.  *Id.* at 779, 782.  The judge's expenses were "largely defrayed by the conference sponsors," and the judge heard presentations by plaintiffs'-side experts, but did not speak at the conference.  *Id.* at 782.  The Third Circuit held that the facts considered together "create[d] an appearance of partiality that mandates disqualification."  *Id.*

Your Honor likewise attended a conference, and in addition to being exposed to a "pre-screening" of part of the prosecution's case against Mr. Zarrab, *id.*, was immersed in discussion of issues relating to that case and reportedly expressed comments and views that have been repeated by the U.S. prosecutors in bolstering this case.  Press accounts attribute to this Court comments expressing the view that the 2013 charges against Mr. Zarrab and others should have gone forward, but instead, Mr. Zarrab's allies in the Turkish government undermined the rule of law and had the charges dismissed.  "Although it would not necessarily be improper for [this Court] to reach that view through the adjudication of record-based motions, assuming that the record supported it, reasonable but suspicious minds might question whether he had already concluded this issue prior to trial …."  *Id.*

Other courts have applied the principle that recusal is required when a judge's public comments suggest that the judge has prejudged an aspect of a case over which he or she is

presiding.  For example, the Chief Judge of the Southern District of Florida granted a defendant's motion to recuse another district judge after it was revealed that the judge had made several comments to newspapers that were critical of defendant's conduct, including lobbying efforts made by the defendant in relation to legislation at issue in the case.  *United States v. S. Florida Water Mgmt. Dist.*, 290 F. Supp. 2d 1356, 1360-61 (S.D. Fla. 2003).  The court reasoned that the judge's statements reasonably could be taken to indicate that "he does not trust the South Florida Water Management district," and was troubled as well that because interviews are not "one-way conversations," the judge had created the appearance of having been influenced in matters relevant to the case by extrajudicial sources.  *Id.*  The court concluded that disqualification was prudent because "statements made by or attributed to Judge Hoeveler would cause a 'disinterested observer fully informed of the facts to entertain a significant doubt as to the judge's impartiality.'"  *Id.* at 1361 (quoting *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998)).  The same reasoning applies fully here.  *See Ligon,* 736 F.3d at 126-27 ("the test is not how a judge intended his remarks to be understood, but whether, as a result of the interviews or other extra-judicial statements, the appearance of impartiality might reasonably be questioned").

The intent underlying subsection 455(a) is "to promote public confidence in the integrity of the judicial process" and "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg,* 486 U.S. at 860, 865.  Congress enacted subsection 455(a) precisely because as Justice O'Connor put it—as paraphrased by your Honor in Istanbul—"it is easier than most people imagine to damage or destroy" judicial independence and the perception of that independence.[48]  *See also Liljeberg,* 486 U.S at 864-65 (Congress enacted

---

[48]  Chung Dec., Ex. 2, *supra* n.2 at 168.

subsection 455(a) because "people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges.").

Here, the prosecution has bound this case to the 2013 corruption charges against Mr. Zarrab, and your Honor is on record as having criticized the Turkish government's treatment of the judiciary and law enforcement officials in response to those charges while participating in a conference sponsored by people the Turkish government has now alleged are terrorists and enemies of the state. Given these unusual circumstances, a reasonable person could reasonably question whether the Court's consideration of Mr. Zarrab's current case is colored by the Court's perception of Mr. Zarrab or of the current tension between his former hosts and government officials purportedly aligned with Mr. Zarrab. Because "an objective and disinterested observer, knowing and understanding all of the facts and circumstances," could reasonably question the Court's ability to preside impartially over Mr. Zarrab's case, the Court should recuse itself, irrespective of whether it harbors any degree of actual bias. *Razmilovic*, 738 F.3d at 29.

## CONCLUSION

For the reasons set forth above, the Court should recuse itself from this case.

Dated: New York, New York
       August 30, 2016

BANCROFT PLLC                          QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


/s/ *Viet D. Dinh*                     /s/ *Christine H. Chung*
Viet D. Dinh                           Christine H. Chung
Jeffrey M. Harris                      Adam M. Abensohn
Edmund G. LaCour Jr.                   51 Madison Avenue
500 New Jersey Avenue, NW              22nd Floor
7th Floor                              New York, NY 10010
Washington, DC 20001                   Tel: (212) 849-7000
Tel: (202) 234-0900                    Fax: (212) 849-7100
Fax: (202) 234-2806

BRAFMAN & ASSOCIATES, P.C.

/s/ *Benjamin Brafman*
Benjamin Brafman
Marc Agnifilo
Joshua D. Kirshner
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel:  (212) 750-7800
Fax:  (212) 750-3906

AKIN GUMP STRAUSS HAUER &
FELD LLP

/s/ *Jonathan C. Poling*
Jonathan C. Poling
1333 New Hampshire Avenue, N.W.
Washington, DC 20036

CLIFFORD CHANCE US LLP

/s/ *George D. Kleinfeld*
George D. Kleinfeld
2001 K Street, N.W.
Washington, DC 20006

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

/s/ *Aaron T. Wolfson*
Aaron T. Wolfson
Tara J. Plochocki
405 Lexington Avenue
62nd Floor
New York, NY 10174

*Attorneys for Defendant Reza Zarrab*