UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:

UNITED STATES OF AMERICA

:

    - v. -                           S1 15 Cr. 867 (RMB)

:

REZA ZARRAB,
  a/k/a "Riza Sarraf,"

:

            Defendant.        :

:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT REZA ZARRAB'S MOTION TO RECUSE**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Michael D. Lockard
Sidhardha Kamaraju
David W. Denton, Jr.
Dean C. Sovolos
Assistant United States Attorneys
    *Of Counsel*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

    A.    The Indictment ................................................................................................ 2

    B.    Zarrab's Initial Appearance ............................................................................ 3

    C.    The Symposium ............................................................................................... 4

    D.    Zarrab's Extensive Motion Practice After the Court's Disclosure ................. 5

ARGUMENT ......................................................................................................................... 6

I.    The Defendant's Motion Is Untimely ......................................................................... 6

    A.    Applicable Law ............................................................................................... 6

    B.    Discussion ....................................................................................................... 7

II.    The Defendant's Motion Does Not Raise a Reasonable Question About the Court's
       Impartiality ................................................................................................................. 9

    A.    Applicable Law ............................................................................................... 9

    B.    Discussion ..................................................................................................... 12

CONCLUSION .................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Apple* v. *Jewish Hosp. & Med. Ctr.*, 829 F.2d 326 (2d Cir. 1987) ...............................................6, 7

*Da Silva Moore* v. *Publicis Groupe*, 868 F. Supp. 2d 137 (S.D.N.Y. 2012), *objections overruled sub nom. Moore* v. *Publicis Groupe SA & MSL Grp.*, No. 11 Civ. 1279 (ALC), 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012) ...............................................................................................11

*In re Aguinda*, 241 F.3d 194 (2d Cir. 2001) ................................................................ *passim*

*In re Int'l Bus. Mach. Corp.*, 45 F.3d 641 (2d Cir. 1995)..............................................................6

*In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307 (2d Cir. 1988) ............................9, 10, 11, 15

*In re Judicial Misconduct*, 632 F.3d 1289 (9th Cir. 2011) ....................................................11, 13

*In re Martin-Trigona,* 573 F.Supp. 1237 (D. Conn. 1983)............................................................7

*In re Sch. Asbestos Litig.*, 977 F.2d 764 (3d Cir. 1992), *as amended* (Oct. 8, 1992) ...................13

*Lamborn* v. *Dittmer*, 726 F. Supp. 510 (S.D.N.Y. 1989) ........................................................9, 10

*Ligon* v. *City of New York*, 736 F.3d 118 (2d Cir. 2013), *vacated in part,* 743 F.3d 362 (2d Cir. 2014)..................................................................................................................13

*Liteky* v. *United States*, 510 U.S. 540 (1994)....................................................................10, 12, 15

*Nat'l Auto Brokers Corp.* v. *Gen. Motors Corp.,* 572 F.2d 953 (2d Cir.1978) ............................11

*Omega Eng'g, Inc.* v. *Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005) ..................................................8

*Polizzi* v. *United States*, 926 F.2d 1311 (2d Cir. 1991) ................................................................6

*United States* v. *Durrani*, 835 F.2d 410 (2d Cir. 1987) ................................................................7

*United States* v. *Lovaglia*, 954 F.2d 811 (2d Cir. 1992)......................................................... *passim*

*United States* v. *Pitera*, 5 F.3d 624 (2d Cir. 1993) ................................................................11, 13

*United States* v. *S. Florida Water Mgmt. Dist.*, 290 F. Supp. 2d 1356 (S.D. Fla. 2003)...............14

*United States* v. *Wallach*, 788 F. Supp. 739 (S.D.N.Y.), *aff'd,* 979 F.2d 912 (2d Cir. 1992) .........6

*Weisshaus* v. *New York*, No. 08 Civ. 4053 (DLC), 2009 WL 4823932 (S.D.N.Y. Dec. 15, 2009), *aff'd sub nom. Weisshaus* v. *Fagan*, 456 F. App'x 32 (2d Cir. 2012) ................................8

<u>Statutes</u>

18 U.S.C. § 371...............................................................................................................................2

18 U.S.C. § 1349.............................................................................................................................2

18 U.S.C. § 1956.............................................................................................................................2

28 U.S.C. § 144...............................................................................................................................6

28 U.S.C. § 455...............................................................................................................................9

50 U.S.C. § 1705..........................................................................................................................2

**<u>Regulations</u>**

31 C.F.R. § 560.203.....................................................................................................................2

31 C.F.R. § 560.204.....................................................................................................................2

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Reza Zarrab's motion to recuse the Court ("Mot.") due to a claimed appearance of partiality.

