UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

REZA ZARRAB, *et al.*,

      *Defendants*.

S1 15 Cr. 867 (RMB)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REZA ZARRAB'S MOTION TO RECUSE THE COURT

BANCROFT PLLC
Viet D. Dinh
Jeffrey M. Harris
Edmund G. LaCour Jr.
500 New Jersey Avenue, NW
7th Floor
Washington, DC 20001

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Christine H. Chung
Adam M. Abensohn
51 Madison Avenue
22nd Floor
New York, NY 10010

BRAFMAN & ASSOCIATES, P.C.
Benjamin Brafman
Marc Agnifilo
Joshua D. Kirshner
767 3rd Avenue, 26th Floor
New York, NY 10017

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................1
ARGUMENT ..................................................................................................................................2
I.     MR. ZARRAB'S MOTION IS TIMELY ............................................................................2
II.    RECUSAL IS WARRANTED ON THE MERITS ..............................................................5
        A.     The Government Applies The Wrong Legal Standard ............................................5
        B.     The Government Mischaracterizes The Court's Past Comments .............................6
CONCLUSION ..............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Aguinda*,
 241 F.3d 194 (2d Cir. 2001)..................................................................................7, 9

*Apple v. Jewish Hosp. & Med. Ctr.*,
 829 F.2d 326 (2d Cir. 1987).......................................................................................4

*In re Boston's Children First*,
 244 F.3d 164 (1st Cir. 2001)...............................................................................6, 7, 9

*In re Cooley*,
 1 F.3d 985 (10th Cir. 1993) ....................................................................................6, 7

*In re Drexel Burnham Lambert Inc.*,
 861 F.2d 1307 (2d Cir. 1988).....................................................................................7

*In re Judicial Misconduct*,
 632 F.3d 1289 (9th Cir. 2011) ...............................................................................9, 10

*Liljeberg v Health Servs. Acq. Corp.*,
 486 U.S. 847 (1988)...................................................................................................6

*Liteky v. United States*,
 510 U.S. 540 (1994)...................................................................................................5

*Omega Eng'g, Inc. v. Omega, S.A.*,
 432 F.3d 437 (2d Cir. 2005)...................................................................................4, 5

*In re School Asbestos Litig.*,
 977 F.2d 764 (3d Cir. 1992).......................................................................................2

*United States v. Amico*,
 486 F.3d 764 (2d Cir. 2007).......................................................................................4

*United States v. Bayless*,
 201 F.3d 116 (2d Cir. 2000).......................................................................................5

*United States v. Durrani*,
 835 F.2d 410 (2d Cir. 1987).......................................................................................4

*United States v. Lovaglia*,
 954 F.2d 811 (2d Cir. 1992).......................................................................................8

*United States v. Pitera*,
 5 F.3d 624 (2d Cir. 1993)...........................................................................................9

*Weisshaus v. New York*,
   No. 08-cv-4053, 2009 WL 4823932 (S.D.N.Y. Dec. 15, 2009),
   *aff'd sub nom. Weisshaus v. Fagan*, 456 F. App'x 32 (2d Cir. 2012) ........................................5

### **Statutes**

28 U.S.C. § 455.............................................................................................................................2, 6

### **Other Authorities**

Code of Conduct for United States Judges, Canon 3A(6) ...............................................................8

*Weisshaus v. New York*,
   No. 08-cv-4053, 2009 WL 4823932 (S.D.N.Y. Dec. 15, 2009),
   *aff'd sub nom. Weisshaus v. Fagan*, 456 F. App'x 32 (2d Cir. 2012) ........................................5

### **Statutes**

28 U.S.C. § 455.............................................................................................................................2, 6

### **Other Authorities**

Code of Conduct for United States Judges, Canon 3A(6) ...............................................................8

**INTRODUCTION**

The government is placing the Court in an untenable position. The crux of its Opposition is that the Court's past remarks that the Turkish justice system was being corrupted in 2013/2014 by such actions as the "arbitrar[y] relocating [and] firing [of] judges and prosecutors," (Dkt. No. 81-2, at 169), were "general" in nature and cannot reasonably be understood to relate to Mr. Zarrab. Dkt. No. 83 ("Opp."), at 13. But here is how the government previously characterized Mr. Zarrab's role in that scandal:

> [T]here appear to be credible allegations that **Zarrab has already secured his release** from Turkish prison by **causing the wholesale reorganization of the Turkish prosecutor's office and police department through bribery**. Certainly, a **defendant who can impact an entire judicial system** could evade the bail conditions proposed ....

