```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/20/16
```

**DEFENDANT'S PROTECTIVE ORDER APPLICATION**

**VIA ECF AND HAND DELIVERY**

October 19, 2016

_Government to respond_
_by 10/24/16 at 12:00 noon._

Honorable Judge Richard M. Berman
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 12D
New York, NY 10007

**SO ORDERED:**
Date: _10/20/16_  Richard M. Berman
Richard M. Berman, U.S.D.J.

Re:   United States v. Reza Zarrab, _et al._,
      S1 15 Cr. 867 (RMB)

Dear Judge Berman:

We write on behalf of defendant Reza Zarrab to respectfully request that the blanket protective order entered in this case on June 1, 2016 be modified to permit Mr. Zarrab and his counsel to show materials produced by the government to witnesses in preparing his defense. We have conferred with the government and have reached an impasse regarding this matter.

**Factual Background**

A.    The Protective Order

On June 1, 2016, this Court entered a Protective Order relating to "pre-trial discovery" to which defense counsel had consented "in the interest of expediting the discovery process." Protective Order, June 1, 2016, ECF No. 27 ("Protective Order"), at 1 (annexed hereto as Exhibit A). In the "Whereas" clauses, that Order contained the government's representation that the "discovery materials" it intended to provide, in compliance with its discovery obligations, contained "certain materials" that "if disseminated to third parties, could, among other things, implicate the safety of others and impede ongoing investigations." _Id._ at 1.

The Protective Order provided that all discovery materials produced by the government were restricted in use and dissemination to members of the defense team only, without exception and without requiring any designation of heightened confidentiality or sensitivity. Specifically, the Protective Order stated that discovery materials provided to defense counsel would not be further disseminated by Mr. Zarrab or his counsel to "any individuals, organizations, or other entities, other than members of the defense team," where the phrase "defense team" was further defined to be limited to: "defendant's counsel, paralegals, investigators, translators, litigation support personnel, secretarial staff, expert witnesses, expert consultants, and the defendant." Protective Order at 1-2. The Order further obligated defense counsel: (1) to provide a copy of the Protective Order to each individual to whom disclosure of the discovery materials was made; and

Honorable Richard M. Berman
October 19, 2016

(2) to advise each individual to whom disclosure of the discovery materials were made not to
further disseminate or discuss the materials. *Id.* at 2.

The Protective Order contained no carve-out that permitted defense counsel, absent further
authorization of the Court, to disclose discovery materials to fact witnesses or other third parties
consulted by a member of the defense team in the course of investigating the action or preparing
the defense. *See* Protective Order. The Order further categorically prohibited the disclosure of
any materials produced by the government "to any foreign persons or entities (except if such
persons or entities are members of the defense team)" and stated that discovery materials "may not
be transmitted outside the United States for any purpose." *Id.* at 2.

The only recourse provided by the Protective Order, in the event the defense wishes to
disclose any part of the discovery materials to fact witnesses during investigation or trial
preparation, is for defense counsel to "seek authorization of the Court, with notice to the
Government" and to obtain approval based on a "determin[ation] by the Court that such access is
necessary for the purpose of preparing the defense of the case." Protective Order at 2.

B.    The Government's Discovery and the Parties' Meet-and-Confer Discussions Regarding
      Modifying the Protective Order

Before June 1, 2016, when the Protective Order was entered, the government had made
only one document production. That production was limited in volume and included the original
and superseding indictments, Mr. Zarrab's post-arrest statement, BOP records and emails relating
to Mr. Zarrab, search warrants and the supporting applications and affidavits, communications
recovered from Mr. Zarrab's iPhone, and OFAC license check results. The government has
produced the vast majority of its discovery since that June 1 production. In a series of productions
dated from June to September 2016, the government has produced over 600,000 documents, the
vast majority of which are email communications and bank records. The government is producing
additional emails and other materials this week, the volume of which is yet unknown to the defense.

