H151zarh

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 Cr. 867 (RMB)

5    REZA ZARRAB,

6              Defendant.                  Curcio Hearing

7    ------------------------------x

8                                          New York, N.Y.
                                           January 5, 2017
9                                          9:08 a.m.

10

     Before:
11
                      HON. RICHARD M. BERMAN,
12
                                           District Judge
13

14                       APPEARANCES

15   PREET BHARARA
         United States Attorney for the
16       Southern District of New York
     BY:  SIDHARDHA KAMARAJU , ESQ.
17       DAVID W. DENTON, JR., ESQ.
         MICHAEL D. LOCKARD, ESQ.
18       Assistant United States Attorneys

19   BRAFMAN & ASSOCIATES, PC
         Attorneys for Defendant
20   BY:  BENJAMIN BRAFMAN, ESQ.
         JOSHUA KIRSHNER, ESQ.
21
     KIRKLAND & ELLIS LLP
22       Attorneys for Defendant
     BY:  VIET D. DINH, ESQ.
23       EDMUND G. LaCOUR, JR., ESQ.

24   SULLIVAN & WORCESTER
         Attorneys for Defendant
25   BY:  HARRY H. RIMM, ESQ.

H151zarh

1                                    APPEARANCES
                                    (Continued)
2
ALSO PRESENT:   JENNIFER McREYNOLDS, FBI Agent
3                               SCOTT GEISSLER, FBI Agent

4
ALSO PRESENT:   ASIYE KAY, Interpreter (Turkish)
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H151zarh

1      THE COURT:  Good morning, everybody.  Please be

2  seated.  Happy new year.

3      So this is a continuation and a likely conclusion of

4  the *Curcio* proceeding that we began some sessions ago.  I

5  should note for the record that we have a Turkish language

6  interpreter and ask Mr. Zarrab if he is able to understand

7  these proceedings with the help of the interpreter.

8      THE DEFENDANT:  Yes, your Honor.

9      THE COURT:  Before I start, is there any information

10 that was outstanding from either the government or the defense

11 side that I should be aware of?

12     MR. KAMARAJU:  Nothing from the government, your

13 Honor.

14     MR. BRAFMAN:  Nothing from the defense, your Honor.

15     THE COURT:  Okay.  So what I plan to do today,

16 Mr. Brafman, is to ask Mr. Zarrab the *Curcio* questions

17 substantially in the form that you have submitted them to me.

18 You'll hear some edits that I've made in asking the questions.

19 If you have any issues with that, you can raise them as you see

20 fit.  And I probably have added a few questions.  I did not

21 recall, and don't, whether Mr. Rimm and/or you have gone over

22 in particular the HSBC representation by Kirkland & Ellis with

23 Mr. Zarrab, in particular, and/or the JPMorgan Chase Bank

24 representation.

25     MR. BRAFMAN:  Mr. Zarrab is aware of the general

H151zarh

1  concerns that the Court has about the Kirkland & Ellis

2  representation of banks in general, and I'm not certain which

3  bank matters specifically to Mr. Zarrab, but they may be of

4  concern to your Honor.  But I think he's prepared to answer

5  your questions.

6              MR. RIMM:  Your Honor, in my meeting on

7  December 13th of last year, we discussed, among other things,

8  the HSBC matter and the Second Circuit appeal involving

9  Kirkland & Ellis lawyers.  We also discussed the JPMorgan Chase

10  waiver and the Supreme Court appeal involving Kirkland & Ellis

11  lawyers.

12              THE COURT:  Okay.  Good.  And after we finish that, as

13  I indicated in the memo or order in the last couple of days,

14  I'm happy to hear any comments from the government and from the

15  defense, and Mr. Rimm, if he wishes to join in, with respect to

16  the *Curcio* issues.  I don't plan to rule today but will rule

17  shortly after the close of today's proceedings.

18              So if we could swear in Mr. Zarrab.

19              THE DEPUTY CLERK:  Sir, if you could stand for a

20  moment, please, and raise your right hand.

21              (Defendant sworn)

22              THE DEPUTY CLERK:  Thank you, sir.  You may be seated.

23              THE COURT:  And Mr. Zarrab, you understand that now

24  that you're under oath, your answers must be truthful to the

25  questions that I pose.

H151zarh

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  So I'm going to ask you, as I think

3    you're aware, a series of questions regarding your counsel,

4    particularly the counsel from the Kirkland & Ellis law firm.  I

5    believe this is an important issue.  And the issue is

6    essentially whether you should continue with Kirkland & Ellis,

7    who are Washington counsel, even though their law firm also

8    represents -- I believe the number is eight -- eight banks

9    which have been, in one way or another, implicated or involved

10   in the alleged crimes that you are said to have committed, and

11   those banks are HSBC, JPMorgan Chase, Bank of America, Deutsche

12   Bank, Wells Fargo bank, Citibank, Standard Chartered Bank, and

13   UBS.  Did I miss any banks that --

14          MR. KAMARAJU:  No, your Honor.

15          THE COURT:  Okay.  Sir, you understand what this

16   proceeding is about, do you?

17          THE DEFENDANT:  Yes, I understand.

18          THE COURT:  Okay.  The purpose of my asking these

19   questions is to complete the written record.  You should be

20   aware that I have not yet determined whether Kirkland & Ellis

21   should continue to represent you as counsel in this case.  Do

22   you understand that?

23          THE DEFENDANT:  I understand.

24          THE COURT:  Okay.  Could you start by telling us how

25   old you are.

H151zarh

1            THE DEFENDANT:  33.

2            THE COURT:  And your educational background?  Any

3      degrees?

4            THE DEFENDANT:  I graduated from high school.

5            THE COURT:  And that was in Turkey?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  Are you currently taking any

8      medication?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Could you tell us briefly --

11            THE DEFENDANT:  I use Prozac.

12            THE COURT:  Okay.  And you take that on a regular

13      basis, on a daily basis?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  Okay.  So that would be within the past 24

16      hours, I take it.

17            THE DEFENDANT:  Yes.

18            THE COURT:  How about any alcohol or other drugs or

19      medications in the past 24 hours?

20            THE DEFENDANT:  No.  I didn't take anything other than

21      that.

22            THE COURT:  Okay.  Is there anything that you are

23      aware of, including language differences, that might interfere

24      with your ability to understand my questions here in court

25      today?

H151zarh

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Okay.  So let me start by asking you if

3   you are satisfied with the services of your attorneys thus far

4   in this case.  And by that I mean all of your attorneys.

5          THE DEFENDANT:  I am very happy with their services.

6          THE COURT:  And are you satisfied with the legal

7   advice that they have given you?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Can you name the Kirkland & Ellis

10  attorneys in particular.

11         THE DEFENDANT:  Attorney Viet Dinh and Edmund LaCour.

12         THE COURT:  Thank you.  And do you understand that

13  your attorneys are employed by several different law firms and

14  they may have different obligations from their obligations to

15  you; that is to say, they have obligations to other clients of

16  those law firms?

17         THE DEFENDANT:  I'm aware of that.

18         THE COURT:  And are you aware that on or about

19  September 12, 2016, there was an announcement that, including

20  Mr. Dinh and Mr. Clement and I believe also Mr. Harris and

21  Mr. LaCour, your attorneys who were with the firm of Bancroft,

22  it was announced that they would be joining Kirkland & Ellis?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And are you also aware that they did in

25  fact join Kirkland & Ellis in the following month, in October

H151zarh

1    of 2016?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Have Mr. Clement or Mr. Dinh or

4    Mr. Harris, or Mr. LaCour, for that matter, informed you that

5    the law firm with which they were previously associated,

6    namely, the Bancroft law firm, was -- I don't know if it was an

7    acquisition, there was some discussion about merger or

8    acquisition, but -- that those lawyers did join the firm of

9    Kirkland & Ellis in October 2016, I think on October 22?  Is

10   that the official date?

