```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/15/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

         Government,  :  15 Cr 867 (RMB)

  - against -        :  **DECISION & ORDER**

REZA ZARRAB,
        Defendant(s).  :  **MEMO ENDORSED**
------------------------------------------------------------x

    Having reviewed the record herein including, without limitation, the Government submissions, dated November 18, 2016, November 29, 2016, December 2, 2016, December 16, 2016, January 25, 2017; the Defense submissions, dated November 12, 2016, November 13, 2016, November 28, 2016, November 29, 2016, December 2, 2016, December 13, 2016, December 21, 2016, January 25, 2017; an (unsigned 2 page) waiver agreement ("Zarrab Conflicts of Interest Waiver") between Zarrab and Kirkland and Ellis ("Kirkland" or "K&E") executed on or after November 16, 2016[1]; waivers from seven bank clients of Kirkland and Ellis, namely HSBC, JPMorgan Chase, Wells Fargo, Standard Chartered, UBS, Bank of America and Deutsche Bank[2]; proposed findings of fact and conclusions of law submitted by the Government and the Defense, each dated December 21, 2016; independent counsel Harry Rimm's submissions, dated November 28, 2016, November 29, 2016, December 13, 2016; and having heard oral argument by counsel on

---

[1] According to the defense, the waiver agreement is part of a broader signed retention agreement which Mr. Zarrab entered into with Kirkland.

[2] Citibank, also a bank client of K&E, declined to submit a waiver of K&E's dual representation of Citibank and Mr. Zarrab. See, Defense letter, dated December 7, 2016 at 2 ("Citibank has informed Kirkland that it does not consent to waive any potential conflict arising out of Kirkland's representation of Mr. Zarrab.")

November 23, 2016, November 30, 2016, December 14, 2016, January 5, 2017, the Court finds and directs as follows:

1- Since November 18, 2016, when the Government first raised ethical conflicts issues related to the simultaneous (dual) representation by K&E of Defendant Reza Zarrab and the eight (8) banks identified above, the ensuing Curcio proceedings conducted by the Court have been extensive and comprehensive.

2- The Second Circuit Court of Appeals instructs, with respect to conflicts, as follows: "When a district court is sufficiently apprised of even the possibility of a conflict of interest, the court first has an inquiry obligation. . . . The court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all. . . . Whenever the court's inquiry reveals that a criminal defendant's attorney in fact suffers from an actual or potential conflict, the court has a subsequent disqualification/waiver obligation. If the court discovers that the attorney suffers from a severe conflict - such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation - the court is obliged to disqualify the attorney. . . . If the court discovers that the attorney suffers from a lesser or only a potential conflict of interest - such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation - the court should follow the procedures set out in Curcio [United States v. Curcio, 680 F.2d 881 (2d Cir. 1982)], in order to obtain directly from the defendant a valid waiver of his right to a non-conflicted lawyer. . . . If the court's inquiry reveals that there is no genuine conflict at all, the court has no further obligation." United States v. Levy, 25 F.3d 146, 153-54 (2d Cir. 1994) (internal citations and quotation marks omitted).

3- The Curcio proceedings in this case included, as noted, numerous written filings by the parties, an extended hearing, oral presentations by counsel, proposed findings of fact and conclusions of law, and helpful letters, dated November 28, 2016, November 29, 2016 and December 13, 2016 from independent counsel Harry Rimm whom the Court had appointed to advise Reza Zarrab during the Curcio proceedings. It also included letters, dated December 13, 2016, and January 25, 2017 from New York University School of Law Ethics Professor Stephen Gillers.

4- The Court's Curcio proceedings have also included extensive allocutions of Mr. Zarrab on November 30, 2016 and January 5, 2017 during which he was assisted by court appointed independent counsel, Harry Rimm, along with his team of very able defense attorneys led by (primary counsel) Benjamin Brafman.[3] The Curcio questions posed to Mr. Zarrab were developed jointly by the Defense and the Government.

5- After spending hours counseling Mr. Zarrab, Mr. Rimm advised the Court that "Mr. Zarrab was fully engaged in our conversation from yesterday. He asked what I deemed to be appropriate questions. He provided answers to my questions in a manner that made me believe he understood the questions and all of the issues that we had reviewed and discussed. We went through in painstaking detail hypotheticals, examples set forth by the government in its two submissions, and questions as amended by Kirkland & Ellis' letter from November 21st. We discussed the ethical wall, among other things.

