# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                        :

UNITED STATES OF AMERICA            :    **SUPERSEDING INDICTMENT**

        - v. -              :    S3 15 Cr. 867 (RMB)

                        :

REZA ZARRAB,
   a/k/a "Rıza Sarraf,"         :
MEHMET HAKAN ATILLA,
MOHAMMAD ZARRAB,            :
   a/k/a "Can Sarraf,"
   a/k/a "Kartalmsd,"        :
CAMELIA JAMSHIDY,
   a/k/a "Kamelia Jamshidy," and  :
HOSSEIN NAJAFZADEH,

                        :

          Defendants.       :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 0 6 2017

The Grand Jury charges:

## BACKGROUND

### The International Emergency Economic Powers Act

1.   The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50, United States Code, Sections 1701-1706, confers upon the President authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States. Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title." 50 U.S.C. § 1705(a).

2. Beginning with Executive Order No. 12170, issued on November 14, 1979, the President found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."

3. On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations (renamed in 2013, the Iranian Transactions and Sanctions Regulations, the "ITSR") implementing the sanctions imposed by the Executive Orders..

4. The ITSR, Title 31, Code of Federal Regulations, Section 560.204, prohibits, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, from the

2

United States, or by a United States Person, of goods, technology, or services to Iran or the Government of Iran (with certain limited exceptions), including the exportation, reexportation, sale or supply of goods, technology or services to a third country knowing that such goods, technology or services are intended for Iran or the Government of Iran, without a license from the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC").

5. The ITSR further prohibit transactions that evade or avoid, have the purpose of evading or avoiding, cause a violation of, or attempt to violate the ITSR. 31 C.F.R. § 560.203.

6. Appendix A to the ITSR contained a list of persons determined to be the Government of Iran. At all times relevant to this Indictment, Bank Mellat was an Iranian state-owned bank on the list in Appendix A. At all times relevant to this Indictment, the National Iranian Oil Company ("NIOC") was an Iranian Oil Company on the list in Appendix A. At all times relevant to this Indictment, Naftiran Intertrade Company Ltd. ("NICO"), an Iranian company located in the United Kingdom and Naftiran Intertrade Company Sarl ("NICO Sarl"), an Iranian company located in Switzerland, were on the list in Appendix A.

3

7.     Bank Mellat and all of its branches and
subsidiaries were designated by OFAC on or about October 25,
2007, as Specially Designated Nationals ("SDNs") under the ITSR,
the Iranian Financial Sanctions Regulations ("IFSR"), 31 C.F.R.
Part 561, and the Weapons of Mass Destruction Proliferators
Sanctions Regulations ("WMD Sanctions"), 31 C.F.R. Part 544.
Mellat Exchange Company ("Mellat Exchange") was a money services
business owned and controlled by Bank Mellat.  At all times
relevant to this Indictment, Bank Mellat was an SDN.

8.     On or about July 12, 2012, OFAC designated Hong
Kong Intertrade Company ("HKICO") as an SDN pursuant to the
ITSR.  OFAC further identified NIOC as an agent or affiliate of
Iran's Islamic Revolutionary Guard Corp ("IRGC") pursuant to
Executive Order 13599 on or about September 24, 2012, and
designated Seifollah Jashnsaz, chairman of NICO, NICO Sarl, and
HKICO, as an SDN under the WMD Sanctions on or about May 23,
2012.  At all times relevant to this Indictment after on or
about July 12, 2012, HKICKO was an SDN. At all times relevant to
this Indictment after May 23, 2012, Jashnsaz was an SDN.  At all
times relevant to this Indictment after September 24, 2012, NIOC
was identified as an agent or affiliate of the IRGC.

9.     On or about October 12, 2011, OFAC designated
Mahan Air as an SDN pursuant to Executive Order 13224 for

4

providing financial, material and technological support to the
Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF").
According to OFAC, Mahan Air, based in Tehran, provided
transportation, funds transfers and personnel travel services to
the IRGC-QF, including by providing travel services to IRGC-QF
personnel flown to and from Iran and Syria for military
training, facilitating the covert travel of suspected IRGC-QF
officers into and out of Iraq by bypassing normal security
procedures and not including information on flight manifests to
eliminate records of the IRGC-QF travel, facilitated IRGC-QF
arms shipments, and received funds for the procurement of
controlled goods by the IRGC-QF. Further according to OFAC,
Mahan Air also provided transportation services to Hizballah, a
Lebanon-based designated Foreign Terrorist Organization, and has
transported personnel, weapons and goods on behalf of Hizballah
and omitted from Mahan Air cargo manifests secret weapons
shipments bound for Hizballah.

