H5pdzarh

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          15 Cr. 867 (RMB)

REZA ZARRAB

           Defendant.
------------------------------x

                          New York, N.Y.
                          May 25, 2017
                          9:48 a.m.
Before:

                HON. RICHARD M. BERMAN,

                                  District Judge

                        APPEARANCES

JOON H. KIM
      Acting United States Attorney for the
      Southern District of New York
BY:  SIDHARDHA KAMARAJU
      SEYHAN SIRTALAN
         Assistant United States Attorneys

BRAFMAN & ASSOCIATES P.C.
      Attorneys for Defendant Zarrab
BY:  BENJAMIN BRAFMAN
        -and-
DOAR RIECK DeVITA KALEY & MACK
BY:  JAMES R. DeVITA
      -and-
FERRARI & ASSOCIATES, P.C.
BY:  ERICH C. FERRARI

       - also present -

SA Jennifer McReynolds, FBI

Seyhan Sirtalan,
Asiye Kay,
    Turkish language interpreters

H5pdzarh

1        THE COURT:  How are you all?  Please be seated.

2        So let me suggest a game plan for today.  First I'm

3   going to go over where I think we are, and then I'm going to

4   ask for some oral clarification from defense and from the

5   government.  Then I am going to -- I plan to ask, unless there

6   is objection, some supplemental questions that the government

7   had suggested that we include in the <u>Curcio</u> and then return to

8   where we were in the <u>Curcio</u> joint questions.

9        I don't think I am going to rule today.  I don't know

10  that it will take me too long to do that, but I just want to go

11  over everything since it is a pretty voluminous record.

12       So, here's where I think we are.  We began the <u>Curcio</u>

13  hearing with respect to Messrs. Giuliani and Mukasey on May 2.

14  We continued that -- oh, let me ask if the interpreter is

15  working and if Mr. Zarrab is able to understand the

16  proceedings?

17       MR. DeVITA:  Apparently the broadcasting is

18  intermittent, your Honor.

19       THE INTERPRETER:  Your Honor, the sound is getting

20  some traffic so we will test the other one.

21       THE COURT:  Is it the headset or what?

22       THE INTERPRETER:  I believe it is the headset.

23       THE COURT:  Is there another headset?

24       MR. DeVITA:  We have another headset, your Honor.  We

25  will try that one.

H5pdzarh

1          (Pause)

2          We have a third option, your Honor.

3          Three is the charm.

4          THE COURT:  Three is the charm, OK.

5          So, Mr. Zarrab, you are able to understand the Turkish

6     language interpreter with the use of the headset?

7          THE DEFENDANT:  I understand.

8          THE COURT:  OK.  Great.

9          So let me start again.  We began the <u>Curcio</u> hearing

10    respecting Messrs. Giuliani and Mukasey on May 2.  The hearing

11    was continued to May 11, but on May 11 we did not continue with

12    further questions because I had an interest in some additional

13    submissions from counsel that would include, among other

14    things, answers to these questions:  Whether Greenberg

15    Traurig's representation of both Mr. Zarrab and the Republic of

16    Turkey is an actual conflict?

17          2.  Who is Greenberg Traurig's client when

18    Mr. Giuliani meets with Turkish or United States officials to

19    discuss Mr. Zarrab's case?  Is it Turkey or Mr. Zarrab?  And

20    whether such discussions are legally privileged?

21    Attorney-client was the reference, and there was some

22    discussion of work product as well -- attorney work product.

23          May Messrs. Giuliani or Mukasey participate in or take

24    positions adverse to Mr. Zarrab in negotiations between the

25    United States and Turkey?

H5pdzarh

1          And I'll ask counsel, if you wish, in a minute to

2     summarize what answers were submitted to those questions.

3          And then in a written order dated May 15, I asked

4     counsel to comment on, first of all, a May 2 colloquy which is

5     found at page 13, lines 18 -- well, I'm not sure what lines

6     they are, but it's found in the May 2, 2017 transcript, and it

7     is as follows.