First, the defendant's motion is untimely.  A motion for recusal must be filed promptly after the moving party learns of the alleged basis for recusal.  Failure to do so results in a waiver. The facts underlying the defendant's motion—the Court's participation at a conference in Istanbul two years ago—were known to the defendant more than four months ago, before this defendant began to vigorously litigate this case in the Court.  Indeed, at the *first appearance* before the Court on April 27, 2016, defense counsel stated that he knew about these facts and that they were not a reason for recusal.  The defendant has delayed too long to now seek a new judge.

Second, the defendant's bases for recusal are without merit.  As discussed below, the defendant's claims rely on a mischaracterization of the Court's remarks at the Istanbul conference, rank speculation, and impermissible consideration of press coverage.  The comments about which the defendant complains were no more than noncontroversial opinions about fundamental principles of a fair and effective justice system, like judicial independence and impartiality.  Additionally, while the defendant argues that this case is "extraordinary," there is nothing in the Court's conduct that provides a legitimate basis to question the Court's commitment to impartiality.  Accordingly, as explained in more detail below, the defendant's motion should be denied.

## BACKGROUND

**A.     The Indictment**

On or about March 30, 2016, an indictment was returned by a grand jury sitting in this District, S1 15 Cr. 867 (RMB) (the "Indictment"), charging Zarrab, along with co-defendants Hossein Najafzadeh and Camelia Jamshidy, with: (i) conspiring to defraud the United States, in violation of Title 18, United States Code, Section 371; (ii) conspiring to violate the International Emergency Economic Powers Act ("IEEPA") and the Iranian Transactions and Sanctions Regulations ("ITSR"), in violation of Title 50, United States Code, Section 1705 and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204; (iii) conspiring to commit bank fraud, in violation of Title 18, United States Code, Section 1349; and (iv) conspiring to commit money laundering, in violation of Title 18, United States Code, Section 1956.[1]

As alleged in the Indictment, defendant Reza Zarrab owned and operated a network of companies located in Turkey and in the United Arab Emirates, including a group of companies under Royal Holding A.S. ("Royal Holding"), a holding company in Turkey; Durak Doviz Exchange, a money services business in Turkey; and Al Nafees Exchange LLC ("Al Nafees Exchange"), a money services business in the United Arab Emirates.  (Indictment ¶ 9).  Zarrab used this network of companies along with other entities and banks located in Turkey and the United Arab Emirates to conduct international financial transactions, including U.S.-dollar denominated transactions, on behalf of or for the benefit of Iranian entities, including entities owned or controlled by the Government of Iran and entities affiliated with the Islamic Revolutionary Guard Corps ("IRGC"), such as Bank Mellat (a Government-owned Iranian

---

[1] An underlying indictment, charging the same offenses but containing different venue allegations, was filed under seal on December 15, 2015.  The Indictment alleges venue based on acts occurring or caused in the Southern District of New York.

bank), the National Iranian Oil Company ("NIOC")—identified at the time by OFAC as an affiliate of the IRGC—and various entities owned or controlled by NIOC.  (*Id.* ¶¶ 6-8, 12).