Dkt. No. 18 ("Bail Opp."), at 25 (emphasis added). The government simply cannot have it both ways. It cannot claim that Mr. Zarrab "caus[ed]" the scandal in Turkey and single-handedly "impact[ed]" the "entire" judicial system there, while pretending that it creates no cause for concern that this Court has already expressed views on those exact events.

The government makes matters worse (Opp. 15 n.5) when it reports that it intends to continue raising Mr. Zarrab's supposed central role in the events this Court already deemed an "attack" on the "rule of law" in Turkey in its 2014 Symposium comments. Dkt. No. 81-2, at 168. The government announces in a footnote, as if it is a minor point, that it intends to press "at trial" its claim that Mr. Zarrab used corruption to avoid prosecution in Turkey. Opp. 15 n.5. The government thus makes clear that the danger Mr. Zarrab has identified in his motion is real—*i.e.*, that a perception of partiality will inevitably arise out of the Court's oversight of a case that the government views to encompass events the Court has already criticized. Moreover, the government's intention to inject those events at all phases of this prosecution confirms that the problem will grow larger as the case proceeds.

When the Court spoke in Turkey, it could never have foreseen that this case would be brought or assigned to Your Honor. The government makes much of statements by Mr. Zarrab's counsel expressing their high opinion of this Court, but those statements only serve to highlight that this motion was not made lightly and signals no disrespect. Rather, this motion became necessary because of the unfortunate circumstance—which did not come into full focus until after recent events here and in Turkey—that it would create an unavoidable perception of partiality for this Court to continue to preside over this case. The prudent, fair course is recusal.

## ARGUMENT

### I.   MR. ZARRAB'S MOTION IS TIMELY

The government urges that "there is no need for the Court to reach the merits" of this motion (Opp. 7), as if the goal, on a motion that raises fundamental fairness concerns, should be to avoid the issue. *See In re School Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992) ("section 455 addresses not only fairness to the litigants but also the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted"). In any event, there has been no waiver. Mr. Zarrab did not "wait[]" more than four months from learning of the grounds for recusal to seek relief (Opp. 7), and the government is wrong that "nothing has changed" (*id.* at 8) since Mr. Zarrab's arraignment on April 27, 2016.

It was at arraignment that the Court disclosed that it had attended the Symposium, which it reported was co-sponsored by the Yüksel Karkin Küçük ("YKK") law firm and the U.N. Local Compact. The government's assertion that this disclosure provided Mr. Zarrab with all the information needed to support his motion (Opp. 7) ignores each of these later developments:

- May 17, 2016: YKK admits in response to a media inquiry that it sponsored the Symposium. This is first time it is reported that YKK sponsored the Symposium. YKK had not been mentioned in any conference materials.

- May 23, 2016: Turkey's leading paper reports that U.N. Global Compact and U.N. Global Compact in Turkey denied sponsoring the Symposium.

2

- July 15, 2016:  A coup is attempted in Turkey and attributed by the Turkish government to followers of Fethullah Gülen.

- July 22, 2016:  The Chief Public Prosecutor of Istanbul charges name partners of YKK as members of an "Armed Terrorist Organization" led by Fethullah Gülen.

- July 23, 2016:  Turkish media reports that YKK offices in Istanbul are raided and the law firm shut down.

Thus, it was not until late July that, as part of the Turkish government's response to the coup attempt in mid-July, the YKK firm and its principals—this Court's hosts in Turkey—were prosecuted as terrorists by the same Turkish authorities whose actions the Court disapproved at the Symposium, and that the prosecutors here are claiming are in league with Mr. Zarrab.