In early August, after if became clear that most of the discovery materials were either: (1)
bank records relating to funds transfers requested by non-U.S, companies the government believes
to be affiliated with Mr. Zarrab; or (2) emails of Mr. Zarrab or employees of his companies or
emails of employees of businesses with whom Mr. Zarrab or his employees had correspondence,
defense counsel met and conferred with the government to seek a modification to the terms of the
Protective Order.

In light of the types of materials actually disclosed in discovery, defense counsel inquired
during meet-and-confer discussions in August about the reason that the government had proposed
a Protective Order that disallowed the disclosure of discovery materials to anyone but the defense
team. In response, the government stated that "national security" interests warranted the blanket
prohibition on dissemination of the materials, even as to defense fact witnesses. The government
did not claim that either "safety considerations" or "ongoing investigations," Protective Order at
1, required the limitation. When asked what "national security" interests were at stake, the

Honorable Richard M. Berman
October 19, 2016

government declined to identify any such interest or to identify any documents or categories of documents that, if disclosed, would implicate such interests.

In response to a government offer to consider language modifying the Protective Order, defense counsel proposed that the prohibition on disclosure in the Protective Order be modified to carve out, in addition to the "defense team," "fact witnesses or other third-parties interviewed or consulted by the defendant's counsel or a member of the defense team in the course of investigating the action." It proposed modifying the prohibition on disclosing discovery materials to "any foreign persons or entities" or transmitting discovery materials "outside of the United States" in the same manner, *i.e.*, to permit disclosure to fact witnesses or other third-parties as previously described. The defense did not propose to modify the requirements that any individual to whom disclosure is made be provided with a copy of the Protective Order and advised of their obligations under that Order.

The government declined the modifications proposed by the defense, saying that the amendments would "read" the prohibition on foreign dissemination "out of the protective order." The government provided no additional information about why any prohibition on dissemination was necessary.

As the Court is aware, the government concedes that all of the funds transfers at issue in this case were requested overseas, of foreign banks, and that Mr. Zarrab's interactions with any person in relation to any of these transfers occurred abroad. As a result of the obligations imposed by the Protective Order, the defense team to date has been unable to disclose any materials produced by the government to any fact witness or other third-party interviewed in the course of investigation or trial defense.

### Argument

A party seeking a protective order over discovery materials must demonstrate that "good cause" exists for the protection of the material. Fed. R. Crim. P. 16(d)(1); *see United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012) (noting that "Rule 16(d) provides the basis for entering a protective order" in a criminal case). Further, "[g]ood cause remains the standard even where, as here, the parties agreed to the terms of the protective order." *Bulger*, 283 F.R.D. at 52; *see also United States v. Luchko*, Crim. No. 06-319, 2006 WL 3060985, at *3 (E.D. Pa. Oct. 27, 2006) ("Good cause must exist [to allow] a protective order . . . even where parties consent to a stipulated protective order.") (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 481 (3d Cir. 1995)).

The "good cause" standard, moreover, requires more than "conclusory allegations," *see United States v. Smith*, 985 F. Supp. 2d 506, 528 (S.D.N.Y. 2013); it requires a "particularized, specific showing," *Bulger*, 382 F.R.D. at 52; *see also Luchko*, 2006 WL at 3060985, at *3 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). In assessing whether "good cause" has been demonstrated, "courts should weigh the

Honorable Richard M. Berman
October 19, 2016

impact . . . on a defendant's due process right to prepare and present a full defense at trial." *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002).

Here, to expedite the government's production of discovery, when discovery was just getting underway and promised to be voluminous, the defense agreed to a protective order that imposes a blanket prohibition on the disclosure of any discovery materials to anyone outside the defense team. Four months later, as the government completes discovery, the circumstances have altered.

First, the vast majority of the materials produced in discovery have turned out to consist of business records and business correspondence—specifically: (1) records produced by "big banks," such as JP Morgan and Citi and relating to hundreds of thousands of funds transfers requested of foreign banks by companies the government views to be affiliated with Mr. Zarrab; and (2) emails produced by gmail, Yahoo, and Hotmail and other service providers and allegedly maintained by Mr. Zarrab and his own employees or by individuals and entities with whom Mr. Zarrab and his employees allegedly transacted business.