11             MR. DINH:  That's correct, your Honor.

12             THE COURT:  Of 2016.  Are you aware of that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And that those four gentlemen are

15   currently with the law firm of Kirkland & Ellis.

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have any of your attorneys from the law

18   firm of Kirkland & Ellis informed you that their law firm

19   currently also represents, my understanding is, eight banks,

20   including the banks that I mentioned before -- namely, HSBC,

21   JPMorgan, Bank of America, Deutsche Bank, Wells Fargo Bank,

22   Citibank, Standard Chartered Bank, UBS -- and that the

23   government in this case involving you alleges that those banks

24   are victims of the conspiracies charged in the indictment

25   against you in this case?

H151zarh

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  And do you also know that, with respect to

3    two of those banks -- namely, HSBC and JPMorgan -- that at

4    least some of the Kirkland & Ellis attorneys -- Mr. Clement,

5    Mr. Dinh, and Mr. Harris -- are working currently and directly

6    for HSBC and JPMorgan Chase on two separate litigation matters?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  And are you aware that one of those

9    matters -- that is to say, the HSBC matter -- stems from a

10   criminal case involving violation of economic sanctions against

11   Iran in which HSBC was accused of those violations?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Have any of your attorneys, your Kirkland

14   & Ellis counsel, informed you that they personally do

15   participate in representing two of those banks -- that is to

16   say, JPMorgan Chase and HSBC?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And have they advised you that with

19   respect to other banks, while they may not participate in

20   representing those other banks, they nevertheless have ethical

21   obligations to the other banks because they are a client of the

22   law firm that they work for -- namely, Kirkland & Ellis?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  So you are then aware of this issue that

25   Kirkland & Ellis represents not only you but eight of the banks

H151zarh

1    that I have mentioned simultaneously.

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that the fact that your

4    lawyers from Kirkland & Ellis represent you and simultaneously

5    represent a bank alleged to be victims in this case may lead

6    them to have loyalties divided between yourself on the one hand

7    and those banks on the other?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And do you understand that while they may

10   have these divided loyalties, you nevertheless are entitled to

11   have counsel who have no divided loyalties, who are loyal only

12   to yourself?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And do you understand that, as part of

15   these divided loyalties that Kirkland & Ellis lawyers have, in

16   some instances Kirkland & Ellis might have an incentive to put

17   the interests of those banks ahead of your own interests?

18             THE DEFENDANT:  Yes.

19             THE COURT:  So let me give you some examples of the

20   ways in which the allegiance of your lawyers from Kirkland &

21   Ellis could adversely affect their representation of you in

22   this case.  And in doing so, I'm going to ask you if you are

23   aware that this dual representation could affect the way that

24   your lawyers from Kirkland & Ellis consider and advise you with

25   respect to the following:

H151zarh

1              One would be whether and when you should plead guilty

2    in this case.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Another would be whether and when you

5    should seek to cooperate with the government in this case.

6              THE DEFENDANT:  Yes.

7              THE COURT:  Another is what defenses you should raise

8    in this case in defending yourself.

9              THE DEFENDANT:  Yes.

10             THE COURT:  Another might be whether you should

11   testify at the trial in this case.

12             THE DEFENDANT:  Yes.

13             THE COURT:  Another area might be which witnesses,

14   including any bank witnesses, should be cross-examined and what

15   questions they should be asked.

16             THE DEFENDANT:  Yes.

17             THE COURT:  Another might be which witnesses should be

18   subpoenaed and called to testify and what other evidence should

19   be offered on your behalf.

20             THE DEFENDANT:  Yes.

21             THE COURT:  Another area might be what arguments

22   should be made on your behalf to the jury at a trial in this

23   matter.

24             THE DEFENDANT:  Yes.

25             THE COURT:  And another could be what arguments to

H151zarh

1   make to the Court and what facts to bring to the Court's

2   attention before trial or during trial or, if there were a

3   trial and a conviction, at sentencing.

4           THE DEFENDANT:  Yes.

5           THE COURT:  So let me further expand on some of these

6   examples and ask you some additional questions related to the

7   ones we've just gone over.

8           One is:  Do you understand that your attorneys from

9   Kirkland & Ellis may not wish to take positions in this case,

10  either before trial or during trial or at sentencing or on

11  appeal, that are critical of the banks that are clients of

12  their law firm?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And they may not wish to do that even if

15  criticizing those banks might help in your defense.

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do you understand that your attorneys

18  from Kirkland & Ellis will not be cross-examining witnesses who

19  are employees of the eight banks that I mentioned, should they

20  in fact testify at your trial?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And are you aware that your attorneys from

23  Kirkland & Ellis may have access to or may have learned

24  information from the eight banks, including, without

25  limitation, HSBC and JPMorgan Chase?

H151zarh

 1             THE DEFENDANT:  Yes.

 2             THE COURT:  And that they may in fact have learned or

 3    have access to information that may be helpful to defending you

 4    but that at the same time they are prohibited from using such

 5    information to help you or defend you because of the

 6    attorney-client privilege that applies to communications

 7    between the Kirkland & Ellis attorneys and their bank client.

 8             THE DEFENDANT:  Yes.

 9             THE COURT:  Do you understand that your attorneys from

10    Kirkland & Ellis may be limited in making arguments about your

11    level of involvement in the offense or the crimes which are

12    alleged in this case to have occurred or of your role in those

13    offenses or in your culpability?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And do you realize, for example, I believe

16    it was October 5, 2016, one of your Kirkland & Ellis attorneys,

17    Mr. Clement, argued in court against the bank fraud conspiracy

18    charged in the indictment in your case and he contended that if

19    that bank fraud alleged in the indictment were successful, that

20    the banks involved would be better off?  Do you recall that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Then do you believe that you have an

23    understanding of each of these examples that I've mentioned

24    that discuss the potential impact of dual representation by

25    Kirkland & Ellis of yourself and the eight banks that I've

H151zarh

1    mentioned?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So would you tell me then, in your own

4    words, what your understanding is of the conflict issues that

5    we've been discussing that arise from the fact that Kirkland &

6    Ellis represent not only you but also eight banks that have

7    been implicated or involved in some fashion in the allegations

8    in the indictment here.

9              MR. BRAFMAN:  May I have a moment, Judge?

10             THE COURT:  Sure.

11             (Mr. Brafman conferring with defendant)

12             THE DEFENDANT:  I understand all your issues that were

13   discussed in court previously and we're discussing right now.

14   I understand that attorneys at the firm --

15             THE COURT:  I'm sorry.  "I understand that"?

16             THE DEFENDANT:  Attorneys at Viet's firm.

17             MR. BRAFMAN:  Viet's firm.

18             THE COURT:  That's Mr. Dinh?

19             THE DEFENDANT:  Yes.  They've been representing eight

20   banks that are involved in this case and in this indictment,

21   and I did speak to each of the lawyers about this and I'm aware

22   of their conflicts.

23             THE COURT:  And are you aware also, as you indicated

24   in your response to my questions, of the fact that you are

25   entitled to but they are not conflict free as your counsel?

H151zarh

1        THE DEFENDANT:  Yes, I'm aware of this, and I'm

2   accepting all of these issues.