---

[3] See New York Times, August 2, 2016, "Turkish Gold Trader Builds a Dream Team of Defense Lawyers" by Benjamin Weiser: "In just four months, he has hired five white collar law firms to defend him, with 15 lawyers - many of them among the most accomplished in their field - having entered the case on his behalf. A 16th lawyer, from a sixth firm, is joining soon, court papers show."

We also discussed the waivers from the two banks as laid out in Kirkland & Ellis' November 28th letter." (Transcript of proceedings held on November 30, 2016 at 28:15-25.) Mr. Rimm further advised the Court that Mr. Zarrab "**is prepared to proceed and to make a knowing and intentional waiver of his right to conflict-free counsel**." Id. at 29:7-9.

Mr. Rimm also stated: "Mr. Zarrab and I met yesterday morning. The focus of yesterday's meeting was on the six additional banks, and my letter from yesterday early afternoon addresses each of those six banks. I should just note for the record that I spent some time with Mr. Zarrab this morning discussing with him the three additional filings, of which I am aware, that were filed after my meeting with him from yesterday morning. That would be, number one, the Kirkland and Ellis letter from yesterday attached to which was the Gillers opinion. Mr. Zarrab and I focused on the two additional questions that were proposed to be included in the Curcio colloquy." (Transcript of proceedings held on December 14, 2016 at 10:12-23.)

6- Among other things, Professor Gillers contends: "Mr. Zarrab is not giving anything up. His situation is identical to what it would be if the Brafman firm were representing him without the assistance of the Kirkland lawyers. His informed consent confers a benefit (as we must assume he sees it). It enables him to get the particular expertise of the Kirkland lawyers to assist in his defense." (Professor Gillers letter, dated December 13, 2016 at 5.) "Disqualifying Kirkland because of what it cannot do will deny Mr. Zarrab his chosen counsel for the work it can do." (Professor Gillers letter, dated

January 25, 2016 at 3.)[4,5]

7- The Court has conducted an "inquiry investigation" and determined that, while there are several potential conflicts, there does not appear to be an actual conflict. The Court has endeavored carefully to balance Mr. Zarrab's right to select his own counsel with his right to be represented by conflict free counsel. See United States v. Kliti, 156 F.3d 150, 153 (2d Cir. 1998). The Court has not been made aware of an actual conflict or of potential conflict(s) that cannot be waived. And, during the Curcio proceedings, Mr. Zarrab has knowingly and voluntarily and rationally waived potential conflicts as well as with the limitations attached to the representation of him by Kirkland and Ellis attorneys, (particularly Paul Clement, Viet Dinh, Jeffrey Harris, Edmund Lacour).

Zarrab's written waiver states that he is fully aware that "K&E LLP currently represents financial institutions that the Government alleges may have been involved in the conduct giving rise to the charges against [him]. K&E LLP represents these financial

---

[4] "Mr. Zarrab will not be deprived of the advice and representation that the Kirkland lawyers cannot [ethically] provide (e.g., advice regarding defenses that might be adverse to the banks), assuming the need for that advice and representation in fact arises as the case proceeds. He will be able to get that advice and representation from other lawyers. The Brafman (and other) lawyers, without any assistance from the Kirkland lawyers, will alone decide whether and how the defense case should include allegations of wrongdoing by the banks. The Brafman (and other) lawyers, without assistance by the Kirkland lawyers, will decide whether to subpoena the banks as defense witnesses and will conduct any cross-examination if the government calls them. The Brafman (and other) lawyers are not in possession of the banks' confidential information and the Kirkland lawyers will not use or reveal confidential information to them, assuming any is relevant. The fact that the Kirkland lawyers will be unavailable for work adverse to the banks simply means that they will not be called upon to work on those parts of the defense." (Professor Gillers letter, dated December 13, 2016 at 5.)

[5] Professor Gillers letters are informative but they are not conclusive. See, e.g., Bernstein v.Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 144 (2d Cir. 2016).