### The Defendants

10. At all times relevant to this Indictment, REZA
ZARRAB, a/k/a "Riza Sarraf," the defendant, owned and operated a
network of companies located in Turkey and in the United Arab
Emirates, including a group of companies under Royal Holding
A.S. ("Royal Holding"), a holding company in Turkey, Durak Doviz

5

Exchange, a money services business in Turkey, and Al Nafees

Exchange LLC ("Al Nafees Exchange"), a money services business

in the United Arab Emirates.  The Royal Holding group of

entities includes Royal Emerald Investments, among others.

11.  At all times relevant to this Indictment, MEHMET

HAKAN ATILLA, the defendant, was the Deputy General Manager of

International Banking at a financial institution headquartered

in Istanbul, Turkey ("Turkish Bank-1").

12.  At all times relevant to this Indictment,

MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," the

defendant, owned and operated a network of companies located in

Turkey and in the United Arab Emirates, including Flash Doviz

Exchange ("Flash Doviz"), a money services business in Turkey;

Sam Exchange, a money services business in the UAE; and Hanedan

General Trading LLC ("Hanedan General Trading"), a company in

the UAE, among others.

13.  At all times relevant to this Indictment, CAMELIA

JAMSHIDY, a/k/a "Kamelia Jamshidy," the defendant, was an

employee of REZA ZARRAB, a/k/a "Riza Sarraf," the defendant, at

Royal Holding and related entities.

14.  At all times relevant to this Indictment, HOSSEIN

NAJAFZADEH, the defendant, was a senior officer at Mellat

Exchange.

6

15.  At all times relevant to this Indictment, REZA ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA, CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADHEH, the defendants, and others assisted Iranian individuals and companies, including Bank Mellat, Mellat Exchange, NIOC, HKNICO, and others, to evade U.S. sanctions by conducting international financial transactions using Turkish and Emirati companies on behalf of and for the benefit of these Iranian individuals and entities in order to conceal from U.S. banks and others that services were being provided to Iran, to the Government of Iran, and to agents or affiliates of the IRGC in violation of the IEEPA, the ITSR, and the IFSR.

## STATUTORY ALLEGATIONS

### COUNT ONE

**(Conspiracy to Defraud the United States)**

The Grand Jury further charges:

16.  The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

17.  From at least in or about 2010, up to and including in or about 2015, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere, REZA ZARRAB, a/k/a "Riza Sarraf," MOHAMMAD ZARRAB, a/k/a "Can

7

Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, to impair, impede, and obstruct the lawful and legitimate governmental functions and operations of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC") in the enforcement of economic sanctions laws and regulations administered by that agency.

### Overt Acts

18. In furtherance of the conspiracy and to effect the illegal object thereof, REZA ZARRAB, a/k/a "Riza Sarraf" ("ZARRAB"), MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd" ("MOHAMMAD ZARRAB"), CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others committed the following overt acts, among others:

a. On or about December 3, 2011, ZARRAB and NAJAFZADEH received an email attaching a draft letter in Farsi addressed to the General Manager of the Central Bank of Iran and prepared for ZARRAB's signature, stating in part:

> The role that the Supreme Leader [the
> Ayatollah Khamenei] and the esteemed
> officials and employees of Markazi Bank [the

8

> Central Bank of Iran] play against the
> sanctions, wisely neutralizes the sanctions
> and even turns them into opportunities by
> using specialized methods. It is no secret
> that the trend is moving towards
> intensifying and increasing the sanctions,
> and since the wise leader of the Islamic
> Revolution of Iran has announced this to be
> the year of the Economic Jihad, the Zarrab
> family, which has had half a century of
> experience in foreign exchange, while
> establishing branches in Turkey, United Arab
> Emirates, Russia, and Azerbaijan, considers
> it to be our national and moral duty to
> declare our willingness to participate in
> any kind of cooperation in order to
> implement monetary and foreign exchange
> anti-sanction policies . . . .
>
> Hoping that the efforts and cooperation of
> the zealous children of Islamic Iran will
> result in an upward increase in the progress
> of our dear nation in all international and
> financial arenas.