8          The Court asks:  "Then the last question from

9     yesterday's," May 1, 2017, "order, do office holders and/or

10    members or affiliates of the governments of the United States

11    or Turkey do business with Mr. Zarrab and/or any of

12    Mr. Zarrab's affiliates?  If the answer is yes, could you

13    explain?

14          "Mr. Brafman:  I think the answer might be yes and yet

15    might be privileged, given the dynamics of this case in its

16    present posture and some of the charges.

17          "The Court:  I see.

18          "Mr. Brafman:  But they certainly do not impact on

19    what Mr. Giuliani's firm does or does not do on behalf of

20    Turkey.

21          "The Court:  OK.  So let me take those answers under

22    advisement and proceed with the Curcio hearing."

23          So I'm going to give Mr. Brafman an opportunity to

24    explore that or explain that, if he wishes, somewhat further.

25          And I also asked counsel to supplement the submissions

H5pdzarh

1   made as to whether Messrs. Giuliani and Mukasey and/or their

2   firms, or any defense counsel in the case, have also been

3   retained by Iran Halkbank or Turkey.  Since that May 11

4   conference, I received additional affidavits from Mr. Giuliani

5   and Mr. Mukasey, dated May 22, 2017 and May 19, 2017,

6   respectively.  I also received additional, as I mentioned,

7   proposed Curcio questions from the government in a letter dated

8   May 22, 2017.

9           In that letter the government states that, based on

10  the information available to it at the current time, Greenberg

11  Traurig's concurrent representation of Mr. Zarrab and the

12  Republic of Turkey presents at the very least a potential

13  conflict.  The government goes on to state, quote, The Court

14  and the government are obligated to ensure only that the

15  defendant is aware of the potential or actual conflict as well

16  as aware of his right to conflict-free counsel and,

17  nevertheless, waives that right to conflict-free counsel.

18  Accordingly -- this is still the government quote -- the Court

19  need only evaluate whether the defendant understands the

20  potential conflict and knowingly and intentionally waives that

21  conflict.

22          Let me ask our independent counsel for this Curcio

23  purpose, Mr. DeVita, if the defense has had sufficient time to

24  review the government's submission and its proposed additional

25  Curcio questions, which I was thinking of adding?

H5pdzarh

1            MR. DeVITA:  Yes, your Honor, I have.  I met with -- I

2       have now met with Mr. Zarrab four times, together with a

3       Turkish interpreter, most recently Tuesday night, and we had

4       the occasion to go over the government's most recent

5       submission.  He's aware of those questions and is prepared to

6       respond.

7            THE COURT:  Anybody have any objection to my asking

8       those additional questions?

9            MR. BRAFMAN:  No, your Honor.  I think, without

10      conceding everything the government has said in its most recent

11      submission dated May 22, 2017, I don't have any objection to

12      your Honor asking those additional questions.  I would also

13      add, respectfully, that there are other issues that I would

14      like to address at some point this morning.  But I would also

15      add that I agree with --

16           THE COURT:  We could explore it after we go through

17      this.

18           MR. BRAFMAN:  You can do it any way that your Honor

19      wishes.

20           THE COURT:  I mean, do they relate to the questions

21      and the Curcio?

22           MR. BRAFMAN:  They don't relate to the specific

23      questions.

24           But I do also agree with the government's ultimate

25      conclusion in their letter that whether this is an actual or

1    potential conflict, Mr. Zarrab, being fully informed and having

2    an opportunity to confer with independent counsel and being an

3    intelligent man, can knowingly and intelligently waive any

4    conflicts about these issues removed from the case.

5            THE COURT:  I don't necessarily disagree.  I think the

6    emphasis, in my understanding of the Curcio, is more on

7    potential conflicts --

8            MR. BRAFMAN:  Right.

9            THE COURT:  -- are certainly waivable, and I guess

10   we'd have a little more hiccup, so to speak, if they were

11   actual.

12           MR. BRAFMAN:  I don't believe there are any actual

13   conflicts.

14           THE COURT:  I don't know that anybody is asserting

15   that there is an actual conflict.

16           MR. BRAFMAN:  Thank you, sir.

17           THE COURT:  So, all right.  It is my understanding

18   that, Mr. Brafman, that you wanted to at some point supplement

19   that Q and A from the May 2 transcript.