### B.    Zarrab's Initial Appearance

On March 19, 2016, Zarrab flew into Miami, Florida from Turkey, and was arrested. After being presented in the Southern District of Florida, Zarrab was transferred to this District and his initial appearance was on April 27, 2016.  At the outset of the conference, the Court notified the parties of its participation in a legal symposium in Istanbul, Turkey, in May 2014, entitled "Justice and Rule of Law" (the "Symposium").  The Court described the nature of the Symposium, its sponsors, some of the other participants, and the nature of a panel that the Court had moderated.  (*See* Transcript of April 27, 2016 conference ("Tr.") at 2-3, attached hereto as Exhibit A).  The Court distributed a copy of the agenda of the meeting (*id.* at 4) and stated: "My participation in this panel does not impact my ability to preside over this case fairly and impartially, and to ensure that Mr. Zarrab, who is presumed to be innocent, as you all know, receives a fair and impartial hearing and eventual trial."  (*Id.*).

Defense counsel immediately disclosed that the defense already was aware of the Court's participation in the Symposium and agreed that it raised no question about the Court's impartiality in this case:

> Might I add, your Honor, that with all modesty, you have proven me correct.  I was familiar with your Honor's remarks and appearance in Istanbul because, in our thoroughness, we try and follow everything that everyone does.
>
> And I think you know the great -- so I said that the first thing the Judge is going to do is raise the fact that he participated in the panel, so I'm glad that you proved me correct.
>
> You understand, I think, my great respect for this Court, and my experience here has allowed me to conclude that you are indeed a fair and impartial judge, so I appreciate your giving us this. We have seen nothing to date which would suggest that you could not

> participate in any way, and obviously, we appreciate the fact that
> you brought it to our attention.

(*Id.* at 4-5).

### C.   The Symposium

The Symposium occurred on May 8 and 9, 2014, in Istanbul, Turkey.  The Court was joined at the Symposium by a number of well-respected participants, including diplomats, members of law enforcement, current and former jurists, legal scholars, and practicing attorneys. (Def. Ex. 2 at 1, 15, 25, 31, 37, 91, 143, 167, 195).[2]  The Court chaired one panel of this program, entitled "Independent and Effective Judiciary."  (*Id.* at 167).

According to a Symposium program, its opening remarks to the panel the Court emphasized the importance of judicial independence and impartiality and described fundamental principles of separation of powers, transparency, ensuring the qualifications of the judiciary, ethical standards, and applying "the rule of law and not the rule of man."  (*Id.* at 169).  Without identifying any specific case, the Court noted that "it is no secret that the rule of law as contrasted with the rule of man is under some attack in Turkey," referring to comments by European Union representatives at the Symposium about "how concerned they were about certain developments here, in Turkey."  (*Id.* at 168).  Again without specifying any particular case, the Court also stated that it was important that politicians did not "introduce new rules and/or . . . change the rules of the game much less . . . change the participants in the game while the very game is in progress."  (*Id.*).  The Court also described remarks by the President of the Turkish Constitutional Court in April 2014 as "impressive."  (*Id.*).  Finally, the Court also noted that it had attended a program in Albania the previous year, and that similar issues were

---

[2] Citations to "Def. Ex." are to exhibits attached to the Declaration of Christine H. Chung accompanying the defendant's motion for recusal.

discussed at that event.  (*See id.* at 180).  According to the Symposium program, at no point

during the panel, or the entire Symposium, was the defendant's name or case mentioned.[3]

### D.      Zarrab's Extensive Motion Practice After the Court's Disclosure

After his initial appearance before the Court, Zarrab proceeded to vigorously litigate the

case for the next four months.  During that time, Zarrab filed three motions before this one,

including: (i) a motion for bail, which the Court denied on June 16, 2016, after receiving

substantial briefing and holding a lengthy bail argument;[4] (ii) a motion to dismiss the Indictment,

filed on July 19, 2016, and previously scheduled for oral argument on September 6, 2016; and

(iii) a motion to suppress evidence, also filed on July 19 and scheduled for oral argument on

September 6.  The motions to dismiss the Indictment and to suppress evidence remain pending,

and oral argument was adjourned after the defendant's filing of the instant motion.  In advance of

that hearing, the Court entered an order identifying specific topics that it expected the parties be

prepared to address, all of which dealt with Zarrab's motion to suppress.  Only after the Court

entered that order, and a week before oral argument was scheduled, did the defendant file the

instant motion seeking the Court's recusal.