The government suggests that these recent developments were nothing new because YKK's partners had been identified as possible Gülenists in a newspaper article "almost four months ago." Opp. 9.  But that of course is a far cry from being driven out of one's profession, charged as terrorists, and (in the case of two of the YKK firm's partners) pursued as fugitives. The hostilities between YKK, which sponsored this Court's participation in the Symposium, and the Turkish government, which the government here claims is subject to undue influence by Mr. Zarrab, became extreme and concrete only weeks before Mr. Zarrab's motion.

The government also ignores its own role, through its very recent statements, in creating the concerns that prompted this motion.  In its Opposition to Mr. Zarrab's Motion to Dismiss, filed three weeks before this motion was entered, the government asked the Court to accept the view that Mr. Zarrab holds outsized influence over Turkish officials.  Dkt. No. 75, at 3 ("What arguably is unprecedented about this case is ... [Mr. Zarrab's] level of access to both Iranian and Turkish government officials ...."). And in opposing this motion, the government says it plans to use evidence "relating to the investigation of Zarrab in Turkey" at trial.  Opp. 15 n.5.  These recent filings underscore the need for recusal, as the government has made clear that this Court will be asked, repeatedly, to judge the same events in Turkey it commented upon previously.

3

The lack of unreasonable delay is confirmed by the four-factor test in the government's own cited case (Opp. 6-7), *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 334 (2d Cir. 1987).

*First*, the government exaggerates in claiming that the parties have already "participated in a substantial manner in trial or pre-trial proceedings." Opp. 6 (quoting *Apple*, 829 F.2d at 334). It is early in this case. The government has not even completed discovery, and only a single motion, in which the Court stressed that it had yet to assess the substantive merits of the prosecution or defense, has been decided. *See* Dkt. No. 41.

*Second,* the Court took appropriate action to ensure *against* a "waste of judicial resources" in the event this motion is granted, *Apple*, 829 F.2d at 334, when it adjourned argument on the other two outstanding motions. At this early stage in the case, there is far more potential waste from wrongly denying the motion.

*Third*, there has been no entry of judgment; this case is nowhere close to that stage.

*Fourth*, "good cause for delay," *id.*, if there has been any delay at all, exists because Mr. Zarrab's counsel reasonably investigated the facts in Turkey. Diligence in investigation is permitted precisely to discourage a rush to seek recusal on incomplete facts. *See United States v. Amico*, 486 F.3d 764, 773-75 (2d Cir. 2007) (reversing denial of recusal motion made two years into case and weeks before trial where movants learned of relevant facts over time, and where earlier motion may have lacked substance and antagonized the judge).

Unlike this case, all of the cases cited by the government had progressed far beyond early motion practice. In *Apple*, the movant, an insurance company, filed its motion after judgment was entered against the insured. 829 F.2d at 334. In *United States v. Durrani*, 835 F.2d 410, 427 (2d Cir. 1987), the defendant filed his motion after the start of jury selection. In *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005), the movant sought to recuse a

4

magistrate who had overseen a settlement conference during the hearing on the enforceability of the settlement agreement.  And in *Weisshaus v. New York*, No. 08-cv-4053, 2009 WL 4823932, at *4 (S.D.N.Y. Dec. 15, 2009), *aff'd sub nom. Weisshaus v. Fagan*, 456 F. App'x 32 (2d Cir. 2012), the plaintiff sought recusal 19 months after learning the grounds for the motion and shortly after the judge ordered the plaintiff deposed.  There is nothing remotely similar here.

The motion to recuse was timely filed.

## II. RECUSAL IS WARRANTED ON THE MERITS

On the merits, the government mischaracterizes both the applicable legal standard and the objective appearance of the Court's statements in Turkey.

### A. The Government Applies The Wrong Legal Standard

The government wrongly holds Mr. Zarrab to the burden of showing "such a high degree of favoritism or antagonism as to make fair judgment impossible."  Opp. 10, 12 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  This mischaracterizes what *Liteky* says.  The full quote is: "[O]pinions formed by the judge *on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  510 U.S. at 555 (emphasis added).  Mr. Zarrab is not relying on facts the Court learned presiding over this or a prior case, but instead on facts learned from "extrajudicial" sources—*i.e.*, the Symposium, and any materials the Court reviewed, or discussions it had, that informed the opinions it expressed at that event or to Today's Zaman.  The "high degree of favoritism" standard is irrelevant.