Second, with discovery reaching an end and a trial date of January 23, 2016 quickly approaching, preparation of the trial defense is intensifying. The prohibition on disclosing *any* discovery material to anyone outside the defense team—which renders the defense unable to show any witness or third party any discovery material, absent prior court authorization and notification of the government—is an overly broad impairment of Mr. Zarrab's ability to prepare his defense. Given the nature of the charges and the transactions at issue, it is meaningless to attempt to interview witnesses without being able to refer to the discovery materials. Also, in a case where the underlying events occurred almost exclusively overseas—and it is agreed that Mr. Zarrab and his businesses acted solely from outside the United States—the prohibitions on providing discovery materials to "any foreign persons or entities" or even transmitting discovery materials "outside of the United States for any purpose" have the effect of disabling Mr. Zarrab's defense. The government has indicted a case where the proof and witnesses are outside of the United States and is simultaneously disallowing Mr. Zarrab any means of preparing his factual defense, other than inside the United States.

Mr. Zarrab respectfully requests that the Protective Order be modified in the manner he requested of the government, *i.e.*, to permit the disclosure of discovery materials to fact witnesses and other third-parties interviewed or consulted by the defense team in investigation the action or preparing the defense, on the conditions that the Protective Order be disseminated to any person to whom disclosure is made and that the defense team advise any such person of their obligations under the order.

The most fundamental reason for this request is that the government has failed to make any "particularized, specific showing" of the need for restricting dissemination of any part of the discovery materials. The government's "conclusory allegation" of "national security interests," upon which the government has declined to elaborate, does not come close to demonstrating "good cause" for the restrictive nature of the Protective Order *See, e.g.*, *Smith*, 985 F. Supp.2d at 530-31

Honorable Richard M. Berman
October 19, 2016

(declining to accept government's rationale of need to protect third parties with restrictive protective order provisions where government failed to identify third parties potentially affected, to specify discovery materials that would "unfairly sully their reputation," or to state whether the government intended to introduce the conduct of third parties at public trial in any event). Nor is it at all apparent how it would impair or undermine "national security" for the defense to disclose to fact witnesses (under obligations that they will not further disseminate the information) the business emails and bank records which are overwhelmingly the content of the government's discovery materials. Presumably the government intends to make public the content of exactly those types of records at trial.

Notably, the onerous restrictions which the government seeks to maintain here—even at the cost of preventing Mr. Zarrab from being able to meaningfully interview and consult any fact witness—are not ones on which they have insisted, even in cases that encompass the production of *classified* material. *United States v. Ashe*, 15 Cr. 706 (VSB), is a case currently pending in this district in which the government requested to make an application under Section 4 of the Classified Information Procedures Act ("CIPA"), which enables the government, upon court authorization, to delete classified information from materials the government is obligated to produce in discovery and to substitute a summary of the information. *United States v. Ashe*, 15 Cr. 706 (VSB), Government's letter application seeking leave to file CIPA application, ECF No. 103 (citing 18 U.S.C. app. § 4); *see also* Order setting schedule for briefing of CIPA motion, ECF No. 107. Notwithstanding that the *Ashe* case involved classified information, in the government's view, the government proposed a protective order there that: (1) created a sub-set of "Restricted Information" within the government's discovery materials; and (2) permitted the disclosure of even "Restricted Information" to "fact witnesses or other third-parties interviewed or consulted by the defendants' counsel or a member of the defense team in the course of investigating the action," so long as such witnesses and third parties were provided with the order and subject to its terms. *United States v. Ashe*, 15 Cr. 706 (VSB), Protective Order on Consent, ECF No. 86 (annexed hereto as Exhibit B).[1]

The government will doubtless maintain, as it did in meeting and conferring, that it is sufficient for Mr. Zarrab to invoke the procedure set forth in the Protective Order of "seek[ing] authorization of the Court, with notice to the Government, to provide specified discovery materials to persons whose access to discovery materials is otherwise prohibited" by the Order. Protective Order at 2.