3        THE COURT:  Do you understand that the greatest danger

4   to you in this matter of dual representation is the inability

5   of any of us to foresee all of the possible conflicts that

6   might arise because of Kirkland & Ellis' simultaneous

7   representation of these eight banks alleged to be, in your

8   case, victims on the one hand and the firm's representation of

9   you on the other hand?

10       THE DEFENDANT:  Yes, I'm aware of it.

11       THE COURT:  Are you also aware that seven of the eight

12  banks have issued written waivers of the dual representation?

13       THE DEFENDANT:  I am aware of that.  Except Citibank,

14  all of the other banks gave waivers.

15       THE COURT:  And you're aware that Citibank refused to

16  enter into such a waiver.

17       THE DEFENDANT:  Yes, I'm aware of it.

18       THE COURT:  Okay.  You understand that -- I think we

19  discussed this, but I'll mention it again because it's so

20  important -- that in every criminal case, including this one

21  involving you, the defendant, yourself, is entitled to the

22  assistance of counsel whose loyalty to him is undivided?  You

23  realize that.

24       THE DEFENDANT:  I'm aware of that.

25       THE COURT:  And you are entitled to representation by

H151zarh

1   attorneys who are not subject to any factors that might in any

2   way intrude upon their loyalty to your interests.

3           THE DEFENDANT:  Yes.

4           THE COURT:  Stated in another way, you understand, do

5   you, that you are entitled to attorneys who have only your

6   interests in mind and not the interests of any other client?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Have you received any promises or threats

9   or inducements with regard to your choice of counsel in this

10  matter?

11          THE DEFENDANT:  No.

12          THE COURT:  And are you the one who has selected the

13  counsel who are representing you in this case?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And do you understand that you have, and

16  you had, a right to consult with an attorney who is free of any

17  conflict of interest about this issue?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And for that purpose the Court appointed

20  Mr. Rimm and has given you the opportunity to consult with him

21  with respect to any aspect of the information that I have been

22  discussing with you today.

23          THE DEFENDANT:  Yes.

24          THE COURT:  And just to confirm, we know that you

25  have, and Mr. Rimm has told us, but have you consulted with

H151zarh

1    independent counsel about the conflicts or potential conflict

2    of interest issues that we have been discussing today?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And has that counsel, in your opinion,

5    fully advised you about the situation?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And do you wish to receive additional time

8    to consult with him?

9              THE DEFENDANT:  No.

10             THE COURT:  Incidentally, if you do at some point in

11   time, if you'd just let me know, I'd be happy to arrange that.

12             THE DEFENDANT:  Of course.

13             THE COURT:  So having discussed and considered all the

14   questions that I posed to you today and the answers that you

15   have given which relate to Kirkland & Ellis' representation of

16   you and also of the eight banks, as we have discussed, how that

17   might adversely affect your defense, do you nevertheless

18   believe that it's in your best interest to continue with

19   Kirkland & Ellis as one of the law firms representing you in

20   this matter?  Is that your wish?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And do you understand that by continuing

23   with Kirkland & Ellis as one of the law firms representing you,

24   you would be waiving your right to be represented solely by

25   attorneys who have no potential or actual conflict of interest?

H151zarh

1                THE DEFENDANT:  Yes.

2                THE COURT:  And are you in your own mind knowingly and

3        voluntarily seeking to waive your right to conflict-free

4        representation in this case?

5                THE DEFENDANT:  Yes.

6                THE COURT:  And assuming there were an adverse ruling

7        in this case and assuming there were a conviction, do you also

8        waive any postconviction argument, on appeal or otherwise, that

9        as a result of Kirkland & Ellis' representation of the eight

10       banks alleged to be victims in this case, you were denied

11       effective legal representation?

12               THE DEFENDANT:  Yes.

13               THE COURT:  So you are also intending to waive the

14       right to argue that you were denied effective assistance of

15       counsel, is that correct?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Is there any aspect of the matters I've

18       been discussing with you, any that you wish to have further

19       explained?

20               THE DEFENDANT:  No.  Thank you very much.

21               MR. BRAFMAN:  Your Honor?

22               THE COURT:  Yes.

23               MR. BRAFMAN:  If I may, just for clarification.

24               THE COURT:  Yes.

25               MR. BRAFMAN:  Mr. Zarrab is waiving his right to argue

H151zarh

1    on appeal, if there is a conviction, any claim of ineffective

2    assistance of counsel based on the potential conflicts should

3    Kirkland & Ellis lawyers remain in the case.  That's the

4    limited waiver that he is making.  If your Honor was to --

5                THE COURT:  That was the question I was posing.

6                MR. BRAFMAN:  Okay.  I just wanted to make sure.

7    Thank you.

8                THE COURT:  Yes.

9                Does government counsel wish to have me pose any

10   additional questions to Mr. Zarrab?

11               MR. KAMARAJU:  Yes, your Honor.  In particular, in

12   circumstances where counsel --

13               THE INTERPRETER:  Excuse me, your Honor.  I can't

14   hear.

15               THE COURT:  Maybe if you could go to the podium, and

16   maybe if you could speak a little slower.

17               MR. KAMARAJU:  Sure.

18               Is that better?

19               THE INTERPRETER:  Thank you.

20               MR. KAMARAJU:  Sure.  In circumstances where counsel

21   is attempting to limit their representation to avoid a

22   conflict, the ethics opinions make clear that it's critical --

23               THE COURT:  To avoid a conflict, what?

24               MR. KAMARAJU:  The ethics opinions make clear that it

25   is critical that the client whose representation is being

H151zarh

1   limited understands fully the scope of that limitation.  Your

2   Honor questioned Mr. Zarrab about the waivers, but in

3   particular there are two provisions of some of the bank waivers

4   the government thinks the defendant should be specifically

5   allocuted on.  The first was contained in Kirkland & Ellis'

6   letter from December 7th and related to the HSBC waiver.  In

7   that letter, Kirkland wrote that Kirkland has further agreed

8   with HSBC that, to the extent consistent with its obligations

9   to Mr. Zarrab, Kirkland would allow HSBC to review any Kirkland

10  pleading that references HSBC to satisfy the bank that no

11  information Kirkland obtained in representing the bank is used

12  in Mr. Zarrab's defense.  So the government would ask that the

13  Court inquire that Mr. Zarrab is aware of and understands that

14  limitation.

15          THE COURT:  Okay.  So I'm going to ask -- I take it

16  there are two questions you're going to have?

17          MR. KAMARAJU:  Yes.

18          THE COURT:  So I'm going to ask we take a brief pause

19  for you all to draft up the two questions that you would like

20  to have me pose to Mr. Zarrab, show them first to Mr. Brafman,

21  and if it's okay with him, I will ask those two questions.

22          And the second you're going to describe?

23          MR. KAMARAJU:  Yes.  The second question concerns the

24  Wells Fargo waiver.  In the Wells Fargo waiver, that states

25  that the firm, Kirkland & Ellis, acknowledges and agrees that

H151zarh

1    its representation of Zarrab, whether through trial or

2    appellate work, will not pertain to developing or advancing any

3    argument that Wells Fargo knew of, was complicit with, or

4    otherwise was not a victim of the alleged illegal transaction.

5    So we would ask the Court to ask that as well.

6              THE COURT:  Okay.  And Mr. Brafman, any additional

7    questions that you would like me to raise?

8              MR. BRAFMAN:  No, your Honor.  And if it saves time,

9    if the government would like to pose the questions themselves

10   and have the defendant respond, I understand the import of the

11   question.  I think rather than drafting it, I would be happy to

12   proceed in that fashion.