institutions, including Bank of America, Citibank, Deutsche Bank, HSBC, JP Morgan Chase, Standard Chartered, Wells Fargo, and UBS, their affiliates, and employees (collectively 'Bank Clients'), in a wide array of matters including litigation, transactional, counselling, and other matters." (Zarrab Conflicts of Interest Waiver). It acknowledges limitations, which advantage Kirkland and Ellis's Bank Clients over Mr. Zarrab, including:

> **(a)** HSBC's right to a "first look" at any submissions in Zarrab's case referencing HSBC. Mr. Dinh stated: "[O]ur agreement with HSBC fully ensures that we protect any information that conceivably could be used here in order to represent Mr. Zarrab . . . We have further established procedures . . . that [if a] Kirkland and Ellis pleading [were to] mention HSBC, consistent with our duties to Mr. Zarrab, we would give HSBC an opportunity to review that so that they could make their own judgment that there is no confidential information that has been improperly used." (12/14/16 Tr at 18:10-24.);
> 
> **(b)** Kirkland and Ellis attorneys unavailability to participate in the examination or cross examination of Client Bank personnel who may participate in the Zarrab case as witnesses, and not to use or share with Mr. Zarrab any confidential information obtained in the course of their representation of the Client Banks;
> 
> **(c)** Kirkland and Ellis attorneys inability to include in their representation of Zarrab (through trial and/or appellate stages) developing or advancing any argument that the Client Banks were anything but "victims" of Zarrab's alleged illegal transactions;
> 
> **(d)** Particularly with respect to HSBC and JPMorgan Chase, an acknowledgment that K&E had breached the ethical or information wall which had been proposed and put in place by K&E to separate Kirkland attorneys who perform or have performed services on behalf of the Client Banks from Zarrab's defense team. The ethical wall was designed to ensure that the attorneys representing Zarrab would **not** have any involvement in any other matter relating to the eight Client Banks. See 11/30/16 Tr at 16:5-16 (Mr. Dinh: "Out of an abundance of caution, what we've done is we have put in a wall that encapsulates all the personnel who have worked on Mr. Zarrab's representation. So that includes the four lawyers, [Paul Clement, Viet Dinh, Jeffrey Harris, Edmund Lacour] as well as all of our support staff in this representation. And basically, no information about Mr. Zarrab's case can be accessed except for those individuals. If somebody else wants to enter the representation within the firm, so the rest of the members of the firm would have to get specific permission from general counsel in order to access that information. I think that's the tightest wall we can give in order to protect all the confidentiality of this particular case.")

**(e)** Waiver by Zarrab of K&E's representation of the Bank Clients in any current or future matter including matters where the Bank Clients may be adverse to him and in matters that are substantially related to the engagement; and of "any conflict of interest or other objection that may exist or that may in the future arise, which may otherwise preclude K&E LLP from representing the Bank Clients on any matter including matters adverse to you and matters that are substantially related to the Engagement." (Zarrab Conflicts of Interest Waiver);

8- The Court finds that Mr. Zarrab - - with "eyes wide open" - - knowingly, intelligently and rationally accepts the above potential conflicts and limitations upon Kirkland and Ellis's representation of him. He does so (apparently) because he has confidence in the value of Kirkland and Ellis's (even limited) representation and also because he has qualified primary counsel who appear to be conflict free. See, e.g., 1/5/17 Tr at 9:24-25, 10:1-8 (Court: "So you are . . . aware of this issue that Kirkland & Ellis represents not only you but eight of the banks that I have mentioned simultaneously." Zarrab: "Yes, your Honor." Court: "Do you understand that the fact that your lawyers from Kirkland & Ellis represent you and simultaneously represent banks alleged to be victims in this case may lead them to have loyalties divided between yourself on the one hand and those banks on the other?" Zarrab: "Yes, your Honor.") and at 17:22-25, 18:1 (Court: "And do you understand that by continuing with Kirkland & Ellis as one of the law firms representing you, you would be waiving your right to be represented solely by attorneys who have no potential or actual conflict of interest?" Mr. Zarrab: "Yes.") See also 1/5/17 Tr at 44:13-20 (Mr. Brafman: "I will be the principal trial lawyer, and the fact that Mr. Dinh may have certain ethical difficulties questioning a bank official, I don't and [I] can vigorously cross-examine them. I can use process to obtain whatever documents from HSBC that I believe are relevant and that the Court can rule, should they bring any motions to quash, and we can keep Viet Dinh and his colleagues out of that fight if it

develops."); 1/5/17 Tr at 7: 2-8 (Court: "So let me start by asking you [Mr. Zarrab] if you are satisfied with the services of your attorneys thus far in this case. And by that I mean all of your attorneys." Zarrab: "I am very happy with their services." Court: "And are you satisfied with the legal advice that they have given you?" Zarrab: "Yes, your Honor.")