### Transactions for Mellat Exchange

b.    On or about January 26, 2011, a co-

conspirator not named as a defendant herein ("CC-1"), an

employee of Mellat Exchange, described in paragraph 7 above,

sent an email to a second co-conspirator not named as a

defendant herein ("CC-2"), an employee of Al Nafees Exchange,

described in paragraph 9 above, with instructions for Al Nafees

Exchange to make international financial transfers on behalf of

Mellat Exchange. Included in the instructions was a payment in

the amount of approximately $953,288.85 to a company located in

Canada ("Canadian Company-1") described as "transfer by MAPNA."

MAPNA is a reference to MAPNA Group, an Iranian construction and power plant company.

c. On or about January 27, 2011, Royal Emerald Investments, a co-conspirator not named as a defendant herein, caused an international wire transfer from the UAE to Canadian Company-1 in the amount of approximately $953,289, which was processed by a United States bank ("U.S. Bank-1"). The wire transfer information provided to U.S. Bank-1 purported that the payment was related to fire equipment, but made no mention of MAPNA Group.

d. On or about February 28, 2011, CC-1 of Mellat Exchange sent an email to CC-2 of Al Nafees Exchange with instructions for making several international financial transfers, including four transfers in United States currency, on behalf of Mellat Exchange. Included in the instructions was a payment in the amount of approximately $76,950 to a company located in China ("Chinese Company-1"), identifying the "Intermediary Bank" for the transaction as a bank located in the United States ("U.S. Bank-2").

e. On or about March 1, 2011, CC-1 sent an email to ZARRAB and to a co-conspirator not named as a defendant herein ("CC-3"), an employee of Royal Holding, attaching a list

10

of the four U.S.-currency payment instructions for Mellat
Exchange described in paragraph 16(c) above.

   f. On or about March 9, 2011, CC-1 of Mellat
Exchange sent an email to CC-2 of Al Nafees Exchange with
instructions for making several international financial
transfers in United States currency on behalf of Mellat
Exchange.  Included in the instructions was a payment in the
amount of approximately $9,225 to a company located in Hong Kong
("Hong Kong Company-1").

   g. On or about May 24, 2011, CC-1 of Mellat
Exchange sent an email to ZARRAB, JAMSHIDY, and CC-3 of Royal
Holdings with the subject line, in Farsi, "very very
urgent!!!!!!!!!!"  Attached to the email were (1) a portion of a
SWIFT message addressed to the attention of "OFAC/Compliance
Unit" indicating that an international wire transfer in the
amount of approximately €3,711,365 had been stopped by U.S.
Bank-1 because of global sanctions; (2) a statement that the
payment related to services provided in connection with
development of a gas field in Iran; and (3) a letter from Mellat
Exchange to ZARRAB stating in part, in Farsi:

     Based on the results of the continuous
     follow-ups regarding the above transfer, and
     your suggestion regarding communication with
     the OFAC agency in Turkey regarding
     facilitating transfers or returns thereof,

> the information received from the credit
> applicant is reflected exactly for follow up
> and appropriate action.

h.     On or about May 31, 2011, JAMSHIDY sent an

email to CC-2 of Al Nafees Exchange attaching a letter from

Mellat Exchange, signed by NAJAFZADEH, to Al Nafees Exchange

requesting the delivery of approximately $30 million in U.S.

currency to Mellat Exchange in Tehran, Iran.

i.     On or about June 1, 2011, CC-1 of Mellat

Exchange sent an email to ZARRAB with the subject line, in

Farsi, "very urgent" and attaching, among other things, (1) a

portion of a SWIFT message noting that a payment in the amount

of approximately $9,225 had been blocked by a United States bank

("U.S. Bank-3") "pursuant to the sanctions imposed by the U.S.