20           MR. BRAFMAN:  Yes.  I did write your Honor a letter on

21   May 8th in which I quoted specifically from the transcript on

22   May 2nd where, in response to the Court's question concerning

23   business relationships with Turkey, my answer, in pertinent

24   part, was, at pages 13 and 14, "I think the answer might be yes

25   and yet might be privileged."  I then asserted in my letter

H5pdzarh

1    that I was not authorized to say it might even be yes, and that

2    the answer to that question, given the dynamics of this case

3    and the allegations that the government has made, would be a

4    violation of his Fifth Amendment privilege against

5    self-incrimination to ask him to even respond to that question.

6    And my "might be" answer should be stricken because after I

7    spoke to Mr. Zarrab I realized I wasn't authorized to even say

8    that.

9            THE COURT:  OK.  So you want to essentially correct

10   the record, as it were.  And so just give me just a short,

11   clear statement of --

12           MR. BRAFMAN:  The answer I gave to the Court on

13   May 2nd was, "I think the answer might be yes and yet might be

14   privileged, given the dynamics of this case in its present

15   posture and some of the charges."  I'd like the record to

16   reflect that my answer should be:  "I think the answer would be

17   privileged or would otherwise require Mr. Zarrab to violate his

18   right against self-incrimination.  I, therefore, respectfully

19   decline to answer the question."

20           MR. DeVITA:  Your Honor, just so the record is clear.

21   I discussed on a purely hypothetical basis with Mr. Zarrab if

22   there were relationships with the Turkish government, how that

23   might have an impact on his representation, without asking him

24   the question of whether there are or aren't.  And I believe he

25   understands the ramifications of any theoretical such

H5pdzarh

1    relationship.

2              THE COURT:  Whether there are or aren't --

3              MR. DeVITA:  I did not ask whether there are or aren't

4    because I didn't want to invade Mr. Brafman's relationship or

5    get into the Fifth Amendment area.  What I did discuss with

6    him, as part of the overall discussion, is theoretical

7    possibilities.  If there were theoretically some relationship

8    with the Turkish government, how that might have an effect --

9              THE COURT:  Is that a theoretical economic

10   relationship?

11             MR. DeVITA:  Yes.  How that might have an impact on

12   the representation of Greenberg Traurig.

13             Judge, I feel he understands the concerns that it

14   could raise, if they exist, and I have no knowledge and am not

15   making any representation about whether they do or they don't.

16             THE COURT:  OK.  All right.  Let me move forward.

17             The additional questions -- so let's swear in

18   Mr. Zarrab.

19             THE CLERK:  Sir, if you could stand for a moment,

20   please, and raise your right hand.

21             (The Defendant, Reza Zarrab, was sworn through the

22   interpreter)

23             THE CLERK:  Thank you, sir.  You may be seated.

24             THE COURT:  Oh, probably, before I go further, I also

25   ought to state a few more things for the record.

H5pdzarh

1          According to the Giuliani affidavit of May 22,

2  Mr. Giuliani states, among other things, that "Neither I nor my

3  firm have represented Iran or Halkbank nor have we during

4  pendency of my representation of Mr. Zarrab."  He goes on to

5  say, "Mr. Zarrab is our client and our only client in this

6  matter.  Neither Mr. Levy," who is Mr. Giuliani's partner, "nor

7  I represent the interests of Turkey or the United States.  Our

8  attorney-client obligations are exclusively to Mr. Zarrab."

9          He says further, "At all times that I have had any

10  substantive conversation with a representative of the United

11  States government or the government of Turkey, Mr. Mukasey has

12  fully participated, and that practice will continue as long as

13  we continue to represent Mr. Zarrab.  As such, even if the

14  Court were to imply a conflict with regard to me" --

15  Mr. Giuliani, that is -- "and my firm's ethically screened-off

16  representation of Turkey, Mr. Mukasey's presence ensures that

17  Mr. Zarrab always has conflict-free counsel fully participating

18  and protecting his interests."