---

[3] The defendant cites to a webpage that claims that the Court gave an interview to *Today's Zaman*, a Turkish newspaper, in which the Court made similar statements, and specifically criticized Turkish President Recep Tayyip Erdogan's ban on Twitter.  (Def. Ex. 1).

[4] At oral argument on the defendant's motion to be released on bail conditions, the Court noted: "First, I want to say preliminarily and very emphatically that we are not -- underscore not -- resolving or even considering the issue of Mr. Zarrab's guilt or innocence in this proceeding today. Mr. Zarrab is presumed to be innocent under our legal system, and that presumption carries right up until the time, if it comes, that he may be determined to be guilty or not following a trial. The presumption of innocence is a very important concept in our judicial system."  (Transcript of June 2, 2016 bail hearing at 2-3).  The Court re-emphasized this point in its order denying the bail motion.  (*See* D.E. 41, Order dated June 16, 2016 ("Bail Order") at 7 n.4).

# ARGUMENT

The defendant's motion fails both as a matter of procedure and of merit. As a matter of procedure, the defendant's months-long delay in filing this motion requires dismissal of the defendant's motion as untimely, particularly in light of the substantial litigation that has already occurred and defense counsel's acknowledgement at the outset of this action that there was no basis for recusal. As a matter of merit, there is nothing in the Court's noncontroversial statements about fundamental principles of law, which make no mention of Zarrab, that would suggest to an objective observer that the Court is unable to provide the defendant with a fair and impartial trial.

## I.     The Defendant's Motion Is Untimely

### A.  Applicable Law

A motion for recusal must be filed in a timely manner, *see* 28 U.S.C. § 144; *see also United States* v. *Wallach*, 788 F. Supp. 739, 742 (S.D.N.Y.), *aff'd*, 979 F.2d 912 (2d Cir. 1992), which requires that the motion be filed "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple* v. *Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333-34 (2d Cir. 1987). Careful adherence to the requirement of a "prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters." *In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995).

Failure to make a timely motion for recusal constitutes waiver of the claim. *See Polizzi* v. *United States*, 926 F.2d 1311, 1321 (2d Cir. 1991). In assessing whether a claim of apparent bias has been waived for untimeliness, the Second Circuit has instructed courts to consider a number of factors, including whether "(1) the movant has participated in a substantial manner in trial or pre-trial proceedings, (2) granting the motion would represent a waste of judicial resources, (3)

the motion was made after the entry of judgment, and (4) the movant can demonstrate good cause for delay." *Apple*, 829 F.2d at 333-34.  Moreover, even if a belatedly filed motion is considered on the merits, delay strongly cuts against the defendant's argument.  *See, e.g., United States* v. *Durrani*, 835 F.2d 410, 427 (2d Cir. 1987) (delay of four months warranted denial of motion; discussing *In re Martin-Trigona,* 573 F.Supp. 1237, 1244 (D. Conn. 1983) (denying motion for recusal after delay of twelve days)).

### B.  Discussion

Initially, there is no need for the Court to reach the merits of the defendant's motion because he has already defaulted by waiting more than four months after learning of the Court's participation in the Symposium.  After the Court raised the issue at the defendant's *first* appearance before it, Zarrab's counsel indicated that he was "familiar with [the Court's] remarks and appearance in Istanbul," that he had concluded that the Court was a "fair and impartial judge," and that there was "nothing to date which would suggest that you could not participate in any way . . . ."  (*See* Ex. A at 4-5).  Thus, more than four months ago, the defendant was not only aware of the alleged conflict that he seeks to raise now, but had already determined that it was not an issue.  Far from raising the issue at the "earliest moment" after learning of the alleged basis for recusal, the defendant has been dilatory, and that alone warrants denial of the motion. *See, e.g.*, *Durrani*, 835 F.2d at 427 (delay of four months warranted denial of motion).