The standard instead is the usual one of whether "an objective, informed observer could reasonably question the judge's impartiality," regardless of actual bias.  *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).  Under this standard, and again contrary to what the

5

government asserts is the law (Opp. 16 (arguing that Court's likely lack of awareness that YKK partners have been arrested shows impartiality)), it is irrelevant whether the judge knows of a disqualifying circumstance. The Supreme Court held in *Liljeberg v Health Servs. Acq. Corp.*, 486 U.S. 847, 859 (1988): "Scienter is not an element of a violation of § 455(a)," since a judge's lack of knowledge of a disqualifying circumstance "does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons." Thus, recusal is warranted, even without actual bias, if there is a "real possibility" a court's conduct or comments could be construed to favor one side over another. *In re Boston's Children First*, 244 F.3d 164, 170 (1st Cir. 2001).

### B. The Government Mischaracterizes The Court's Past Comments

The government depicts the Court's comments in Turkey as mere "innocuous" platitudes (Opp. 8, 13)—"noncontroversial statements about fundamental principles of law." *Id.* at 6, 12. But the Court's comments were far from "general." *Id.* at 13. Rather, the Court described its purpose in attending the Symposium as "speak[ing] out about recent developments affecting the Rule of Law in Turkey," and expressed its view that "the rule of law" was then under "attack" in that country. Dkt. No. 81-2, at 168. The issue is whether the Court's comments, *considered in the context of the events in Turkey the Court was commenting upon*, could be understood by a reasonable observer to bear on Mr. Zarrab or the issues in this case. *See Boston's Children*, 244 F.3d at 168 ("we must consider the comments in the context in which they were issued"); *In re Cooley*, 1 F.3d 985, 995 (10th Cir. 1993) (even where a court's comments do not concern "specific charge[s]" or defendants, Section 455 "asks a broader question" and requires recusal where those comments concern events "inextricably intertwined" with matters before it).[1]

---

[1] The decisions in *Boston's Children* and *Cooley* demonstrate that even statements that might have been intended by the judge as neutral explanations of law or procedure unconnected to any defendant can, by appearance, be disqualifying. *See Boston's Children*, 244 F.3d at 170

6

The government's own statements demonstrate that Mr. Zarrab is inextricably linked to the specific controversy in Turkey on which the Court expressed its views. According to the government, Mr. Zarrab obtained his release in Turkey "by causing the wholesale reorganization of the Turkish prosecutor's office and police department," and single-handedly corrupting the "entire judicial system." Bail Opp. 25. The government has repeatedly placed Mr. Zarrab at the center of efforts by the Turkish government to undermine the justice system. It has cited allegations of Turkish police that "Zarrab and high-ranking Turkish officials conspired to obstruct the Turkish investigation." *Id.* at 13. The government has claimed that Mr. Zarrab was able "to buy access to corrupt politicians in Turkey," and that Mr. Zarrab was exonerated in Turkey "after the Turkish prosecutors and police officers responsible for the investigation were either re-assigned, fired, or arrested and prosecuted themselves." *Id.* at 11.

These are the same events and allegations as to which this Court is reported to have expressed an opinion during its visit to Turkey, at the Symposium and in an interview with Today's Zaman.[2] The Court called it "no secret" that the rule of law was "under some attack in

---

(judge's comment to media that "[t]his is a more complex case" required recusal because it was reasonably construed to suggest that class action plaintiffs' claims for certification and injunction were less than meritorious, even assuming judge "understood her own comments as entirely ethical explanations of the reasons behind court procedures"); *Cooley*, 1 F.3d at 995-96 (judge's decision to appear on national television and comment that "these people are breaking the law," even if intended merely to remind abortion protesters of the binding nature of judge's order, created appearance of pre-judgment of protesters who later came before court).