This contention is meritless, to the extent the government is referring to instance-by-instance pre-authorization. First, the government's failure to advance any "particularized, specific" showing of "good cause" for any restriction on the defense's use of the discovery materials, *Bulger*, 382 F.R.D. at 52, means that the prohibitions in the Protective Order are themselves invalid. It reverses the burden, and burdens Mr. Zarrab's due process rights, to compel

---

[1]  Defense counsel called the *Ashe* protective order to the attention of the government in this case. The government responded that the interests in *Ashe* were "different" but declined to say how.

Honorable Richard M. Berman
October 19, 2016

him to seek pre-authorization to disclose information that has not been demonstrated to qualify for any enhanced protection.

Second, the procedure of forcing Mr. Zarrab to notify the government and the Court in advance of any intended use of the discovery materials unduly restricts Mr. Zarrab's right to prepare his defense and his defense strategy confidentially.   Courts routinely reject pre-authorization requirements of notifications to the Court and government as overbroad, even in cases in which a "national security" interest might seem far more apparent. *See, e.g.*, *Lindh*, 198 F. Supp. 2d at 743 (declining to enter protective order provision that would have required Lindh to notify government of intended disclosure of discovery materials to witnesses on basis that identities of defense witnesses constituted defense strategy; *ex parte* filing of acknowledgment of having read and understood protective order deemed to be sufficient); *United States v. Carilles*, 654 F. Supp. 2d 557, 569-70 (W.D. Tex. 2009) (accepting defense objection that for protective order to require defendant to notify Government and obtain Court pre-approval of each instance of disclosure would be "time-consuming, expensive, and would essentially require Defendant to keep the Court and the Government on perpetual notice of his trial preparation-related activities."). Particularly in the absence of any "national security" or other interest that warrants any use restriction, Mr. Zarrab should be free to disclose discovery materials to witnesses and third parties to the extent necessary to prepare his defense, so long as disclosure is subject to the conditions provided in the Protective Order for dissemination to members of the defense team.

### Conclusion

For the foregoing reasons, Mr. Zarrab respectfully requests that the Court modify the Protective Order in the following respects:

(1) to state "and fact witnesses or other third parties interviewed or consulted by the defendants' counsel or a member of the defense team in the course of investigating the action," after the end of the second line of page 2 of the Protective Order;

(2) to delete the phrase "and may not be transmitted outside of the United States for any purpose" from the first full paragraph on page 2 of the Protective Order and to add to the end of the parenthetical phrase in the same paragraph "or fact witnesses or other third parties as described in the preceding paragraph."

In the alternative, Mr. Zarrab respectfully requests that the Court deem this letter application to be a request under the Protective Order for "authorization to the Court, with notice to the Government" to provide discovery materials to fact witnesses or other third parties for the purpose of investigating Mr. Zarrab's case and preparing his defense; and that the Court grant the requested authorization, on the conditions that the Protective Order be provided to any such fact witness or third party and that defense counsel advise any such fact witness or third party of his or her obligations under the Protective Order; and that the Court find that the authorization is warranted because the disclosure of discovery materials to fact witnesses is necessary for the purpose of preparing the defense of the case.

Honorable Richard M. Berman
October 19, 2016

Respectfully submitted,

BRAFMAN & ASSOCIATES, P.C.

/s/ *Benjamin Brafman*

Benjamin Brafman
Joshua D. Kirshner
767 3ʳᵈ Avenue, 26ᵗʰ Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/ *Christine H. Chung*

Christine H. Chung
Adam M. Abensohn
51 Madison Avenue
22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

/s/ *Aaron T. Wolfson*

Aaron T. Wolfson
405 Lexington Avenue
62nd Floor
New York, NY 10174

*Attorneys for Defendant Reza Zarrab*

cc:     AUSA Michael D. Lockard
        AUSA Sidhardha Kamaraju
        AUSA David W. Denton