13             THE COURT:  I don't think it will take very long.  I

14   see Mr. Lockard over there writing something down already, so

15   he's probably almost finished.

16             MR. BRAFMAN:  Okay.

17             THE COURT:  Okay.  And how about Mr. Dinh, any

18   questions, additional questions you'd like to have posed?

19             MR. DINH:  No, your Honor.

20             THE COURT:  Okay.  So just take a minute and take a

21   look at that.

22             Oh, Mr. Rimm, any questions additional that you'd like

23   me to pose?

24             MR. RIMM:  No, your Honor.

25             THE COURT:  Okay.  So I've been handed a document

H151zarh

1    which I'll call Court Exhibit A, and it includes four

2    additional questions, which I take it that counsel for the

3    government and the defense wish to have me ask Mr. Zarrab at

4    this time.  Is that correct?

5              MR. KAMARAJU:  Yes, your Honor.

6              MR. BRAFMAN:  Yes, your Honor.

7              MR. DINH:  Yes, your Honor.

8              THE COURT:  Okay.  So four more questions, Mr. Zarrab.

9    Mr. Rimm, did you want to look these questions over before I

10   ask them as well?  Might as well.

11             MR. RIMM:  I have no objection, your Honor.  I've

12   discussed each of these issues with Mr. Zarrab.

13             THE COURT:  So the first additional question is this,

14   Mr. Zarrab:  Do you understand that Kirkland & Ellis has agreed

15   with HSBC that, to the extent consistent with its obligations

16   to you, Kirkland will allow HSBC to review any Kirkland

17   pleading that references HSBC to satisfy the bank, HSBC, that

18   no information which Kirkland obtains representing the bank is

19   used in your defense?  Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And the second of the four additional

22   questions is this:  Do you, Mr. Zarrab, understand that

23   Kirkland & Ellis has agreed that its representation of you,

24   whether through trial or appellate work, will not pertain to

25   developing or advancing any argument that Wells Fargo knew of,

H151zarh

1    was conflicted with, or otherwise was not a victim of the

2    alleged illegal transactions set forth in the indictment in

3    this case?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  And two further questions:  Do you

6    understand that your attorneys from Kirkland & Ellis will be

7    unable to use or advise the use of court process to compel the

8    attendance of witnesses who are employees or agents of the

9    eight banks?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  And finally, do you understand that your

12   attorneys from Kirkland & Ellis will not only be unable to

13   personally take certain actions on your behalf -- like, for

14   example, accusing the banks of wrongdoing -- but that they also

15   will not be able to participate in any decision whether or not

16   to take such actions?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Okay.  So having asked those additional

19   questions, is the government satisfied with the *Curcio*

20   allocution this morning?

21                   MR. KAMARAJU:  Your Honor, the government still takes

22   the position that despite the *Curcio* --

23                   THE COURT:  I understand.

24                   MR. KAMARAJU:  But with respect to your questions,

25   yes.

H151zarh

|       |                                                                      |
|-------|----------------------------------------------------------------------|
| 1     | THE INTERPRETER:  We can't hear.                                     |
| 2     | MR. KAMARAJU:  With respect to the questions, the                    |
| 3     | government is satisfied.                                             |
| 4     | THE COURT:  And how about the defense?                               |
| 5     | MR. BRAFMAN:  Yes, your Honor.                                       |
| 6     | THE COURT:  Mr. Dinh?                                                |
| 7     | MR. DINH:  Yes, your Honor.                                          |
| 8     | THE COURT:  Okay.  And Mr. Rimm, you're okay with it?               |
| 9     | MR. RIMM:  Yes, your Honor.                                          |
| 10    | THE COURT:  Okay.  So that concludes the allocution                  |
| 11    | portion of the *Curcio* proceedings.  And as I indicated, I'm         |
| 12    | happy to hear from each side with respect to -- if they wish          |
| 13    | to, they don't have to make any remarks -- with respect to this       |
| 14    | conflict issue.                                                      |
| 15    | MR. KAMARAJU:  Just a few words, your Honor.                         |
| 16    | THE COURT:  Sure.                                                    |
| 17    | MR. KAMARAJU:  And as your Honor noted, there's                      |
| 18    | already been considerable submissions, so I won't belabor            |
| 19    | anything, but we just wanted to focus on --                          |
| 20    | THE COURT:  I think you're talking about proposed                    |
| 21    | findings of fact and conclusions of law, which I found to be          |
| 22    | very helpful from both sides.  Very thorough and very helpful.        |
| 23    | MR. KAMARAJU:  Yes, your Honor.  Along with all the                  |
| 24    | correspondence that both sides had submitted in advance of the        |
| 25    | proposed findings.  But there are I think some points that the        |

H151zarh

1    government wants to emphasize with respect to that.

2           And in particular, the Court's obligation here, as the

3    Court recognized at a previous conference, is different than

4    that of an ethics professor or even defense counsel and the

5    government.  The Court has the obligation to ensure, as a

6    balance, one, the defendant's right to counsel of his choice

7    against the defendant's Sixth Amendment right to conflict-free

8    counsel, the Court's own interest in preventing its decisions

9    from later attack, and the public's interest in the integrity

10   of the proceedings.  In light of that legal responsibility, the

11   Court is given broad latitude, and the Supreme Court has

12   emphasized that repeatedly, as has the Second Circuit.  And in

13   fact, to the government's knowledge, the Second Circuit has

14   never reversed a decision to disqualify counsel in a criminal

15   case.  Now one of the reasons for that, the government would

16   submit --

17           THE COURT:  One of the reasons for?

18           MR. KAMARAJU:  For the latitude that the trial court

19   is afforded is that the trial court, just to paraphrase the

20   Supreme Court in *Wheat*, the trial court does not have the

21   benefit of making this decision after hearing all of the

22   arguments and witness testimony at a trial; it has to do it in

23   a much murkier context of a pretrial record.  And the record

24   here, the government would submit, simply makes it impossible

25   to continue with Kirkland representing Mr. Zarrab.  That record

H151zarh

1     includes Kirkland's attempt, for example, to represent both a

2     defendant who is alleged to have victimized a number of banks

3     through a scheme that spans hundreds of transactions and

4     hundreds of millions of dollars' worth of transactions relating

5     to Iranian entities, and at the same time --

6              THE COURT:  That would be Mr. Zarrab.

7              MR. KAMARAJU:  That would be Mr. Zarrab.  And at the

8     same time to represent eight of the banks that are alleged to

9     have been victimized by that conduct, one of which has already

10    stated that it does not wish to waive that conflict.

11             THE COURT:  That would be Citibank.

12             MR. KAMARAJU:  Correct.  And the other seven banks,

13    which have stated specifically that they will only waive that

14    conflict in the context of very specific and rather onerous

15    restrictions.  For example, we just questioned the defendant as

16    to the HSBC prereview or clearance provision.  That provision,

17    for example, has an alleged victim reviewing work product

18    submitted on behalf of the person who is alleged to have

19    victimized them and giving the victim an opportunity to object.

20    That policing, that kind of --

21             THE COURT:  Object to and veto.

22             MR. KAMARAJU:  Object and veto and suggest

23    modifications if they wish to.  But in other words, they have,

24    at least from the government's perspective, an unprecedented

25    amount of control of decisions made on behalf of a criminal

H151zarh

1    defendant.  Those are just some of the potential pitfalls that

2    could occur from the representation that Kirkland & Ellis

3    proposes.  And that's why, in numerous cases -- and we've cited

4    them in our proposed findings and conclusions of law, but cases

5    like *Rahman*, *Yannotti* -- in those kinds of cases, courts have

6    specifically rejected this attempt to sort of cabin or limit a

7    counsel's representation of a criminal defendant, because those

8    courts have recognized that it's just too hard and too

9    difficult to avoid the pitfalls in what is a minefield; and a

10   minefield that any misstep could cause significant

11   consequences.