9- The Court has also taken into consideration the importance of maintaining the integrity of these proceedings as the case heads toward trial (to begin on August 21, 2017) in view of the potential conflicts posed by Kirkland and Ellis's dual representation of Mr. Zarrab and the eight Kirkland and Ellis Client Banks. See Wheat v. United States, 486 U.S. 153, 160 (1988) ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."); and United States v. Cunningham, 672 F.2d 1064, 1070 (2d Cir. 1982) ("In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, we must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility.") Those potential conflicts arise principally but, as noted, not exclusively, from **i**-Kirkland and Ellis's current representation of HSBC in the United States Court of Appeals for the Second Circuit (in a matter containing findings strikingly similar to the allegations in the Indictment against Mr. Zarrab, see United States v. HSBC Bank USA NA, et al, 12 cr 763 (EDNY) and No. 16-308 (2d Cir.)); **ii**-Kirkland and Ellis's representation of the 8 Client Banks, including HSBC, who have been identified as banks through which Mr. Zarrab is alleged illegally to have channelled United States dollars to Iran; and **iii**-Kirkland and Ellis's failure fully to maintain the ethical wall it proposed as "prophylaxis" in relation to HSBC and JPMorgan. See 1/5/17 Tr at 41: 18-25, 42:1:9, 18-

25; 43:1-15 (Court: "When the conflict issue arose, everybody recognized it and acknowledged it, including yourself [K&E Counsel], and when I say you, I'm not saying personally, but Kirkland & Ellis lawyers said, well, one way we'll deal with this, as historically in other cases people do, is to establish this ethical wall and to cause a separation between the dual representations. And that's a reasonable approach. But no sooner had that been done than we came to know that the ethical wall doesn't apply in this HSBC case, which, astonishingly . . . is factually not identical but involves very many of the same kinds of charges, namely, that HSBC wilfully did not take precautions to ensure that these alleged illegal transaction benefitting Iran took place. In that very case, we can't have an ethical wall because you [Mr. Dinh] and Mr. Clement are arguing, in the Second Circuit Court of Appeals in that case . . . in favor of the continued lack of disclosure of a [no doubt relevant] report . . ." Mr. Dinh: "You're absolutely correct that the standard operating procedure in cases like this is to establish an ethical wall, which we did immediately. That ethical wall is a prophylaxis in order to protect any unknowing []violation of our duty of confidentiality that [inheres] to all our representations, and so in that sense, it prevents us from even an inadvertent violation of Rule 1.6 in the duty of confidentiality. As your Honor correctly observed, that prophylaxis is not there because Mr. Clement, myself, and Mr. Harris are representing HSBC and have access to the Report as issued in that case.[6] That is why we have reaffirmed our obligation under 1.6 to HSBC

---

[6] The Government argues that 'The Report, which runs more than 1,000 pages, documents the Monitor's [Michael Cherkasky] extensive investigation into HSBC's compliance with the DPA [Deferred Prosecution Agreement signed on or about December 20, 2012] and relevant financial laws around the world . .' (Govt Proposed Findings of Fact and Conclusions of Law at 7, ¶ 24.)

that we shall keep confidential all material that we gain in that representation. In addition . . . we have given them a commitment that they will have an opportunity to review mentions of HSBC, to the extent that it's consistent with our obligation of loyalty to Mr. Zarrab, and so the parade of horribles does not present itself because HSBC would not be able to, nor would it, because it would not be consistent with their obligation to Mr. Zarrab, to veto our submissions simply because it disagrees with our strategy. It is limited to whether or not there has been inadvertent disclosure of confidential information.")

10- Based upon the information furnished thus far by the parties to the Court, the conflicts set out above do not appear (at this time) to require that Kirkland and Ellis be disqualified from representing Mr. Zarrab. See United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994) ("If the court discovers that the attorney suffers from a lesser or only a potential conflict - - such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation - - the court should follow the procedures set out in Curcio, 680 F.2d at 888-90, in order to obtain directly from the defendant a valid waiver of his right to a non-conflicted lawyer . . .")

At the same time, these conflict matters must be closely monitored, principally by the Defense. Counsel are directed promptly to advise the Court of any change of circumstances which may result in actual or which may exacerbate potential conflict(s) of interest.[7]

---

[7] In reaching its Decision in this matter, the Court found unpersuasive K&E's argument that "Kirkland did not become aware that HSBC had been identified as a 'victim' bank by the government until November 16, 2016, when the government provided a list of 11 banks that it claimed were 'affected by the charged offense conduct as either victims, witnesses, or both.'" (Defense letter, dated January 25, 2017 at 3-4.). The Bancroft law firm, and thereafter K&E, represented HSBC in it own sanctions criminal matter involving

Conclusion and Order

For the reasons stated above, the Government's letter motion [#177] to disqualify K&E is respectfully denied.

Dated: New York, New York
February 15, 2017

*RMB*

RICHARD M. BERMAN
U.S.D.J.

---

Iran even before it took on Mr. Zarrab as a client. See United States v. HSBC Bank USA NA, et al, No. 16-308 (2d Cir.).