Gov Dept. of Treasury OFAC"; (2) a letter from Hong Kong

Company-1's bank advising that a payment to Hong Kong Company-1

from Asi Kiymetli Madenler Turizm Otom in the amount of

approximately $9,200 had been blocked by U.S. Bank-3 because of

OFAC; (3) a portion of a second SWIFT message noting that

payment of a second international transfer to Hong Kong Company-

1 in the amount of approximately $35,000 had been blocked by a

United States bank ("U.S. Bank-4") as a result of OFAC

sanctions; (4) a letter from Mellat Exchange dated May 15, 2011,

to a relative of ZARRAB's at Al Nafees Exchange, signed by

12

NAJAFZADEH, concerning the two blocked payments; and (5) a

letter from Mellat Exchange dated June 1, 2011, to Durak Doviz

Exchange, signed by NAJAFZADEH, concerning the two payments

"through the Nafees Exchange," which stated in part, in Farsi:

> [T]he above amounts were blocked by OFAC,
> and despite repeated follow-ups to execute
> these transfers by providing all necessary
> documents, unfortunately, the transfers have
> not been executed and deposited in the
> beneficiary's account.  Therefore, despite
> the lack of communication with you regarding
> the covered topic, and only with regard to
> your excellent achievements regarding
> similar prior cases, it is requested:
> Regarding the passage of more than 2 months,
> and the lack of any results from the follow-
> ups of Nafiss Exchange, please arrange that
> with your guidance this case can be closed.

## Transactions for the Iranian Ministry of Oil, NIOC, NICO, and HKNICO

j.   On or about January 7, 2013, ZARRAB sent an

email to a co-conspirator not named as a defendant herein

("CC-4"), an employee of Royal Holding, attaching instructions

for an international financial transfer from Turkish company ECB

Kuyumculuk Ic Vedis Sanayi Ticaret Limited Sirketi in the amount

of approximately $600,000 to an energy company located in

Turkmenistan ("Turkmeni Company-1").

k.   On or about January 16, 2013, ZARRAB sent an

email to a co-conspirator not named as a defendant herein

("CC-5") attaching a SWIFT message for a payment in the amount

of approximately $1,000,000 from Gunes General Trading LLC, a company located in the U.A.E., to Turkmeni Company-1.

l.     On or about January 16, 2013, Gunes General Trading LLC, a co-conspirator not named as a defendant herein, caused an international wire transfer from the U.A.E. to Turkmeni Company-1 in the amount of approximately $999,907, which was processed by a United States bank ("U.S. Bank-5").

m.     On or about November 11, 2013, a co-conspirator not named as a defendant herein ("CC-6") sent an email to ZARRAB attaching (1) a letter from HKICO, signed by Seifollah Jashnsaz and stamped "CONFIDENTIAL," addressed to HKICO's bank concerning an approximately €100 million transfer to HKICO's account; (2) a letter from NIOC concerning an international financial transfer; and (3) a letter from Turkmeni Company-1 dated May 30, 2013, addressed to the Deputy Minister of Iran's Oil Ministry, instructing that payment to Turkmeni Company-1 be made in U.S. currency.

## Transactions for Mahan Air

n.     On or about October 13, 2011, a co-conspirator not named as a defendant herein ("CC-7"), an individual affiliated with Mahan Air's office in Dubai, received an email from a representative of Mahan Air with the subject "IMPORTANT !! -- MAHAN AIR has been OFAC listed from US Treasury

Department" and including, among other things, a statement that
a bank had advised that "all transactions to/from Mahan Air will
be rejected as per sanctions policy, following the addition of
Mahan Air to the OFAC list[.]"

    o. On or about December 18, 2013, CC-2 received
an email from an employee of the Al Nafees Exchange with the
subject line: "ASCOT" and attaching electronic copies of (1)
license information for Ascot General Trading, a Dubai company,
showing CC-7 as the licensee and manager, on which was a
handwritten note in Farsi referencing "Mahan" and the name of an
officer in Mahan Air's Dubai office, a co-conspirator not named
as a defendant herein ("CC-8"); (2) pages from the passport of
CC-7; (3) an Al Nafees Exchange account signature card for Ascot
General Trading showing CC-7 as the account signatory; and (4) a
letter dated December 17, 2013, on Ascot General Trading
letterhead, signed by CC-7 and addressed to Al Nafees Exchange,
directing a transfer from Ascot General Trading's account to a
beneficiary with an account at an Iranian bank.