19          He goes on to say, "In representing Mr. Zarrab, any

20  conversations Mr. Mukasey or I have had or may have to further

21  his interests as a defendant before this Court are surely

22  within the work product privilege applicable to attorneys."

23          And further he says, "Interviewing witnesses,

24  gathering information, or otherwise discussing matters in

25  furtherance of our client's defense are matters uniquely within

H5pdzarh

1    our role as criminal defense attorneys that must be protected

2    as work product at the very least."

3              And Mr. Mukasey states in his affidavit that, "There

4    has been no representation by me or Debevoise of Turkey, Iran,

5    or Halkbank."

6              So I just wanted the record to be clear what their

7    responses are.

8              So, Mr. Zarrab, we have these additional <u>Curcio</u>

9    questions that the government has asked me to ask you and which

10   defense counsel, your counsel, has no objection to me asking

11   the questions.  So, here they are.

12             So, one is -- one supplemental question is:  Do you

13   understand that if and when Mr. Giuliani negotiates with the

14   United States government officials about your case, he may also

15   be influenced by his firm's, Greenberg Traurig's representation

16   of the Republic of Turkey?  Do you understand that?

17             THE DEFENDANT:  Yes, I understand.

18             MR. BRAFMAN:  Your Honor, if I may?

19             THE COURT:  Yes.

20             MR. BRAFMAN:  I didn't want to spend a lot of time

21   going back and forth on these questions because I knew he could

22   address some.

23             I think, given Mr. Giuliani's most recent affidavit,

24   he represents that he doesn't represent the Republic of Turkey.

25   So I think these questions are broad in order to ensure that

H5pdzarh

1    the waiver is OK.   And with respect to the second question as

2    well, it occurs to me that when you ask in particular, do you

3    understand that if that occurs, then the only lawyers

4    representing you during these negotiations may have

5    inconsistent obligations to the Republic of Turkey, it is now

6    clear to us from Mr. Giuliani's affidavit that Mr. Mukasey is

7    involved and he appears to be conflict-free counsel.

8          THE COURT:  I get you, and I don't necessarily

9    disagree.  I think it would be just as well to ask the

10   questions.

11         MR. BRAFMAN:  That's fine.

12         THE COURT:  And then if the conclusion has to be drawn

13   whether or not Mr. Mukasey is conflict free, then that solves

14   any problem.

15         MR. BRAFMAN:  That is fine.

16         THE COURT:  So let's have it in the record and then

17   we'll --

18         MR. BRAFMAN:  OK.

19         THE COURT:  OK.  So the next question is:  In

20   particular, Mr. Zarrab, do you understand that if that occurs,

21   that is to say, the negotiations we just talked about in the

22   immediately-preceding question, then the only lawyer

23   representing you during these negotiations may have

24   inconsistent obligations to you and the Republic of Turkey?

25         I think that question could be explained to mean that

H5pdzarh

1      that means Mr. Giuliani in this case.

2               THE DEFENDANT:  Yes, I understand.

3               THE COURT:  OK.  And do you further understand that

4      during those negotiations, that lawyer, Mr. Giuliani, may not

5      be able to negotiate in a manner that harms or is to the

6      detriment of the Republic of Turkey?

7               THE DEFENDANT:  Yes, I understand.

8               THE COURT:  Next question is:  Indeed, do you

9      understand that Mr. Giuliani may be required or may decide to

10     place the interests of the government of Turkey before your

11     interests in this matter?  Do you realize that?

12              THE DEFENDANT:  Yes, I understand.

13              THE COURT:  OK.  And then on page 4 of the

14     government's letter, they pose two additional questions as

15     Curcio questions.  And the first of these two is that, "Do you

16     understand that if you authorize Mr. Giuliani, or any of your

17     other attorneys, to disclose communications between you and

18     your attorneys to any third party, including U.S. or Turkish

19     government officials, that could lead to the waiver of your

20     attorney-client and attorney work product privileges?

21              THE DEFENDANT:  Yes, I understand.

22              THE COURT:  And I'm comfortable that both Mr. Brafman

23     and Mr. DeVita have discussed attorney-client privilege and

24     work product privilege with Mr. Zarrab.