The other factors that the Court is to consider in evaluating the timeliness of the defendant's motion similarly support denial of the motion.  First, Zarrab has participated in pretrial proceedings in a substantial way by filing: (a) a hotly contested bail motion, which involved seven rounds of submissions, oral argument, and a 30-page opinion and order denying the application; (b) a motion to dismiss the Indictment, which has been fully briefed and was mere days away from argument prior to the instant motion; and (c) a fully briefed motion to suppress

7

evidence, which was subject to a supplemental order from this Court.  Second, the Court has already expended substantial judicial resources presiding over this case, having reviewed voluminous briefing in connection with these motions and identified specific issues for consideration, conducting a lengthy bail argument, and issuing a detailed opinion denying bail. Third, while no judgment has been entered, the absence of a judgment is not dispositive, and the defendant's motion comes after the defendant's bail application was denied by the Court, in connection with which the Court heard argument about the Turkish prosecution without any suggestion from the defendant that the issue created an appearance of impropriety for the Court. *See, e.g.*, *Omega Eng'g, Inc.* v. *Omega, S.A.*, 432 F.3d 437, 448 (2d Cir. 2005) (denying motion for recusal where movant "waited until the middle of the evidentiary hearing . . . seven months later—to move for recusal"); *Weisshaus* v. *New York*, No. 08 Civ. 4053 (DLC), 2009 WL 4823932, at *4 (S.D.N.Y. Dec. 15, 2009), *aff'd sub nom. Weisshaus* v. *Fagan*, 456 F. App'x 32 (2d Cir. 2012) (denying motion when a litigant filed a motion to recuse "prior to final judgment, . . . [but only] after the Court ordered Weisshaus to submit to a deposition").

The fourth factor is whether the defendant can establish "good cause" for his delay. Simply put, the defendant cannot satisfy this burden.  Months ago, the defendant, through his counsel, indicated that the Court's remarks at the Symposium did not require recusal.  Nothing has changed since that time—the Court's comments remain as innocuous today as they were in April.  Moreover, the defendant's contention that somehow the Government has tainted the proceedings by referencing the Turkish prosecution in its bail opposition is a red herring.  The Government's opposition brief was filed on May 25, 2016, almost four months ago.  The defendant did not, however, suggest in his reply papers, at argument, or at any point in the intervening months that the Court should now recuse itself because of the Government's

argument.  The only thing that did change was that the defendant lost his bail application, and that is not a basis for recusal.

Without any explanation for this delay, the defendant claims that the Court should now recuse itself because certain sponsors of the Symposium have been charged as members of an alleged anti-government movement in Turkey after the July 2016 attempted coup.  But that too fails to excuse the defendant's delay, because the *Daily Sabah*, a Turkish paper, published an article in May 2016, almost four months ago, alleging the links between those sponsors of the Symposium and the Gulenist movement.  (*See* Def. Ex. 9).  Indeed, the *Daily Sabah* claims to have published a story about those alleged links the month before.  (*See id*. at 1).  Thus, the very fact that the defendant now relies upon—that there were allegations of ties between the Symposium sponsors and the Gulenist movement—was a matter of public record at or around the time that Zarrab's counsel agreed that there was no issue and long before the instant motion.

## II.    The Defendant's Motion Does Not Raise a Reasonable Question About the Court's Impartiality

### A.    Applicable Law

Title 28, United States Code, Section 455(a) requires a district judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Further, a judge must disqualify himself when he or she has "a personal bias or prejudice concerning a party."  28 U.S.C. § 455(b)(1).  The district judge whose partiality has been asserted may nevertheless decide the motion for recusal: "[d]iscretion is confided in the district judge in the first instance to determine whether to disqualify himself."  *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

Where a motion for recusal has been timely made, the defendant's burden on the merits is substantial.  *See Lamborn* v. *Dittmer*, 726 F. Supp. 510, 514 (S.D.N.Y. 1989).  Recusal under

Section 455(a) is only required when "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States* v. *Lovaglia,* 954 F.2d 811, 815 (2d Cir. 1992). "Section 455(a) does not require that [the district court] accept all allegations by the moving party as true." *Lamborn*, 726 F. Supp. at 517. On the contrary, "the grounds asserted in a recusal motion must be scrutinized with care." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001). "The trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Drexel,* 861 F.2d at 1312.