[2] Another misstatement of law is the government's contention that Mr. Zarrab has invited "impermissible" consideration of media articles, because "[j]udicial inquiry may not . . . be defined by what appears in the press." (Opp. 1, 10 (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988)). The *Drexel* case had nothing to do with statements in the media, *see generally* 861 F.2d 1307, and in any event the principle is simply that a litigant should not be allowed to create grounds for recusal by manipulating the media. *See, e.g.*, *id.* at 1309 (warning against the potential for judge shopping); *In re Aguinda*, 241 F.3d 194, 202 (2d Cir. 2001) (same). There is no principle that prohibits referring to media as a touchstone for what a reasonable observer might conclude. *See Boston's Children*, 244 F.3d at 167 ("When the issue of partiality has been broadly publicized, and the claim of bias cannot be labeled as frivolous, judicial disqualification may be one of the unusual situations appropriate for the writ [of mandamus]") (citations and alterations omitted). Today's Zaman, for example, understood this Court to be "[r]eferring to the corruption probe that started on Dec. 17, 2013," which was the date of Mr. Zarrab's arrest, when the Court stated that "[i]t is inappropriate to change the rules of

7

Turkey." Dkt. No. 81-2, at 168.  The Court also urged, in the wake of the corruption scandal in which Mr. Zarrab was accused of avoiding jail by securing the reassignment of prosecutors and judges, that the rule of law is subverted when "the state ... unilaterally and arbitrarily relocat[es] [and] fir[es] judges and prosecutors who are actively pursuing an investigation," "disrespect[s] court decisions," and "attempt[s] to dominate the judiciary," or "change[s] the rules of the game ... while the very game is in progress." *Id*. at 169.  In other words, this Court has already expressed views concerning the "wholesale reorganization of the Turkish prosecutor's office and police department" that the government here has treated as synonymous with Mr. Zarrab.  Bail Opp. 25.  There can be little doubt, when viewed in the context of the events that were the subject of the Symposium, that "an objective, disinterested observer" fully aware of the facts, *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992), would understand the Court's comments as sympathetic to the view, pressed by the government here, that Mr. Zarrab corruptly escaped prosecution in Turkey.

The fact that the Court's comments did not name Mr. Zarrab, on which the government places great reliance (Opp. 12-13), has no legal consequence.  *Cooley*, 1 F.3d at 995 (court's comments about unidentified protestors required recusal).  Regardless of whether the court's comments could reasonably be construed to pertain to Mr. Zarrab (and the government's past statements demonstrate that they could), the fact remains that the Court unquestionably addressed the merits of factual assertions the government advances in this case.  *See* Code of Conduct for United States Judges, Canon 3A(6) ("A judge should not make public comment on the merits of a matter pending or impending in any court.").  By crediting the view that the Turkish legal system was "under some attack" (Dkt. No. 81-2, at 168), and that the Turkish

---

the game while the game is taking place." Dkt. No. 81-1.  A more recent article discusses the "risk of bad optics" resulting from the Court's statements. *Zarrab Investigation Expands to Europe*, Hürriyet Daily News (Sept. 8, 2016), *available at* http://www.hurriyetdailynews.com/Default.aspx?pageID=238&nID=103700&NewsCatID=534.

8

government improperly "change[d] the rules" by replacing prosecutors and other officials (*id.* at 169), the Court has already accepted a factual premise with which the government will ask it to agree again and again (if this case is not dismissed).  For instance, if Mr. Zarrab testifies at trial, the government will surely seek to cross-examine him on events in Turkey, leaving the Court to decide whether there is a good-faith basis for the government's depiction of those events.  And if Mr. Zarrab is convicted, the government will advocate a sentence reflecting his supposed corrupt conduct in Turkey, and the Court will thus be asked to agree with the government's view (and the Court's own past assessment) that the Turkish legal system was in fact corrupted.