12        For example, we cited to your Honor the *Bright* case in

13   which a mistrial was declared on the basis of a conflict that

14   was discovered.  That kind of situation, in a case like this,

15   where I think both sides have agreed it will be a lengthy and

16   rather complicated trial, to have that issue lingering out

17   there, we would submit, is untenable, and I think there's

18   already been some very concrete examples of how that's played

19   out here.  And if your Honor will bear with me, I'll give you

20   an example.

21        The indictment in this case, the very first indictment

22   the defendant was arraigned on, made clear the government's

23   bank fraud theory and made clear the government was alleging

24   that banks had been defrauded.  The Court found that on its

25   decision on the motion to dismiss.  Soon after that, over the

H151zarh

1    summer, in May and June, the government produced discovery,

2    including search warrant affidavits and spreadsheets, that

3    identified the banks that were the victims.  In July, the

4    defendant filed a motion to dismiss that was submitted on

5    behalf of the defendant by, among others, Mr. Clement and

6    Mr. Dinh in which, as your Honor noted, they argued that the

7    bank fraud charges could not be sustained because the banks

8    were not victims.  In fact, Mr. Clement even said that if the

9    scheme worked as planned, the banks would actually be better

10   off.  There was oral argument on that, and then in October, I

11   believe October 28, 2016, they filed a motion to suppress the

12   results of the search of the defendant's email account based on

13   one of the search warrant affidavits that referenced the HSBC's

14   involvement in the case, with reference to all the other banks'

15   involvement in the case.  On November 16th, the government

16   alerted defense counsel to the conflict, in the government's

17   view.  Kirkland & Ellis then responded that they did not

18   believe there was a conflict and in fact had not been even

19   aware of the potential conflict until the government had

20   alerted them.  In December, they then filed the Gillers

21   opinion, the opinion of Professor Gillers, in which he stated

22   that there was a conflict.

23        So I bring this timeline and chronology to the Court's

24   attention because, despite having all of the information about

25   the government's theory of the case, the government's proof,

H151zarh

the identity of the victims, their own conflict checks,

Kirkland & Ellis was unable to determine that there was a

conflict for approximately six months, or seven months.  So in

light of that, it's very difficult to have any confidence that

going forward, we'll be able to police or monitor how this

arrangement is supposed to work.

And for example, the Wells Fargo waiver that we just

spoke about, that contains a provision that says that Kirkland

& Ellis will not do any appellate work in which they claim that

Wells Fargo was not a victim.  Well, it is.  It has been made

very clear that one of the defenses that will be argued at

trial is that the bank is not a victim, either because they did

not suffer loss or because they were complicit.  In fact,

Mr. Brafman made it explicit that Zarrab was not waiving the

defense that the banks could have been complicit.  So if that

argument is raised at trial and if it is rejected, either by

the jury or by the Court, one could easily imagine how it would

become an appellate issue, and in that circumstance Kirkland &

Ellis has already promised Wells Fargo that it would not argue

that point on appeal.  So right then and there is a concrete

example of how Mr. Zarrab is being robbed of effective

representation in a circumstance in which one of his defenses

cannot be pursued on appeal.  And that affects every issue at

the trial.

For example, if there were jury instructions the

H151zarh

1    defendant wanted, presumably, as strategic and appellate

2    counsel, Kirkland & Ellis would be involved in consulting how

3    to draft that, what the case law is that supports it.  But

4    under the provisions of the Wells Fargo waiver, they would not

5    be allowed to do that.  It's very difficult to see how that

6    kind of arrangement can work, can be monitored, can be policed,

7    in the first place.

8            And so from that perspective, we would submit that's

9    why courts have repeatedly rejected this type of arrangement.

10   Judge Pauley did so in the *Daugertas* case, and one of the

11   factors he noted was that the cooperating witness in that case

12   refused to waive the conflict.  And he noted that that showed

13   some discomfort on the part of that witness with proceeding and

14   that he was concerned about that witness' right as well.  Well,

15   in this case, the fact is that Citi has already said they will

16   not waive --

17           THE COURT:  Citibank.

18           MR. KAMARAJU:  Citibank, which evidences their

19   discomfort with this arrangement.  And the other waivers

20   themselves are so nuanced and caveated that they provide

21   essentially no meaningful representation left to the defendant.

22           And I think this came up at one of the conferences in

23   which Mr. Dinh tried to articulate the scope of the limited

24   representation.  And on one hand he said, well, we won't have

25   anything to do with the bank fraud charge.  And the problem

H151zarh

with that, of course, is that all of the other charges deal

with the conflict relating to the bank as well.  The sanctions

charge is premised on facilitation of financial transactions

involving US banks.  The money laundering charge is the same

way, as is the Klein conspiracy charged.  All of those charges

are predicated on conduct with the banks.  And so if he were to

limit himself to just the bank fraud charge and put that to the

side and not do any representation with respect to that, they

would still have an issue with the banks with respect to all

the other charges.  At the same conference, Mr. Dinh later

said, we just won't have anything to do with the banks.  We

just won't have anything to do with the banks themselves.  But

if that's the case, then they've effectively written themselves

out of the case entirely.

        And so those kinds of gray areas simply cannot be

tolerated in an arrangement in which the defendant's right to

conflict-free counsel is being implicated.  And when it further

threatens to impact this trial going forward, it stands to

reason that there's no benefit to preserving that relationship,

particularly when the defendant will not be prejudiced in the

case.  The defendant has a number of attorneys.  His trial

counsel, as has been repeatedly stated, will be Mr. Brafman.

Mr. Brafman is not going anywhere.  He has eight months before

trial.  So to the extent he wished to retain additional

appellate or strategic counsel, he could, in addition to the

H151zarh

numerous attorneys that he has.  So this is not a circumstance
in which, shortly before trial, the defendant loses his trial
counsel.  He still has more than enough to guarantee his
constitutional right to counsel.

Now essentially what Kirkland & Ellis' submission in
support of this limited representation says is, it says, well,
Professor Gillers says this is okay under New York ethics
rules, and as a result, it should be okay for the Court.
Respectfully, we think that Professor Gillers' opinion is
irrelevant and is incomplete to the point of having very little
value to the question before the Court.  For instance, we've
already cited to your Honor the *Bernstein* decision in which the
Second Circuit criticized the use of these independent ethics
opinions, because they touch on matters of domestic law that
are for the Court.

But even setting that aside, Professor Gillers'
opinion is predicated on facts that just do not apply to this
case.  He says, for example, that the waivers just shouldn't
matter, that they shouldn't be an issue and thus it shouldn't
matter if Citibank has not waived.  But the Court rightfully
has already expressed its desire to know what the banks'
positions are because, as we all know, these waivers are
revocable.  The banks, being tremendous clients of these law
firms, exercising tremendous amount of financial pressure,
could, as your Honor noted with HSBC, attempt to veto or alter

1    positions that the defendant might take because they may injure

2    the bank.  So the idea that the banks' views on this conflict

3    are simply irrelevant, we would take issue with.