    p. On or about January 19, 2015, CC-7 received
an email from a money services business advising that a wire
transfer had been returned, and including a portion of a SWIFT
message stating, among other things, "ORIGINATOR IN OFAC
SANCTIONLIST."

q.    On or about June 25, 2015, MOHAMMAD ZARRAB received an email from an employee of the Al Nafees Exchange attaching an electronic copy of an Al Nafees Exchange Payment Order for Flash Doviz, MOHAMMAD ZARRAB's company, concerning a payment of $1,180,238.00 (U.S. dollars) and a second payment of €129,901.00 from Ascot General Trading to Flash Doviz Exchange "FOR MAHAN" and naming CC-8.  A handwritten note on the payment order, in Farsi, read in part: "Please deposit the above amounts in the Mahan account and show us the transfer slips."

r.    On or about July 6, 2015, CC-2 sent an email to MOHAMMAD ZARRAB attaching electronic copies of (1) an Al Nafees Exchange Payment Order for Flash Doviz concerning a payment of approximately €570,613.00 from Ascot General Trading to Flash Doviz Exchange "FOR MAHAN" and naming CC-8, with a handwritten note in Farsi that read: "Should be deposited into the Mahan account with you;" and (2) four Funds Transfer Request Forms concerning requested payments totaling approximately €560,613 to recipients in Austria, Greece, Singapore, and Germany, each bearing an Ascot General Trading stamp.

s.    On or about July 7 and July 8, 2015, MOHAMMAD ZARRAB sent CC-2 approximately four emails attaching electronic copies of wire transfer records concerning payments corresponding to the Funds Transfer Requests that CC-2 had sent

16

to MOHAMMAD ZARRAB on or about July 6, 2015. The originators on the wire transfers were two Turkish companies ("Turkish Company-1" and "Turkish Company-2").

t.     On or about July 9, 2015, CC-2 sent two emails to an officer with Mahan Air, a co-conspirator not named as a defendant herein ("CC-9"), attaching the wire transfer records that CC-2 had received from MOHAMMAD ZARRAB on July 7 and July 8, 2015.

u.     On or about July 13, 2015, MOHAMMAD ZARRAB sent CC-2 an email attaching an electronic copy of a SWIFT message concerning a transfer of $324,690 from Turkish Company-1 to a company in Malaysia ("Malaysian Company-1"). The SWIFT message record reflected that the message had been sent from a bank in Turkey to a United States bank ("U.S. Bank-6") in "New York, NY, United States of America," indicating that the payment would be transferred through a correspondent account held at Bank-6.

v.     On or about July 21, 2015, CC-2 sent an email to MOHAMMAD ZARRAB with the subject: "tt's" -- a reference to telegraphic transfers, or wire transfers. Attached to the email was an Al Nafees Exchange Payment Order concerning four payments from Ascot General Trading to Flash Doviz Exchange for Mahan Air in the amounts of $116,385, €363,971, $100,000, and

17

€298,984. A handwritten note on the payment order read, in Farsi, "Put in the Mahan account." Also attached to the email were four Fund Transfer Request Forms, bearing an Ascot General Trading stamp, concerning payments (1) to a company in Hong Kong ("Hong Kong Company-2") for $100,000, and (2) an entity purportedly located in Belize (but having an account in Latvia) and entities located in Greece and Belgium in the amounts of €363,971, €75,524, and €45,208, respectively.

        w.    On or about July 22, 2015, an email was sent from an employee of MOHAMMAD ZARRAB, a co-conspirator not named as a defendant herein ("CC-10"), to CC-2 attaching an electronic copy of a Wire Transfer Send Money Receipt from a money services business in Dubai reflecting a wire transfer of $100,000 from Hanedan General Trading to Hong Kong Company-2.

        x.    On or about July 23, 2015, CC-2 sent an email to MOHAMMAD ZARRAB attaching electronic copies of (1) an Al Nafees Exchange Payment Order concerning transfers (a) from Ascot General Trading to a co-conspirator not named as a defendant herein ("CC-11"), an employee of MOHAMMAD ZARRAB, in the amount of €200,000, (b) to Flash Doviz for Mahan Air in the amount of €87,520, and (c) to Flash Doviz for Mahan Air in the amount of $50,000; and (2) Ascot General Trading Funds Transfer Requests concerning payments to Hong Kong Company-2 in the