25              MR. DeVITA:  That is correct, your Honor.

1            MR. BRAFMAN:  That is correct, your Honor.

2            And, your Honor, just for the record, the fact that I

3    have consented to the questions proposed by the government does

4    not imply in any way that I share their legal conclusions in

5    the letter with respect to either attorney-client privilege or

6    work product.  I just explained to him --

7            THE COURT:  I understand that, and I understand that

8    as well that that's your position.

9            The next question is:  And do you also understand that

10   if you do waive your attorney-client and attorney work product

11   privileges, then your communications with your lawyers could be

12   disclosed to third parties, including the government, which

13   could seek to use them against you?

14           THE DEFENDANT:  Yes, I understand.

15           THE COURT:  Then on page 5, there are two or three

16   additional questions proposed by the government, the first of

17   which is:  Do you understand that Mr. Giuliani has a duty to

18   negotiate a resolution of this case that is in your best

19   interest?

20           THE DEFENDANT:  Yes, I understand.

21           THE COURT:  And do you understand that Mr. Giuliani's

22   firm, Greenberg Traurig, also has a duty to the Republic of --

23   his firm does -- to the Republic of Turkey during any

24   negotiation on your behalf to refrain from acting in a way that

25   may harm Turkey's interests or image?

H5pdzarh

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, I understand. |
| 2 | THE COURT:  And I take it that question from the |
| 3 | government relates to the agency relationship between Greenberg |
| 4 | Traurig and Turkey? |
| 5 | MR. KAMARAJU:  That is correct, your Honor. |
| 6 | THE COURT:  And then, finally, in these additional |
| 7 | questions:  Do you understand that, as a result, Mr. Giuliani |
| 8 | may not be able to negotiate a resolution of your case in a |
| 9 | manner that would be contrary to Turkey's interests? |
| 10 | THE DEFENDANT:  Yes, I understand. |
| 11 | THE COURT:  So, then, Mr. Brafman, I think we left off |
| 12 | in the original joint Curcio question submission at page 6 and |
| 13 | we -- |
| 14 | MR. BRAFMAN:  I think it was at the bottom of page 5, |
| 15 | sir. |
| 16 | MR. KAMARAJU:  Yes, your Honor. |
| 17 | THE COURT:  For reasons which are hard to explain, my |
| 18 | page 6 is your page 5. |
| 19 | MR. KAMARAJU:  It was question 8. |
| 20 | MR. BRAFMAN:  Let's get the number of the question so |
| 21 | that we are all on the same page. |
| 22 | MR. KAMARAJU:  It was question 8. |
| 23 | MR. BRAFMAN:  I think it is question 8, your Honor. |
| 24 | THE COURT:  Yes.  Before I get to that, I am just |
| 25 | looking in the transcript to see precisely where we ended up. |

H5pdzarh

1    And I think it may have been you, Mr. Brafman, who suggested --

2    I was suggesting that we stop pretty soon before we get to the

3    category called "The right to Conflict-Free Representation,"

4    and you suggested, and I thought it was a good one, that we

5    stop actually before asking question number 8, under the topic

6    "Potential Conflict of Interest Posed by Greenberg Traurig's

7    Representation of the Republic of Turkey."  Is that right?

8              MR. BRAFMAN:  Yes, sir.

9              THE COURT:  So let's turn, then, to Mr. Zarrab and ask

10   him to please tell me in your own words what your understanding

11   is of the potential conflicts of interest that arise in this

12   situation.  And by "this situation" we're talking particularly

13   about the Greenberg Traurig matter and that that firm is also

14   an agent of the Republic of Turkey, that is, Mr. Giuliani's

15   firm.

16             MR. DeVITA:  Your Honor, just so the record is

17   clear -- I think I explained this earlier -- that the

18   interpreter and I both spoke to Mr. Zarrab.  He has written out

19   in his own handwriting the answer to that question after

20   discussing it with me and through the interpreter.  So he is

21   going to read his answer, which is actually Turkish at this

22   time.