The Court must make its determination "not by considering what a straw poll of the only partly informed man-in-the-street would show[,] but by examining the record facts and the law." *Id.* at 1313. In so examining, "[j]udicial inquiry may not . . . be defined by what appears in the press. If such were the case, those litigants fortunate enough to have easy access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges." *Id.* at 1309. Accordingly, "the appearance of partiality must have an objective basis beyond the fact that claims of partiality have been well publicized." *Aguinda*, 241 F.3d at 201. "[A] judge should not grant a recusal motion simply because a claim of partiality has been given widespread publicity." *Id.* at 206.

In order to show a sufficiently substantial doubt about the Court's impartiality to warrant recusal, the defendant must show that the Court has demonstrated "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky* v. *United States*, 510 U.S. 540, 555 (1994). Recusal is not appropriate where the circumstances giving rise to the purported appearance of impropriety are "remote, contingent, indirect or speculative." *Lovaglia*,

10

954 F.2d at 815.  The Court, furthermore, has no discretion to recuse itself unless the defendant

has satisfied his heavy burden.  *See Aguinda*, 241 F.3d at 201 (2d Cir. 2001) ("Where the

standards governing disqualification are not met, disqualification is not optional; rather, it is

prohibited.") (citing *Drexel*, 861 F.2d at 1312 ("A judge is as much obliged not to recuse himself

when it is not called for as he is obliged to when it is.")); *see also Nat'l Auto Brokers Corp.* v.

*Gen. Motors Corp.,* 572 F.2d 953, 958 (2d Cir. 1978) ("[A] judge has an affirmative duty . . . not

to disqualify himself unnecessarily, particularly where the request for disqualification was not

made at the threshold of the litigation and the judge has acquired a valuable background of

experience.") (internal citations, quotation marks omitted).

　　　Motions for recusal based on a judge's participation in extrajudicial educational or

informational activities, including making speeches, should be met with particular skepticism.

"[T]he presumption is that a judge will put personal beliefs aside and rule according to the laws

as enacted, as required by his or her oath," and no appearance of impropriety is "created by the

fact that every judge inevitably has opinions on the controversies of the day."  *Aguinda*, 241 F.3d

at 204; *see also In re Judicial Misconduct*, 632 F.3d 1289, 1289 (9th Cir. 2011) ("Engaging in

such law-related activities—including speeches that comment on current events and legal

developments—is permitted not only because judges are citizens, but because they are

particularly knowledgeable on such topics."); *United States* v. *Pitera*, 5 F.3d 624, 626 (2d Cir.

1993) (affirming denial of recusal motion where district judge had given speeches to law

enforcement agents and prosecutors about "steps they might take to increase the prospects for

conviction in narcotics cases," and noting that the judge often lectured at trial seminars); *Da

Silva Moore* v. *Publicis Groupe*, 868 F. Supp. 2d 137, 163 (S.D.N.Y. 2012), *objections overruled

sub nom. Moore* v. *Publicis Groupe SA & MSL Grp.*, No. 11 Civ. 1279 (ALC), 2012 WL

12528637 (S.D.N.Y. Nov. 8, 2012) (affirming magistrate judge's denial of recusal motion where magistrate judge had spoken and written publicly about the benefits of computer-assisted review in the context of civil discovery, an issue of dispute in the pending case).

> ### B.   Discussion

The defendant's recusal motion is based on the unusual grounds that the Court has made public remarks defending judicial independence and impartiality.  But there is nothing in the Court's noncontroversial statements about fundamental principles of law, which make no mention of Zarrab, that would suggest to an objective observer that the Court has shown "such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Liteky*, 510 U.S. at 555.  On the contrary, the Court has, from the beginning, been transparent about the Symposium and meticulous in making clear to the public that Zarrab will have a fair trial. Moreover, while the defendant cites to Turkish press accounts as evidence of the alleged impact of the Court's statements, the relevant metric is not the press's reaction, and certainly not publications propagating conspiracy theories in a foreign country.  The correct question is what "an objective, disinterested observer fully informed of the underlying facts" would think, and, under that standard, there is no appearance of partiality.  *Lovaglia*, 954 F.2d at 815.