The government insists that the present situation is not unusual (Opp. 1), but it plainly is.  There are "few reported cases" that deal with recusal based on public comments to the media, *Boston's Children*, 244 F.3d at 169, and none regarding a judge's comments on a foreign corruption scandal allegedly involving a defendant, or ties to parties that paid the judge's expenses to attend a conference and were later charged as terrorists by a foreign government allegedly allied with a defendant.  The facts here are far more extreme than in any of the cases the government invokes.  *See, e.g.*, *Aguinda*, 241 F.3d 194 (affirming denial of recusal motion based on judge's attendance at an environmental conference where his expenses were paid by an organization partly funded by defendant, where movants conceded that no presenter "discussed any issues material to the merits of the underlying case"); *United States v. Pitera*, 5 F.3d 624 (2d Cir. 1993) (judge's lecture to law enforcement task force that included advice on increasing prospects for conviction did not warrant recusal where judge did not reference defendant's case, criticized prosecutors' practices in the same lecture, and gave "a variety of trial practice seminars"); *In re Judicial Misconduct*, 632 F.3d 1289 (9th Cir. 2011) (judge's speeches expressing apprehension about "race relations and religious tolerance" after 9/11 and criticizing a

senator's investigation of campaign finance controversies were mere comments "on current events and legal developments").

The gymnastics that the government attempts—resisting recusal by insisting that the Court's comments cannot be construed as related to Mr. Zarrab, while simultaneously pursuing a trial strategy that would place him at the center of the very events the Court was commenting upon—highlight how serious Mr. Zarrab's concerns are. The government tries to downplay this obvious tension by relegating to a footnote its announcement that it "anticipates" relying on "evidence relating to the investigation of Zarrab in Turkey" to prove Mr. Zarrab's "willfulness and intent and to rebut any defense of good faith." Opp. 15 n.5. The government's position is breathtaking: in the same brief in which it insists Mr. Zarrab has no basis to be concerned about the Court's past comments expressing the view that the Turkish justice system was corrupted, the government admits it intends to present proof at trial that Mr. Zarrab corrupted the Turkish justice system. *Id*. And mere pages after criticizing Mr. Zarrab for not filing this motion earlier, the government asserts that any questions about his purported misconduct in Turkey following his 2013 prosecution—the issue at the heart of Mr. Zarrab's motion—should be deferred until some later "appropriate time." *Id.*

This Court could never have known that this case would be assigned to its docket when it spoke following the December 17/25 cases in Turkey. But the Court now finds itself overseeing a prosecution in which the government is emphasizing the same allegations of foreign corruption that the Court has already appeared to accept as valid. The fair and prudent course is for the Court to recuse itself before the government creates an even larger problem by continuing to press past events in Turkey into this prosecution.

## **CONCLUSION**

For the foregoing reasons, the Court should recuse itself from this case.

Dated:  New York, New York
        September 21, 2016

| BANCROFT PLLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| /s/ *Viet D. Dinh* | /s/ *Christine H. Chung* |
| Viet D. Dinh | Christine H. Chung |
| Jeffrey M. Harris | Adam M. Abensohn |
| Edmund G. LaCour Jr. | 51 Madison Avenue |
| 500 New Jersey Avenue, NW | 22nd Floor |
| 7th Floor | New York, NY 10010 |
| Washington, DC 20001 | Tel:  (212) 849-7000 |
| Tel:  (202) 234-0900 | Fax:  (212) 849-7100 |
| Fax:  (202) 234-2806 | |
| BRAFMAN & ASSOCIATES, P.C. | CLIFFORD CHANCE US LLP |
| /s/ *Benjamin Brafman* | /s/ *George D. Kleinfeld* |
| Benjamin Brafman | George D. Kleinfeld |
| Marc Agnifilo | 2001 K Street, N.W. |
| Joshua D. Kirshner | Washington, DC 20006 |
| 767 3rd Avenue, 26th Fl. | |
| New York, NY 10017 | |
| Tel:  (212) 750-7800 | |
| Fax:  (212) 750-3906 | |
| AKIN GUMP STRAUSS HAUER & FELD LLP | LEWIS BAACH KAUFMANN MIDDLEMISS PLLC |
| /s/ *Jonathan C. Poling* | /s/ *Aaron T. Wolfson* |
| Jonathan C. Poling | Aaron T. Wolfson |
| 1333 New Hampshire Avenue, N.W. | Tara J. Plochocki |
| Washington, DC 20036 | 405 Lexington Avenue |
| | 62nd Floor |
| | New York, NY 10174 |

*Attorneys for Defendant Reza Zarrab*