4            But also, the limitations that Professor Gillers

5    discussed, they don't take into account, for example, the Wells

6    Fargo waiver in which Wells Fargo, as we've said, specifically

7    notes that Kirkland & Ellis cannot argue that they're a victim,

8    at any point, whether at trial or appellate work.  So we would

9    submit that the Gillers opinion doesn't really get to the

10   question that the Court has to satisfy, which is, can this

11   arrangement work to protect both the defendant's right and the

12   Court's interest, and, frankly, the cases or the opinions that

13   the Gillers opinion relies on sort of show how different a

14   scenario you're talking about.  I mean, the opinions that they

15   relied on or the cases they cite are civil cases in which

16   cross-claims are being filed and where the question is, can a

17   defense lawyer or can a lawyer limit their representation with

18   respect to types of business they may take or cross-claims.

19   They don't address the novel situation of a defense lawyer

20   attempting to say, I will just not deal with particular issues

21   in this specific case.  The closest that cases come to it are

22   the cases we've cited to your Honor, where they involve

23   witnesses, cooperators, other defendants, and in those cases,

24   the courts have routinely rejected this approach.

25           If I may just have one minute, I may be done, but let

H151zarh

1    me just check.

2              THE COURT:  And I have a question for you.

3              MR. KAMARAJU:  Okay.  Yes, your Honor.

4              THE COURT:  So the question I have is, most of your

5    oral presentation related to the potential conflicts.  I

6    imagine it's your view also that there are actual conflicts.

7              MR. KAMARAJU:  Yes, your Honor; in particular with

8    respect to HSBC.

9              THE COURT:  And could you just explain that.

10             MR. KAMARAJU:  Sure.  So the representation of HSBC in

11   the Second Circuit relates to a deferred prosecution agreement

12   that HSBC entered into in 2012.  That deferred prosecution

13   agreement was to resolve criminal charges against HSBC related

14   to HSBC's facilitation of various sanctions evasions, including

15   financial transactions that violated sanctions on Iran.  So the

16   same kind of conduct that is at issue in this case.  That case,

17   as part of the deferred prosecution agreement, there was a

18   monitorship that HSBC agreed to, and the monitor prepared

19   reports that detailed, according to the brief filed by Kirkland

20   & Ellis, detailed compliance efforts, compliance failures,

21   confidential client communications.  It actually details what

22   had gone wrong at HSBC and what they were doing to try to

23   correct it.  That report was filed by the government.  The U.S.

24   Attorney's Office for the Eastern District of New York filed

25   that report initially under seal with the court.  The court

H151zarh

1    then expressed its intention to unseal that document from that

2    date of appeal, in which Mr. Dinh, Mr. Clement, and I believe

3    other attorneys from Kirkland & Ellis filed a brief in the

4    Second Circuit arguing for a writ of mandamus and that the

5    judge should not have unsealed the monitor's report.

6              So what you have there, you have an issue in which

7    they are representing HSBC specifically in a case involving

8    sanctions evasion, specifically in relation to a provision of

9    the agreement that resolved those charges, and at the same

10   time, and frankly, in a way that they will attempt to keep that

11   material out of the public eye.  So they attempt to argue that

12   HSBC's conduct, as determined by the monitor, should not be

13   revealed to the public.  That's the nature of the appeal.  On

14   the other hand, in this case, it has been made very clear that

15   one of the potential defenses that Mr. Zarrab may make at trial

16   is that the banks knew what they were doing, the banks were

17   complicit in this, that the banks specifically knew in fact

18   that they were dealing with Iranian entities and nonetheless

19   processed the transactions anyway, which is the exact conduct

20   that HSBC has been charged with in the Eastern District.  And

21   so it is very much -- if that defense is to be pursued --

22              THE COURT:  "It is very much"?

23              MR. KAMARAJU:  If that defense is to be pursued, it is

24   very much in Mr. Zarrab's interest to have a public airing

25   during trial of, for example, HSBC's compliance failures, or

H151zarh

1    HSBC's desire to enter into those transactions.  So at the same

2    time, on one hand --

3            THE COURT:  What's the period covered by the report

4    sought to be kept confidential?

5            MR. KAMARAJU:  The charges span two different time

6    periods, but I believe it is 2008 to 2012.

7            THE COURT:  2012.  It overlaps with the charges in

8    this case.

9            MR. KAMARAJU:  It does overlap with the charges in

10   this case, your Honor, and there are transactions with HSBC

11   that overlap during the time period.  So there certainly are

12   factual overlaps, and we would say that's a substantially

13   related case in that the whole premise of the HSBC case in the

14   Second Circuit is keeping the reports about HSBC's facilitation

15   sealed.  So --

16           THE COURT:  Is it possible that that report actually

17   covers transactions that occurred in this case?

18           MR. KAMARAJU:  It's possible.  Your Honor, we have not

19   reviewed the report ourselves, but it's certainly possible, and

20   we do know that there are transactions with HSBC -- some of

21   those are detailed in the search warrant affidavit that we

22   supplied to your Honor -- during the time period covered by the

23   deferred prosecution agreement.  So it would not be shocking if

24   the monitor's report touches on transactions that are either

25   linked directly to Mr. Zarrab or one of his co-conspirators and

H151zarh

1    that could be subject to this prosecution.

2            So that's why, in a nutshell, we believe that's an

3    actual conflict and not just a potential conflict.

4            THE COURT:  Thank you.

5            Okay.  Mr. Dinh?

6            MR. DINH:  Thank you, your Honor.  May it please the

7    Court.

8            Thank you, your Honor, for your care and patience

9    throughout this process, because it is of a weighty nature, as

10   we all recognize, and we rest on our submission, as the

11   government does, and we only want to make one important and

12   critical point in addition or in characterization of the

13   matters before the Court.

14           All the cases that the government cites and all the

15   arguments that the government makes pertain to a situation that

16   is not applicable here.  That situation is that the court was

17   evaluating the disqualification or choice of primary or sole

18   counsel in the case.  I agree with the government that this

19   case is novel.  Indeed, it is unprecedented, in our research,

20   where there is a *Curcio* hearing or a disqualification motion

21   related to *Curcio* that pertains to supplemental counsel.  The

22   reason why that is unprecedented is twofold.  One, at the end

23   of the day, or at the beginning and end of the day, the

24   question of conflict-free counsel is a protection of effective

25   assistance of counsel.  And there is no question in this case

H151zarh

that Mr. Zarrab has effective assistance of counsel in the form

of Mr. Brafman, his firm, and other firms associated with this

case.  And so --

          THE COURT:  I'm not sure I'm following the argument.

You're saying it's okay because he has one effective lawyer but

it's okay that maybe one of the other lawyers is not effective?

          MR. DINH:  Yes, your Honor, in --

          THE COURT:  That's a proposition that is something

that I should sanction?  Sanction in the sense of approve?

          MR. DINH:  We have not, in other cases, dealt with a

situation where there is a disqualification or a *Curcio* issue

raised with respect to supplemental counsel as opposed to

primary or sole counsel, and so the analysis that I would urge

upon your Honor, and it is urged upon your Honor and the court

from Professor Gillers, the second half of Professor Gillers'

opinion is that Kirkland & Ellis' representation of Mr. Zarrab,

however limited, is of value to Mr. Zarrab because it is

additive to the effective assistance of other counsel and so

Mr. Zarrab does not give up anything by Kirkland & Ellis'

additional team, however limited its representation may be, in

light of the potential conflicts, and so it is purely additive

to Mr. Zarrab's right to counsel.  And so in the balance, if

you will, in the traditional *Curcio* proceeding between the

constitutional right to counsel of choice versus the

constitutional right to conflict-free or effective assistance

H151zarh

of counsel, the second half is very, very low because we
already have primary counsel in Mr. Brafman and others in the
case.