18

amount of $50,000 and to entities located in France and Germany for €27,520 and €60,000, respectively.

      y.    On or about July 23, 2015, CC-7 sent an email to CC-2 with the subject: "Re: 100.000,00 USD MAHAN AIR" and attaching an electronic copy of a wire transfer record reflecting a transfer in the amount of approximately $99,940.00 from Hanedan General Trading to Hong Kong Company-2 and identifying the intermediary bank for the transfer as U.S. Bank-4 in "New York, NY USA."

      z.    Later on July 23, 2015, CC-2 sent an email to CC-9 attaching an electronic copy of the wire transfer record described in paragraph 16(y) above, with portions of the information blacked out but reflecting, among other things, the originator, beneficiary, and intermediary bank (U.S. Bank-4).

      aa.    On or about July 27, 2015, CC-7 sent an email to CC-2 attaching an electronic copy of a Wire Transfer Send Money Receipt from a money services business in Dubai reflecting a wire transfer of $50,000 from Hanedan General Trading to Hong Kong Company-2.

      bb.    On or about July 29, 2015, CC-7 sent an email to CC-2 with the subject: "Re: 50.000,00 USD MAHAN AIR" and attaching an electronic copy of a wire transfer record reflecting a transfer in the amount of approximately $49,950.00

19

from Hanedan General Trading to Hong Kong Company-2, and
identifying the intermediary bank for the transfer as U.S.
Bank-4 in "New York, NY USA."

(Title 18, United States Code, Section 371).

## COUNT TWO

### (Conspiracy to Violate the

### International Emergency Economic Powers Act)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through
15 of this Indictment are repeated and realleged as if fully set
forth herein.

20. From at least in or about 2010, up to and
including in or about 2015, in the Southern District of New
York, Turkey, the United Arab Emirates, and elsewhere, REZA
ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA, MOHAMMAD
ZARRAB, /k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY,
a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the
defendants, and others known and unknown, knowingly and
willfully did combine, conspire, confederate, and agree together
and with each other to violate, and to cause a violation of,
licenses, orders, regulations, and prohibitions issued under the
International Emergency Economic Powers Act, Title 50, United
States Code, Sections 1701 to 1707, Part 560 of Title 31, Code

20

of Federal Regulations, and Part 561 of Title 31, Code of
Federal Regulations.

21. It was a part and an object of the conspiracy
that REZA ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA,
MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA
JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the
defendants, and others known and unknown, would and did export,
reexport, sell, and supply, and cause to be exported,
reexported, sold, and supplied, directly and indirectly, from
the United States, services, to wit, international financial
transactions, to Iran and to the Government of Iran, without
first obtaining the required approval of the Office of Foreign
Assets Control, within the United States Department of Treasury,
in violation of Title 50, United States Code, Sections 1701 to
1707, and Title 31, Code of Federal Regulations, Section
560.204.

22. It was further a part and an object of the
conspiracy that REZA ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN
ATILLA, MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd,"
CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN
NAJAFZADEH, the defendants, and others known and unknown, would
and did engage in a transaction that evaded and avoided, had the
purpose of evading and avoiding, caused a violation of, and

21

attempted to violate one or more of the prohibitions set forth
in Title 31, Code of Federal Regulations, Part 560, in violation
of Title 50, United States Code, Sections 1701 to 1707, and
Title 31, Code of Federal Regulations, Section 560.203.

## Overt Acts

23.    In furtherance of the conspiracy and to effect
the illegal objects thereof, REZA ZARRAB, a/k/a "Riza Sarraf,"
MEHMET HAKAN ATILLA, MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a
"Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and
HOSSEIN NAJAFZADEH, the defendants, and others known and
unknown, committed the overt acts set forth in paragraph 18 of
this Indictment, among others, which are fully incorporated by
reference herein.

(Title 50, United States Code, Section 1705;
Title 31, Code of Federal Regulations, Sections 560.203,
560.204, 560.205, 561.202, & 561.205.)

## COUNT THREE

### (Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

24.    The allegations contained in paragraphs 1 through
15 of this Indictment are repeated and realleged as if fully set
forth herein.