23             THE COURT:  Sure.

24             MR. DeVITA:  So the interpreter will --

25             THE COURT:  Interpret it into English for us.

H5pdzarh

1            MR. DeVITA:  Yes.

2            THE COURT:  Yes.  Sure.

3            THE DEFENDANT:  Your Honor, I understand that the

4    Greenberg firm represents the government of the Turkish

5    Republic.  In theory, the interests of the government of the

6    Turkish Republic and my interests could be different in

7    connection with this case.

8            Your Honor, I do understand the conflict of interest

9    statute explained to me.  In theory, if those interests and

10   conflicts, some actions that are taken in the court that might

11   help me might harm the government of Turkish Republic and some,

12   in theory, some actions that help the government of the Turkish

13   Republic might harm me.

14           And, in addition, I do waive all my rights according

15   to this subject.

16           THE COURT:  If there were such conflicting situations,

17   right?

18           THE DEFENDANT:  If there were a potential conflict of

19   interest.  Yes.

20           THE COURT:  OK.  And then the next question to you is,

21   do you understand that the greatest danger may be in the

22   inability to foresee all of the potential conflicts that might

23   arise because of Greenberg Traurig's simultaneous

24   representation of the government of Turkey on the one hand and

25   the firm's representation of you on the other hand?

H5pdzarh

1          THE DEFENDANT:  I understand, your Honor.

2          THE COURT:  OK.  And then the final section relates

3   to -- it is called D -- Section D in these submissions.  It is

4   entitled, "The Right to Conflict-Free Representation."

5          And the first question in that category is:  Do you

6   understand that in every criminal case, including this one, the

7   defendant or defendants is entitled to assistance of counsel

8   whose loyalty to him is undivided, who is not subject to any

9   factor that might in any way intrude upon an attorney's loyalty

10  to his defendant's interests?  Do you understand that?

11         THE DEFENDANT:  I understand.

12         THE COURT:  Another way of saying that is do you

13  understand that you are entitled to attorneys who have only

14  your interests in mind and not the interests of any other

15  client?

16         THE DEFENDANT:  I understand.

17         THE COURT:  And next question is:  Have you received

18  any inducements or promises or threats with regard to your

19  choice of counsel in this case?

20         THE DEFENDANT:  No.

21         THE COURT:  Next question is:  Do you understand that

22  you have a right to consult with an attorney free from any

23  conflict of interest about the issues and that the Court has

24  given you an opportunity to do just that, to discuss all

25  aspects of the information that I have conveyed to you today,

H5pdzarh

1    in particular, with Mr. DeVita?

2            THE DEFENDANT:  Yes, I understand that.  I had a

3    chance to talk four times with Attorney DeVita and also many

4    times with Attorney Brafman and also with Mr. Ferrari.

5            THE COURT:  So that is my next question.  Have you

6    consulted with any attorneys other than Mr. Giuliani or

7    Mr. Brafman about the dangers to you of these potential

8    conflicts of interest -- I'm sorry.  Have you consulted with

9    any attorneys other than Mr. Giuliani or Mr. Mukasey about the

10   dangers to you of these potential conflicts of interest and,

11   for example, Mr. Brafman or Mr. DeVita and/or Mr. Ferrari?

12           THE DEFENDANT:  Yes.  As I told you before, I had the

13   chance to talk to them, to talk to all three of them before.

14           THE COURT:  OK.  So here this is another question that

15   is going to be somewhat repetitive but it is worth doing.

16           Have you consulted with independent counsel,

17   Mr. DeVita, about the conflicts or potential conflicts of

18   interest that I have described to you today?

19           THE DEFENDANT:  Yes, your Honor.  I had the chance to

20   talk to the court-appointed attorney about this subject.

21           THE COURT:  And has he fully advised you about these

22   matters?

23           THE DEFENDANT:  Yes.  I believe that he has explained

24   everything from all different aspects.

25           THE COURT:  And do you wish or do you need to have any

H5pdzarh

1    additional time to consult with independent counsel about these

2    matters?

3          THE DEFENDANT:  I believe that there is no further

4    information they can give us.  I believe that is sufficient.