The defendant attempts to characterize the Court's remarks at the Symposium as pointed commentary on the defendant's Turkish prosecution.  That characterization, however, is entirely incorrect.  Not once did the Court, or any other Symposium participant, refer to Zarrab's case or even mention Zarrab's name.  What the Court commented on were the events in Turkey in 2013, which included a purge of law enforcement agents, prosecutors and judges involved in not only the case charging Zarrab and other co-defendants, but also another case involving the then-Turkish Prime Minister's son.  And what the Court said about those events was nothing more than a noncontroversial opinion about the importance of a bedrock of any fair and effective

12

judicial system: judicial independence, and the way to promote that value.  The expression of

such a general opinion about current events does not create an appearance of impropriety

requiring recusal.  *See Aguinda*, 241 F.3d at 204 ("[T]he presumption is that a judge will put

personal beliefs aside and rule according to the laws as enacted, as required by his or her oath,"

and no appearance of impropriety is "created by the fact that every judge inevitably has opinions

on the controversies of the day.").  *See also In re Judicial Misconduct,* 632 F.3d at 1289

("Engaging in such law-related activities—including speeches that comment on current events

and legal developments—is permitted not only because judges are citizens, but because they are

particularly knowledgeable on such topics."); *Pitera*, 5 F.3d at 626 (denying recusal motion

where judge had given speeches to law enforcement about "steps they might take to increase the

prospects for conviction in narcotics cases").  And that is particularly the case when, as here, the

Court had already expressed similar views about judicial independence at other conferences,

including at one just the year before in Albania.  *See Pitera*, 5 F.3d at 626 (denying recusal

motion, and noting judge has given lectures on similar topics before).

 Indeed, contrasting the Court's expression of a general opinion about current events with

the cases to which the defendant cites in which recusal was deemed to be appropriate only

highlights how innocuous the Court's remarks were.  In those cases, the challenged conduct

specifically involved parties to the litigation before them.  *See In re Sch. Asbestos Litig.*, 977

F.2d 764, 770 (3d Cir. 1992), *as amended* (Oct. 8, 1992) (district judge attended a conference

expressly organized by a party to the litigation before him, which was funded by money

distributed from an escrow fund administered by the district judge, and some of those funds were

used to pay the judge's own expenses for the conference); *Ligon* v. *City of New York*, 736 F.3d

118, 127 (2d Cir. 2013), *vacated in part,* 743 F.3d 362 (2d Cir. 2014) (in lawsuit against the New

York City Police Department (the "NYPD"), district judge made comments in the media about

being skeptical of law enforcement and, during court proceeding, encouraged plaintiff suing

NYPD to file another lawsuit and designate it so that it would be assigned to the same judge);

*United States* v. *S. Florida Water Mgmt. Dist.*, 290 F. Supp. 2d 1356, 1360 (S.D. Fla. 2003)

(recusal appropriate where district judge's comments in newspaper articles about defendant

made it reasonable to believe that judge mistrusted defendant).  Here, the Court did not accept

any benefits from a party to this action, seek out Zarrab's case, or comment on Zarrab at all.

Rather the Court merely expressed some views about judicial independence and widely-reported

actions taken by the Turkish government.  That is not a basis for recusal.  *See Aguinda*, 241 F.3d

at 204.

      An objective observer presented with all of these facts could not reasonably conclude that

this Court, when called upon to preside over the defendant's American prosecution, would

respond with anything less than impartiality.  Indeed, that conclusion becomes even more

untenable when the considered in light of the Court's disclosure of the facts that pertain to this

alleged bias, which undercuts any suggestion that the Court would try in secret to disadvantage

the defendant.  The Court's disclosure gave the defendant an opportunity to object and he,

rightly, concluded there was nothing to which to object.