          THE COURT:  I wonder if you couldn't also reach just
the opposite conclusion.  In other words, where a court would
have to be more careful if it's primary counsel that is to be
considered to be relieved from the case, that's a weightier,
more complicated issue, seems to me, than a peripheral counsel
who has these conflicts.

          MR. DINH:  I understand that, your Honor, and that was
what the government was arguing with respect to the prejudice
argument.

          THE COURT:  Yes.

          MR. DINH:  And I take that to be the point that the
government made.  However, however, offsetting all of that,
offsetting all of that is the undisputed defendant's right to
counsel of choice.

          THE COURT:  We know that.

          MR. DINH:  And the reason why I would submit that
these cases don't arise, that we have seen, that this is
unprecedented, is because the consequences of a denial of
counsel of choice is very, very grave.  It is automatic -- it
is a structural violation, as we cite in our proposed findings
of fact.

          THE COURT:  But your arguments are relatively de

H151zarh

1    minimis here because it's not the primary counsel.

2            MR. DINH:  And the de minimis prejudice is not even

3    relevant because under the Supreme Court's teaching of the

4    *Gonzalez-Lopez* case, as we cite in our proposed findings of

5    law, violation of the constitutional right to counsel of choice

6    is a structural violation and that is automatic basis for

7    reversal, without consideration of prejudice, however minor.

8    And so I don't think consideration of prejudice is relevant to

9    this particular context because of the choice of counsel

10   consideration.

11           And before I leave the topic, the Court does have

12   great discretion in terms of disqualification, but *Curcio*

13   itself, contrary to the government's statement, *Curcio* itself

14   was critical of the disqualification issue.  All of the cases

15   that the government cites deal with a situation where it is

16   primary or sole counsel.  The only case that is not of that ilk

17   that the government cites, but did not bring up in oral

18   argument, in all candor, I should point to you, is the

19   M-A-S-S-I-M-O case.  That is a special case, because *Massimo* is

20   a death eligible case.  Under federal statute, 18 U.S.C. 3505,

21   the defendant has a right to both primary counsel and death

22   counsel and so he has a statutory right to effective assistance

23   of two counsel, and in that case, the attorney was disqualified

24   and went into the *Curcio* process because he is not only

25   supplemental counsel, as we are in this case, but he is part of

H151zarh

1    the statutory right of the effective assistance of counsel.

2              And so where I would leave it with the Court,

3    consistent with Professor Gillers' letter to the Court -- and

4    whether the Court wants to take that as an amicus submission or

5    whatever the format the Court takes it, it is clear that it is

6    perfectly proper for the Court to consider his opinion as not

7    binding but persuasive authority.

8              THE COURT:  I think it's helpful.

9              MR. DINH:  Right.  And indeed, the government itself,

10   in several cases before the Second Circuit, have pointed to

11   expert opinions to guide the court in its decision.  So there's

12   no hard-and-fast rule in that regard, because you can cite to

13   treatise or cite to this submission as a basis.

14             I would like to turn it over to my primary counsel --

15             THE COURT:  Before you do.

16             MR. DINH:  Yes.

17             THE COURT:  So here's one particularly troubling

18   aspect to me of this matter.  When the conflict issue arose,

19   everybody recognized it and acknowledged it, including

20   yourself, and when I say you, I'm not saying personally, but

21   Kirkland & Ellis lawyers said, well, one way we'll deal with

22   this, as historically in other cases people do, is to establish

23   this ethical wall and to cause a separation between the dual

24   representations.  And that's a reasonable approach.  But no

25   sooner had that been done than we came to know that the ethical

H151zarh

1   wall doesn't apply in this HSBC case, which, astonishingly,

2   frankly, is factually not identical but involves very many of

3   the same kinds of charges, namely, that HSBC wilfully did not

4   take precautions to ensure that these alleged illegal

5   transactions benefiting Iran took place.  In that very case, we

6   can't have an ethical wall because you and Mr. Clement are

7   arguing, in the Second Circuit Court of Appeals, that case, and

8   arguing, in addition, in favor of the continued lack of

9   disclosure of a report, which one could -- and this is not even

10  such a surmise.  To me, it's not even a major jump to conclude

11  that that report, whatever it says, could be helpful to

12  Mr. Zarrab if it were made public.  I mean, there are other

13  issues, and you all have discussed them in the findings of fact

14  and conclusions of law, but that one jumps out, you know, to

15  anybody who reads it as problematic.

16          MR. DINH:  Yes.  I will give you an answer and then I

17  will hand it over to my colleague to address that issue.

18  You're absolutely correct that the standard operating procedure

19  in cases like this is to establish an ethical wall, which we

20  did immediately.  That ethical wall is a prophylaxis in order

21  to protect any unknowing or violation of our duty of

22  confidentiality that inheres to all our representations, and so

23  in that sense, it prevents us from even an inadvertent

24  violation of Rule 1.6 in the duty of confidentiality.  As your

25  Honor correctly observed, that prophylaxis is not there because

H151zarh

Mr. Clement, myself, and Mr. Harris are representing HSBC and
have access to the report as issued in that case.  That is why
we have reaffirmed our obligation under 1.6 to HSBC that we
shall keep confidential all material that we gain in that
representation.

In addition, in addition, we have given them a
commitment that they will have an opportunity to review
mentions of HSBC, to the extent that it's consistent with our
obligation of loyalty to Mr. Zarrab, and so the parade of
horribles does not present itself because HSBC would not be
able to, nor would it, because it would not be consistent with
their obligation to Mr. Zarrab, to veto our submissions simply
because it disagrees with our strategy.  It is limited to
whether or not there has been inadvertent disclosure of
confidential information.  And where it would not be feasible,
consistent with our obligations to Mr. Zarrab, we would not
show that to the HSBC.  It works with our submission to the
Court on the proposed findings of fact and conclusions of law
because the only thing that would be of variance in these
documents, given the limitations on our representation of
Mr. Zarrab, are purely factual questions of the type that we
presented in the proposed findings of fact.

MR. BRAFMAN:  Your Honor, if I may just briefly add
some remarks.  I'm delighted to be characterized as an
effective lawyer, as a lawyer who's going to provide effective

H151zarh

1    assistance of counsel, but, you know, to be candid with you,

2    sir, part of my effectiveness in this unique and perhaps

3    unprecedented prosecution has been having the assistance of

4    Viet Dinh and his colleagues.  And what I'm starting to hear is

5    that because they are laboring under a potential or actual

6    conflict with respect to a bank or two -- and I would add that

7    I don't believe there's going to be any proof whatsoever in

8    this case that Mr. Zarrab had personal interaction with any of

9    these banks, and one of the ways courts in this district and

10   throughout the United States have handled *Curcio* issues when

11   they arise is to either appoint counsel to cross-examine a

12   witness if they appear from one of the potential conflict

13   institutions -- and you have that in this case.  I will be the

14   principal trial lawyer, and the fact that Mr. Dinh may have

15   certain ethical difficulties with questioning a bank official,

16   I don't and can vigorously cross-examine them.  I can use

17   process to obtain whatever documents from HSBC that I believe

18   are relevant and that the Court can rule, should they bring any

19   motions to quash, and we can keep Viet Dinh and his colleagues

20   out of that fight if it develops.

21       I don't think we should decide today whether

22   Mr. Zarrab will ultimately be able to have the Dinh firm as

23   part of his appellate team because that presumes (A) that

24   there's going to be a conviction, and (B) that in the event

25   there is a conviction, that he's going to choose that firm to

H151zarh

1      represent him on appeal.  So I think that can wait for another

2      day.