25.    From at least in or about 2010, up to and
including in or about 2015, in the Southern District of New

22

York, Turkey, the United Arab Emirates, and elsewhere, REZA
ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA, MOHAMMAD
ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY,
a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the
defendants, and others known and unknown, and others known and
unknown, knowingly and willfully did combine, conspire,
confederate, and agree together and with each other to commit
bank fraud, in violation of Title 18, United States Code,
Section 1344.

        26.  It was a part and an object of the conspiracy
that REZA ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA,
MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA
JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the
defendants, and others known and unknown, would and did
knowingly execute and attempt to execute a scheme or artifice to
defraud a financial institution, and to obtain moneys, funds,
credits, assets, securities, and other property owned by and
under the custody and control of a financial institution, by
means of false and fraudulent pretenses, representations, and
promises, in violation of Title 18, United States Code, Section
1344.

## Overt Acts

27. In furtherance of the conspiracy and to effect the illegal object thereof, REZA ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA, MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, committed the overt acts set forth in paragraph 18 of this Indictment, among others, which are fully incorporated by reference herein.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR

### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

28. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

29. From at least in or about 2010, up to and including in or about 2015, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere, REZA ZARRAB, a/k/a "Riza Sarraf," MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, together with others known and unknown,

24

willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(2)(A).

30. It was a part and an object of the conspiracy that REZA ZARRAB, a/k/a "Riza Sarraf," MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds to places in the United States from and through places outside the United States, in amounts exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity, to wit, the illegal export of services to Iran as charged in Count Two of this Indictment and bank fraud as charged in Count Three of this Indictment, in violation of Section 1956(a)(2)(A) of Title 18, United States Code.

## Overt Acts

31. In furtherance of the conspiracy and to effect the illegal object thereof, REZA ZARRAB, a/k/a "Riza Sarraf," MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the

25

defendants, and others known and unknown, committed the overt acts set forth in paragraph 18 of this Indictment, among others, which are fully incorporated by reference herein.

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATION

### (Counts Two and Three)

32.  As a result of committing the offenses alleged in Counts Two and Three of this Indictment, REZA ZARRAB, a/k/a "Riza Sarraf," MEHMET HAKAN ATILLA, MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts Two and Three of this Indictment, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offenses.

### Substitute Assets Provision

33.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> a)  cannot be located upon the exercise of due diligence;

26

b) has been transferred or sold to, or deposited with, a third person;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

## FORFEITURE ALLEGATION

### (Count Four)

34. As a result of committing the money laundering offense alleged in Count Four of this Indictment, REZA ZARRAB, a/k/a "Riza Sarraf," MOHAMMAD ZARRAB, a/k/a "Can Sarraf," a/k/a "Kartalmsd," CAMELIA JAMSHIDY, a/k/a "Kamelia Jamshidy," and HOSSEIN NAJAFZADEH, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to, a sum of money representing the

27

amount of property that was involved in the money laundering offense or is traceable to such property.

### Substitute Assets Provision

35. If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:

> a) cannot be located upon the exercise of due diligence;
>
> b) has been transferred or sold to, or deposited with, a third person;
>
> c) has been placed beyond the jurisdiction of the court;
>
> d) has been substantially diminished in value; or
>
> e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

> (Title 18, United States Code, Sections 981, 982;
> Title 21, United States Code, Section 853;
> Title 28, United States Code, Section 2461.)

Foreperson

Joon Kim

JOON H. KIM
Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

REZA ZARRAB, a/k/a "Riza Sarraf,"
MEHMET HAKAN ATILLA,
MOHAMMAD ZARRAB, a/k/a "Can Sarraf,"
a/k/a "Kartalmsd,"
CAMELIA JAMSHIDY, a/k/a "Kamelia
Jamshidy," and
HOSSEIN NAJAFZADEH,

Defendants.

## SUPERSEDING INDICTMENT

S3 15 Cr. 867 (RMB)

(18 U.S.C. § 371; 50 U.S.C. § 1705; 31
C.F.R. §§ 560.203, 560.205; 18 U.S.C.
§§ 1349, & 1956.)

JOON H. KIM
Acting United States Attorney.

A TRUE BILL

_____ Foreperson.