5          THE COURT:  And after considering all that we've

6    discussed today and that we discussed on May 2nd about the ways

7    in which Greenberg Traurig's representation of, first of all,

8    the banks alleged to be victims in your case may adversely

9    affect your defense, do you believe that it is in your best

10   interest to continue with Greenberg Traurig as one of the law

11   firms representing you?

12         THE DEFENDANT:  Definitely, yes.

13         THE COURT:  Is that your wish to do that?

14         THE DEFENDANT:  (In English) Yes.

15         THE COURT:  And after considering all that I have

16   discussed with you today and that we discussed on May 2nd about

17   the ways in which Greenberg Traurig's representation of the

18   government of Turkey may adversely affect your defense, do you

19   believe that it is in your best interest to continue with

20   Greenberg Traurig as one of the law firms representing you?

21         THE DEFENDANT:  Definitely, yes.

22         THE COURT:  And is that your wish?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  And turning now to Debevoise.

25         After considering all that I have said to you today

H5pdzarh

1   and that we discussed on May 2nd about the ways in which

2   Debevoise & Plimpton's representation of the banks alleged to

3   be victims in your case may adversely affect your defense, do

4   you believe that it is in your best interest to continue with

5   Debevoise & Plimpton as one of the law firms representing you?

6           THE DEFENDANT:  Definitely, yes.

7           THE COURT:  And is that your wish?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  And do you understand that by choosing to

10   continue with both Greenberg Traurig and Debevoise & Plimpton

11   as two of the law firms representing you, you are waiving your

12   right to be represented solely by attorneys who have no

13   conflict of interest?

14           THE DEFENDANT:  (In English)  Yes, I understand.

15           THE COURT:  And are you also knowingly and voluntarily

16   waiving your right to conflict-free representation from those

17   firms?

18           THE DEFENDANT:  (In English)  Yes.

19           THE COURT:  Do you also waive any potential

20   post-conviction argument, assuming that you were convicted in

21   this case, on appeal or otherwise, that by virtue of Greenberg

22   Traurig's representation of banks alleged to be victims in this

23   case you were denied effective assistance of counsel?

24           THE DEFENDANT:  (In English)  Yes.

25           THE COURT:  And do you waive any post-conviction

H5pdzarh

argument, on appeal or otherwise, that by virtue of Greenberg

Traurig's representation of the government of Turkey you were

denied effective assistance of counsel?

THE DEFENDANT:  (In English)  Yes.

THE COURT:  And do you waive any post-conviction

argument, on appeal or otherwise, that by virtue of Debevoise &

Plimpton's representation of banks alleged to be victims in

this case, you were denied effective assistance of counsel?

THE DEFENDANT:  (In English)  Yes.

THE COURT:  Is there any matter from today or

May 2nd or otherwise that I have discussed with you that you

wish to have explained further?

THE DEFENDANT:  No, your Honor.  Thank you so much for

the opportunity for me to get more informed with additional

consulting from the attorneys that you assigned.

THE COURT:  You are very welcome.

So is the government satisfied with the questions that

have been presented in this Curcio proceeding?

MR. KAMARAJU:  Yes, your Honor.

THE COURT:  And how about the defense?

MR. BRAFMAN:  Yes, your Honor.  On balance, given the

collective questions asked by the Court at the various

proceedings, I think this has been perhaps the most thorough

Curcio proceeding I've ever been involved in.  And I think the

defendant has acknowledged, after consultation with independent

H5pdzarh

```
 1   counsel on several occasions, that he understands the nature of

 2   the inquiry and has intelligently waived any right on the

 3   post-conviction appeal that would relate to this issue.

 4               THE COURT:  Just for the record, my recollection is

 5   that you said also something similar after the Kirkland & Ellis

 6   Curcio hearing.

 7               MR. BRAFMAN:  Well, you know --

 8               THE COURT:  I mean that seriously.

 9               MR. BRAFMAN:  No.  I stand by my statement.

10   Collectively, I began, that between the Kirkland & Ellis

11   proceeding and this proceeding, I'm not sure any defendant has

12   ever answered questions more thoroughly about potential

13   conflicts.  I think, as a practical matter, for legal and

14   factual reasons, that issue is hopefully removed from the case.

15   I'm not, you know, prejudging how your Honor will rule.

16               THE COURT:  Right.

17               MR. BRAFMAN:  But I also want to point out that, your

18   Honor, in response to the government's May 22nd letter, they

19   raised issues that I don't believe relate strictly to Curcio

20   and, therefore, I did not choose to respond.  I think it would

21   be premature for me to respond.  And I think I might also not

22   be the appropriate party to respond, and hopefully you will

23   never have to reach that point.  So I don't want to burden the

24   Court or myself, quite frankly, with writing briefs on these

25   issues.
```