      The defendant advances several flawed arguments in an effort to construct an appearance

of judicial bias based on the Court' remarks about the importance of independence and

impartiality.  First, Zarrab argues that pairing the Court's remarks with one of the Government's

bail arguments creates the appearance of impropriety.  But that contention misconstrues the

Court's remarks.  The Court never opined on the defendant's guilt in the Turkish prosecution, or

even connected Zarrab—either explicitly or implicitly—to any of the issues about which the

Court was speaking.  Lacking any such connection, the defendant instead suggests that the Court's decision to deny Zarrab bail would lead to the *appearance* of impropriety because the Government "argued—successfully—against Mr. Zarrab's application for bail by alleging that in the course of his Turkish case he had joined forces with the Turkish government to attack the rule of law . . . ."  (Mot. at 16).  The Court's bail decision, however, is not a basis for recusal.  *See Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").  Moreover, the only mention of the Turkish prosecution in the Court's bail decision is in a footnote, where the Court briefly describes the Government's allegations without opining on their validity.[5]  (Bail Order at 12 n.8).  Thus, the defendant's claim that reasonable observers would conclude that "the Court already formulated opinions, prior to this case, bearing on Mr. Zarrab's purported criminality and his relationship with officials of the Turkish government," (Mot. at 16), lacks any foundation.  Such speculative allegations of bias are an insufficient basis for recusal.  *See generally Lovaglia*, 954 F.2d at 815 ("remote, contingent, indirect, or speculative" allegations of bias do not warrant recusal).

Next, Zarrab argues that the Court should take into account reactions by some members of the Turkish press.  Again, Zarrab is wrong.  The Second Circuit has emphasized that "[j]udicial inquiry may not . . . be defined by what appears in the press."  *Drexel*, 861 F.2d at 1309.  That is true even if the allegations of partiality have been widely reported: "[A] judge should not grant a recusal motion simply because a claim of partiality has been given widespread

---

[5] The Government anticipates arguing that evidence relating to the investigation of Zarrab in Turkey will be relevant at trial as proof of, among other things, Zarrab's willfulness and intent and to rebut any defense of good faith.  In any event, the extent to which the Turkish investigation may or may not be relevant to the charged offenses in this case can be resolved at an appropriate time when those issues are ripe and properly raised.

publicity." *Aguinda*, 241 F.3d at 206.  Thus, regardless of what allegations, hypotheses, or conspiracy theories are advanced in the press, domestic or foreign, those are not a basis for recusal.

Finally, Zarrab argues that the recent reported arrests of members of one of the law firms that sponsored the Symposium, possibly based on their alleged connections to Fetullah Gulen, further bolsters the appearance of impropriety because the Court was "the guest of a symposium sponsor that has now been targeted by the government that your Honor criticized for its handling of Mr. Zarrab's 2013 case and that prosecutors here have claimed is aligned with Mr. Zarrab." (Mot. 17).  But as explained above, the charges against Zarrab in Turkey were never mentioned by the Court or any other Symposium participant and the Court's uncontroversial remarks about the importance of judicial independence and impartiality—and near universal recognition that those principles appear to have been compromised to at least some degree in Turkey—do not call the Court's impartiality in this case into question.  Nor is there any evidence or suggestion that the members of a firm that sponsored the Symposium, or their arrest two years later, have any connection to the Court, this case, or Zarrab's arrest in Turkey.  Indeed, there is no evidence or suggestion that the Court was even aware of the arrests.  The defendant cannot satisfy his heavy burden, however, through such contingent and speculative allegations.  *See generally Lovaglia*, 954 F.2d at 815 ("remote, contingent, indirect, or speculative" allegations of bias do not warrant recusal).

## <u>CONCLUSION</u>

Accordingly, the Government respectfully requests that the Court deny the defendant's

motion for the Court to recuse itself.

Dated:  New York, New York
        September 14, 2016

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                by:     _____/s/_____
                              Michael D. Lockard
                              Sidhardha Kamaraju
                              David W. Denton, Jr.
                              Dean C. Sovolos
                              Assistant United States Attorneys
                              (212) 637-2193/6523/2744/2213


cc:     Defense counsel of record (by ECF)

17