3              In terms of this case, Judge, it's beginning to get

4      lonely at the Alamo, let me say, because if we were to

5      disqualify the Kirkland & Ellis firm and I were to then go out

6      and try and find a firm with those kind of resources and

7      staffing and specific talent that they have, I would venture to

8      guess that almost every major firm in New York would probably

9      have some difficulty finding that they don't represent one of

10     the financial institutions in this case, and at the end of the

11     day, Judge, what we all do in this process, at the end of the

12     day, is, you, sir, the government and defense bar, we have to

13     trust each other and the integrity of the people involved.

14     Right now the government has taint teams working on information

15     that the trial team in those cases is not supposed to see,

16     because there are privilege issues, for example.  We trust the

17     U.S. Attorney's Office to keep that same taint team from being

18     tainted or from tainting the trial team.  Sometimes the agents

19     who are involved end up cross-pollinating, and we trust them

20     not to share information.  We have privilege issues on the

21     defense bar, and I think the government gives us some measure

22     of respect when they give us documents under a protective

23     order, and they trust us to honor those agreements.

24              We have a very unique situation here.  We have

25     Mr. Dinh, who's been involved in this case from I think the

H151zarh

1   very beginning.  He suddenly finds himself, because of a firm

2   merger, now being challenged as to whether or not he can

3   provide conflict-free assistance.  Well, I make several

4   observations.  First, I think at the end of the day, you need

5   to decide whether Mr. Zarrab is making a knowing and

6   intelligent waiver so that this issue is removed as an

7   appellate issue in the event of a conviction.  You have done

8   everything the district court is supposed to do and then some.

9   It's probably the most thorough of *Curcio* questioning I've ever

10  heard.  You have independent counsel who has spent a

11  substantial amount of time interviewing Mr. Zarrab, who

12  understands the conflicts and wants to waive them, and you have

13  primary counsel who wants them to remain on the team with the

14  understanding that, should it arise that HSBC is going to be a

15  witness in this case, one, I will cross-examine those people, I

16  will not ask Mr. Dinh or his partners to disclose confidential

17  information, and if the report which your Honor referenced a

18  moment ago becomes relevant in this case and if I choose to

19  subpoena HSBC, they can't look at me as violating Kirkland &

20  Ellis' confidentiality understandings with them because I'm not

21  bound by it, and I think if it's relevant and the Court orders

22  the materials produced, I think we get to use it, and they can

23  kick and scream, but I don't think there's anything they can do

24  about it.  And this is a different case than the normal case,

25  where you have to decide whether a defendant has a right to

H151zarh

1    counsel of his choice.

2           And I think Mr. Dinh is correct.  In almost all of the

3    cases where I've been involved in a *Curcio* proceeding, there is

4    one lawyer who is trying to wear two hats at the same time, and

5    for ethical reasons or for legal reasons, the court decides

6    they just can't do that.  Here you have two lawyers wearing

7    different hats, and to the extent that Mr. Dinh must take off

8    his hat for a portion of these proceedings and not participate

9    in that argument, Mr. Zarrab understands that.  He waives that

10   as an appellate issue.  Mr. Dinh and his colleagues are

11   honorable people who will abide by their ethical obligations to

12   their client, and I will abide by my ethical obligation to

13   Mr. Zarrab.

14          And I want to just point out one other oddity that

15   occurs almost daily in our criminal justice system.  I would

16   venture to guess, because I see it on a daily basis, that

17   almost every well-respected law firm in New York and perhaps

18   throughout the United States has one or many former assistant

19   United States attorneys who leave the government and go to work

20   as defense lawyers.  And they are indeed at firms who are often

21   representing current cases in the government offices that they

22   just left from, and the understanding they reach is that they

23   can't work on those cases.  And that's it.  We don't ask them

24   to leave the firm.  They are under the ethical obligation to

25   avoid involvement in those cases if they were in the U.S.

H151zarh

1    Attorney's Office when those cases were investigated or being

2    prosecuted.  And we rely on their ethical obligations to do so.

3    And it seems to work because the instances where there are

4    ethical lapses, I must say, approvingly on both sides, are few

5    and far in between.

6         So in this case, Judge, if you disqualify the Kirkland

7    & Ellis firm and you do so because you believe Mr. Zarrab

8    already has responsible, experienced lawyers, you're right, but

9    you have an experienced lawyer who is telling you that I need

10   the resources of that firm, and to recuse them now and to give

11   us the need to start from the beginning with another firm and

12   find a firm that doesn't have any potential conflict is a

13   Herculean undertaking.  This case involves over a million

14   documents.  There have been legal issues briefed in this case

15   that are unique to this case and that, to my knowledge, have

16   never before been briefed in this or any other courthouse, and

17   I think, to the extent that I'm able to try this case, I

18   submit, with great respect for the Court, for Viet Dinh, and

19   with great respect for my ability, I'm not embarrassed to tell

20   you I need their help.  So this is not only a question of

21   giving him counsel of his choice; this is a question of, if you

22   recuse them, you are interrupting, respectfully, a proceeding

23   that's already gone on for nine months with the defendant in

24   remand, and although the government suggests that, well,

25   there's eight months, that's certainly enough time to replace

49

H151zarh

1    them, that's easier said than done, and Mr. Zarrab should not

2    have to go through the extraordinary expense, with all respect

3    to the legal fees in this case, to reeducate a whole team of

4    new lawyers and bring them up to where Mr. Dinh and his

5    colleagues already are.

6              Thank you, sir.

7              THE COURT:  Okay.  So I think I've heard enough.  The

8    record is full.  I'll make a couple of points, just to close

9    the loop.

10             One is that I am certainly respectful of the counsel

11   of choice issue, and I'm conversant with the law that applies

12   there.  I'm also conversant with the issue of counsel of choice

13   versus conflict-free counsel.  Just point number one.

14             Second, you raised the issue of trust, Mr. Brafman,

15   appropriately so, and I just want to assure you that I'm not

16   distrustful of anybody in this proceeding, so to speak.  I do

17   understand your point about how we all work together, defense

18   and government and the Court, and relatedly, I don't view this

19   as a personal matter.  I'm not in any way considering anybody's

20   bona fides.  I think everybody in this proceeding is

21   professional.  I'm respectful of all counsel.  Kirkland & Ellis

22   is certainly an outstanding firm, and Mr. Dinh and Mr. Clement

23   in particular are top of the line, so to speak, in terms of

24   counsel.

25             Also, I'm not worried, honestly, about appeal.  I look

H151zarh

1    at these issues, try to get them right, and I try to hold that

2    off to the side about how somebody else might view them, except

3    to the extent that it bears on whether I've made the right

4    determination or not.

5           I am concerned about the integrity of the proceeding,

6    in this case, in every case.  This case is a little bit

7    different in that regard, and there is obviously a broader

8    community that is interested and observing of this case,

9    international community, which might not be true in perhaps

10   some of our more limited or narrow or traditional criminal

11   cases that we might do here in the Southern District, and I do

12   want to make sure that everything I do and have tried to make

13   sure that everything I do in this case up until now is fair and

14   is demonstrably fair, in particular to this broader community

15   that may be interested in viewing this case.

16          So with all that in mind and with my thanks for

17   typically excellent findings of fact and conclusions of law and

18   oral presentations, I'll close the record of the *Curcio*

19   proceeding and get you a ruling as soon as practicable.

20          Thank you very much.  Good to see you all.

21          ALL COUNSEL:  Thank you, your Honor.

22          (Adjourned)

23

24

25