H5pdzarh

1    Your Honor, finally, unless the Court has other

2    questions, I'm aware from speaking with Mr. Vic Rocco, who

3    represents Ms. Atilla, that the Court has set October 25th as

4    the trial date --

5    THE COURT:  October 30th.

6    MR. BRAFMAN:  I'm sorry.  October 30th as the trial

7    date.  I'm also aware, from speaking to Mr. Rocco and from

8    reviewing his statements to the Court, that on or before

9    June 12th, which is the next appearance for him and his client,

10   he will advise the Court as to whether it is possible or

11   impossible for him to be ready by the 30th, and he has

12   informally suggested to me that he may be requesting additional

13   time and asked me what my position would be.

14   Your Honor, I have a 14-month head start or a year

15   head start on his representation.  I am aware of the volume of

16   material.  So to the extent that on the 12th we will not be

17   present, if the subject arises -- I have discussed this with

18   Mr. Reza -- he thinks it's in his best interest to agree to an

19   adjournment if in fact that's what Mr. Atilla requires.  And if

20   your Honor requires me to submit something in writing after the

21   June 12th hearing, I will do that.

22   THE COURT:  You don't need to.  I am eager to meet

23   that date, if at all possible.  So I do look forward to

24   discussing that with Mr. Rocco.

25   MR. BRAFMAN:  I'm holding that date until relieved by

H5pdzarh

1    your Honor.

2              THE COURT:  Great.  So that's great.

3              So are there any matters that you want to -- how about

4    the government?  Did you want to raise anything further today?

5              MR. KAMARAJU:  I think just a housekeeping matter.  At

6    the last conference with respect to Mr. Atilla, the Court

7    excluded time until the date of the new trial date,

8    October 30th.  So just for purposes of the record, we'd ask

9    that you also exclude time until October 30th with respect to

10   this defendant.

11             MR. BRAFMAN:  There is no objection, your Honor.

12             THE COURT:  OK.  So let me do that.

13             And let me find, under 18 United States Code, Section

14   3161, that the request for adjournment by both sides is

15   appropriate and warrants exclusion of the adjourned time from

16   speedy trial calculations to and including October 30, 2017.  I

17   further find that the exclusion is designed to prevent any

18   possible miscarriage of justice, to facilitate these

19   proceedings, including pretrial preparation, and to guarantee

20   effective representation of and preparation by counsel for all

21   parties -- both parties.  Thus, the need for exclusion and the

22   ends of justice outweigh the interests of the public and the

23   defendant in a speedy trial pursuant to 18 U.S.C., Section

24   3161(h)(7)(A) and (B).

25             I don't think there is any short-term conference

H5pdzarh

1    scheduled.  I don't see the need for one unless -- but you

2    should know that I'm always available if anybody wants one.

3    And if I feel we need to have a conference, I'll give you

4    advance notice.

5              MR. BRAFMAN:  Thank you.

6              Can the record reflect and can the government make

7    certain not to produce Mr. Zarrab on the 12th because we are

8    not needed and we waive our appearance for that proceeding?

9    Producing him in his present condition is a great hardship

10   because they bring him in very early and sometimes he has to be

11   here all day.

12             THE COURT:  I see no need for him to be here on the

13   12th.

14             MR. KAMARAJU:  We won't produce him, your Honor.

15             MR. BRAFMAN:  Thank you, sir.

16             THE COURT:  OK.  I think that's it for today, then.

17   Good to see you all.

18             MR. BRAFMAN:  Thank you, your Honor.

19             MR. KAMARAJU:  Thank you very much.

20

21                            -   -   -

22

23

24

25