H9P9ZARC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA,
3
            v.                              15 CR 867 (RMB)
4
   REZA ZARRAB,
5
                    Defendant.
6  ------------------------------x

7                                          New York, N.Y.
                                           September 25, 2017
8                                          12:22 p.m.

9  Before:

10                 HON. RICHARD M. BERMAN

11                                         District Judge

12                        APPEARANCES

13
   JOON H. KIM
14      Acting United States Attorney for the
        Southern District of New York
15 MICHAEL LOCKARD
   SID KAMARAJU
16 DAVID DENTON
   DEAN CONSTANTINE SOVOLOS
17      Assistant United States Attorneys

18 BRAFMAN & ASSOCIATES, PC
        Attorney for Defendant Reza Zarrab
19 BENJAMIN BRAFMAN

20 HERRICK, FEINSTEIN LLP
        Attorney for Defendant Mehmet Hakan Atilla
21 BY:  VICTOR J. ROCCO

22 CATHY FLEMING
        Attorney for Defendant Mehmet Hakan Atilla
23
   ALSO PRESENT:
24 JENNIFER MCREYNOLDS, FBI
   MICHAEL CHANG FRIEDAN, Paralegal, United States Attorneys
25 ASIYE KAY and SEYHAN SIRTALAN, Turkish Language Interpreters

1           (In open court)

2           THE COURT:  Nice to see you, Mr. Rocco.

3           MR. ROCCO:  Thank you, your Honor.  It's nice seeing

4    you.

5           THE COURT:  So I've been looking carefully in the mail

6    for the last couple of days and I was looking for that big

7    stipulation which resolved all the issues that we were supposed

8    to talk about today but either I missed it or it wasn't sent,

9    so.

10          MR. ROCCO:  Your Honor, if --

11          THE COURT:  Hold on one second.  I'm just going to

12   mention that we have Turkish language interpreters and ask

13   Mr. Zarrab and Mr. Atilla if they're able to understand these

14   proceedings with the help of the interpreters.

15          DEFENDANT ZARRAB:  Yes, your Honor.

16          DEFENDANT ATILLA:  Yes, your Honor.

17          MR. ROCCO:  Your Honor, I think the problem -- this

18   is, hopefully, my first full week back to work.  I think the

19   problem emanates from discussions we've been having with our

20   client that it has led to the delay.  The government has been

21   punctual.

22          Given what happened to me this summer and given the

23   superseding indictment, it was our intention to come in to the

24   court and to request some additional time to prepare for trial

25   and our client has authorized us to make a request to

1  November 27, which is roughly a 28- or 29-day extension in

2  light of those events, Judge.

3          I was out six weeks.  I was virtually no help to the

4  defense in preparing this case for trial.  Ms. Fleming tried to

5  take over.

6          THE COURT:  She did a very good job, by the way.

7          MR. ROCCO:  She did a yeoman job, and I was happy to

8  let her start this morning but I felt that I should take

9  responsibility for the fact that your Honor didn't get what he

10  expected and I apologize for that.

11          We resolved it with our client.  We've informed the

12  government.  The government will state what its position is but

13  we respectfully request 28 days until the 27th of November.

14          THE COURT:  So maybe I'll just hear everybody out

15  today.  Did you all agree on that?  Or is this the first time

16  people are hearing that?

17          MR. LOCKARD:  Your Honor, we did speak briefly before

18  the conference about the request that Mr. Rocco just made to

19  the Court.  I think the government's position is we do think

20  that the current date provides ample opportunity for

21  preparation for trial.  Obviously any issues occasioned by

22  Mr. Rocco's unavailability is something that we, the

23  government, are not in a position to speak to or take any kind

24  of a position on.

25          If the Court does grant the adjournment request, we do

1    think that November 27 is an appropriate start date, and we

2    have some thoughts in mind about how to schedule the pretrial

3    proceedings, including the motion schedules, so that that date

4    not only is a good date to start after Thanksgiving but will

5    conclude in advance of the Christmas and New Year holidays.

6          THE COURT:  Setting aside, what, four weeks?

7          MR. LOCKARD:  Yes, your Honor.  And that's based in

8    part, as we have gotten closer to trial, the government's

9    estimates of trial length typically sharpens.  That has

10   happened in this case as well.  And it is currently the

11   government's estimate that the government's case in chief,

12   including things like reasonable time for jury selection,

13   reasonable time for cross-examination and jury addresses, the

14   government's case would last less than three weeks, which would

15   then give a week for the defense cases, if there are any, jury

16   instructions, and deliberations.

17         THE COURT:  Mr. Brafman.

18         MR. BRAFMAN:  Your Honor, if I thought that by

19   sticking to the October 30 date I would get a severance I would

20   be a stickler for the October 30 date.  But given Mr. Rocco's

21   condition for several weeks, which I'm glad to see him here

22   today as well, I would agree to a November 27 date for

23   Mr. Zarrab and we would waive speedy trial between now and

24   then.

25         MR. ROCCO:  As we would be authorized to do as well,

1  your Honor.

2  　　　　THE COURT:  Now, I'm sorry.  Before we -- so that's

3  the trial date.  What motions -- in other words, if I had a

4  trial date, let's say it's that date, so usually somewhere

5  around 30 days before that we would ask for motions in limine,

6  joint jury instructions, joint verdict sheet, motions in limine

7  being the most substantive, joint jury instructions, joint

8  verdict sheet, list of names and places for the voir dire, and

9  that would -- I'm going to get more precise looking at the

10  calendar but that would be the end of October sometime or

11  maybe -- maybe the very beginning of November.  But are you

12  contemplating additional motions apart from the motions in

13  limine?

14  　　　　MR. ROCCO:  Actually, Judge, if I may, we have -- we

15  don't intend to repeat our motions to dismiss, though we do

16  have a motion to dismiss, and I think it's primarily the result

17  of the way the government has reconfigured the case, their

18  elaboration of various of their theories of the regs and the

19  statutory authority.  We don't intend to duplicate what we've

20  done before at all.  We do have a motion to dismiss.  I think

21  that the end of October is certainly -- actually I think we

22  could do it by the middle of October.  I might ask the Court

23  for October 21.  If that's pushing it for your Honor, we'd peel

24  it back a week.  But we would do our best to get it in by the

25  second or third week of October.  It's not going to be lengthy

1    but I think it's going to be helpful to the Court and I think

2    it will help shape the case as we go forward as well.

3             THE COURT:  So, it would be -- I don't think you can

4    easily just say we incorporate our motion to dismiss that's

5    already filed.  It will be --

6             MR. ROCCO:  A new motion.

7             THE COURT:  I'll vacate that motion without prejudice

8    and it will be a new motion because there are new counts, new

9    defendants, etc.  That would be easier.

10            MR. ROCCO:  Yes.

11            THE COURT:  How long would it take the government to

12   respond?

13            MR. LOCKARD:  I think, your Honor, it would be helpful

14   for both the parties, and I think also the Court, our

15   suggestion would be if Mr. Rocco's new motion were filed

16   October 16 which would be halfway through October, the

17   government could file its opposition within a week on the

18   23rd, and then assuming one week for a reply, then the case

19   would be -- the motion would be submitted by the end of

20   October, October 30.  That would be our proposal.

21            THE COURT:  So let's talk for a minute.  So here is

22   what I'm going to do.  I'm not going to resolve the dates

23   today.  I'm going to think about it for after we break up and

24   issue an order which will have all the dates, and I'll be

25   comfortable I haven't missed anything, but I will try to

1    accommodate everybody's interests as expressed in that order.

2         Let's just talk for a moment about the immediate

3    pretrial submissions.  Let's assume we're beyond the motion to

4    dismiss.  So, as I say, we'll need motions in limine usually

5    whatever date we put in the order, the reply -- the response to

6    the motion in limine would be a week later, and there would not

7    be a reply.  So it would be a week and a week for motions in

8    limine.

9         Then the joint jury instructions works this way.  And

10   they would be due the same day, whatever date we select as the

11   motions in limine.  The government would do a draft of the

12   proposed jury instructions in the case and get that draft to

13   the defense counsel at least a week or two before the date for

14   submission.  If the defense agrees, for example, with the

15   draft, no problem, they just -- that's the instruction we would

16   use.  Incidentally, in drafting the jury instructions I would

17   appreciate if you use the so-called boilerplate instructions

18   that I typically use.  You either have or we'll give you a copy

19   of our typical instructions.  If there is disagreement, we ask

20   the defense to note on the same document what the legal

21   objection is and what the proposed alternative motion is to the

22   one to which they object.

23        The same is true with the joint verdict sheet.

24   Government will take the first draft.  Defense agrees, fine.

25   Defense has an objection, same procedure.  Note the alternative

1    jury instruction that you propose.

2         Also a list of names and places.  This is typically

3    more for the burden for the government than the defense, but

4    the defense to have names and places that they anticipate are

5    going to come up in the trial, different from the government's

6    list, just the time to add that as well.

7         And then typically I would say after that, those

8    submissions, that the parties are directed not to make

9    additional submissions in the interim between then and the

10   trial.

11         MR. ROCCO:  Your Honor, may I ask?  How about

12   proceeded voir dire?

13         THE COURT:  Sure.  Questions.  Yes.  That is the time.

14   Sure.  I forgot that.  That is the time for proposed questions.

15   I think that covers pretty much everything.

16         MR. ROCCO:  Judge, we have a couple more.

17         THE COURT:  Sure.

18         MS. FLEMING:  Your Honor, I had alluded to a couple of

19   very unusual things we have.  We may have some -- we'll try to

20   work this out with the government.  We spoke with them -- I

21   spoke with them last week.  I hope I kept them appraised

22   adequately of what we were doing, and we do shoulder the

23   responsibility for your Honor not having a submission.  But we

24   do have some unusual aspects to this case.  But there are a

25   couple things I want to raise with the Court.

1      The first is that we've made requests, for example,

2  for bills of particular and for some discovery.  We have not

3  burdened the Court with any motions on that.  If we can't work

4  it out with the government, there may well be burdensome

5  motions to the Court related to those.

6      THE COURT:  I'm sure it's possible.  My practice is

7  that to get the parties to work those things out.  I'm not sure

8  I've ever had to -- I have an application pending, but never

9  needed a bill of particulars or even a motion but, you know.

10  And you could call us and we could give you an interim

11  conference to see if we could help you resolve that.  Okay.

12      MS. FLEMING:  There's a second one -- this case is

13  unusual in that all of the events took place in Turkey, at

14  least from our perspective of our client.  And as I've alerted

15  the Court, we've made one trip to Turkey to do some factual

16  research.  We're about to make another trip.  And we would

17  anticipate that -- we would anticipate some Rule 15 depositions

18  that we will be having to schedule sometime before trial and

19  also anticipate that if things come up at trial that we have to

20  respond to in the defense case, that we are going to have to

21  have some sort of mechanism during the trial to do live

22  testimony that will have to be by video conference since it's

23  going to be difficult to have the government go there.  They

24  won't go there.  And people from Turkey won't come here.  And

25  we're making a proposal on how the logistics of that work, but

1    that's just an unusual thing.  It has happened in other courts

2    but I want to alert the Court to that because it's unusual.

3           THE COURT:  You're saying -- you're positing a

4    situation where the witnesses would not come to the United

5    States voluntarily, I guess?

6           MS. FLEMING:  That's correct.  And there is no

7    subpoena power, obviously, over them.  But they would be

8    willing to testify via video live.  And they could be in the

9    court and they could be cross-examined, etc.

10          THE COURT:  It's a little awkward but why don't you

11   talk to the government and see how they would propose to --

12          MS. FLEMING:  There are -- along with that -- and

13   again, the timing, because we have a short -- this is a short

14   schedule.  The client is incarcerated.  It makes it incredibly

15   difficult to try to do this.

16          THE COURT:  I appreciate that.  Let me ask you a

17   question before you go further.

18          So you all -- Mr. Rocco, you propose a 28-day delay.

19   Does that give you enough time to do all this stuff or not?  I

20   mean there is no point in --

21          MR. ROCCO:  Your Honor, we're not trying to stage

22   this.

23          THE COURT:  I know you're not, but are you --

24          MR. ROCCO:  We want to come back and ask the Court for

25   more time.  As your Honor is aware, from the very inception of

these proceedings Mr. Hakan has been intent on clearing his

name and getting this trial over with.  So it has taken us --

negotiations, protracted negotiations with our client -- now

I'm not telling tales out of school -- to have Mr. Hakan agree

to this extension.  We are going to try our damndest.  I think

that a lot of what we can do -- if we need to come back for a

401, we will, but I don't think that that's going to be

necessary, Judge.  We will do our best, our earnest best to do

everything that we can and get done informally.  If we can have

witnesses, if there are witnesses, like a records custodian

that we can get to come to the United States, we will try to

avoid a Rule 15 deposition.  I think the way we propose -- we

hope it will operate -- will be that the people we want to talk

to are available to us, want to interview are available to us

and the government, these Rule 15 depositions on an informal

basis, and we don't have to make a specific request for the

information.  That's our earnest hope.  And we may find

ourselves in the position where, if we don't have the time to

do it, that your Honor has our feet to the fire and you say

it's too late.  We thought long and hard about the length of

this proposed -- this proposed delay and why we were making the

request, understanding that Mr. Atilla has been in jail now

five, almost six months.  It's been very difficult on him.  And

we have an obligation, consistent with our professional

responsibilities to prepare an adequate defense and provide him

1    with a robust defense, to get this over with.

2              THE COURT:  The only thing I want to say is when I go

3    back and finalize this schedule, if I can accommodate it, I

4    will.  If I feel that it has to be a little bit later, I will

5    do that too.

6              MR. ROCCO:  We will do our utmost best to get

7    everything done.

8              THE COURT:  Within that timeframe.

9              MR. ROCCO:  In that timeframe.

10             Your Honor, that's why we proposed it.

11             THE COURT:  I got it.

12             MS. FLEMING:  That leads into my next groveling, which

13   is one of my skills as a lawyer, groveling, which is that it

14   would really help us, and again with whatever strictures of

15   protective order necessary, it would help us a great deal,

16   particularly if we go to Turkey, to get whatever help that

17   would usually come right before trial earlier, such as Jencks

18   materials, or who the witnesses are so that we are not stuck in

19   a situation where we get Jencks materials one week before trial

20   or after we have Rule 15 depositions and have taken them and

21   now we get Jencks materials and we have to either recall

22   witnesses or go through hoops again to try and get factual

23   witnesses.

24             And I understand that's an extremely unusual request,

25   your Honor, but I'm really trying to streamline this.  It's the

1    kind of thing that we really need to be able to do the

2    witnesses once and the fact gathering and the preparation once.

3    And it's going to take a lot of cooperation.

4         I understand the government's concerns and I

5    understand their rights under the Jencks Act and the like.  But

6    this is such an unusual situation, we're willing to live with

7    protective orders and the rest, so that we're not running up

8    against time and we're saying now we have to go back and redo

9    the witnesses.

10        I don't like the idea of even doing defense witnesses

11   before a trial.  It bothers me to have to take any defense

12   witnesses out of order.  It should really come after the

13   government has presented its entire case.  But that's something

14   we have to live with, with some of our Rule 15 witnesses.

15        So it strikes me the other side of the fairness point

16   is the government should have to at least try to help us with

17   that as well.  And if they have legitimate concerns about

18   fronting who their witnesses or the rest, we can live with

19   protective orders, which we have lived with the ones in place

20   already, as the Court knows, we have filed under seal,

21   complying with that, and we will do that to make sure that we

22   do not upset their applecart on Jencks materials.

23        MR. ROCCO:  Your Honor, if I may just simply.  I've

24   done this a number of times.  The risk of Rule 15 depositions,

25   the witnesses that we don't call.  We understand there's a

1   countervailing advantage to the government in cooperating in

2   the process.  And we're not hiding the ball here.  We're

3   prepared to be upfront with the government, give as much notice

4   as we possibly can.  We're going to continue to do our

5   interviews.  Once we have witnesses identified, we're going to

6   notify the government and tell the government how the witnesses

7   will be made available.

8           I understand there's a travel restriction.  The

9   prosecutors can't travel to Turkey.  I'm not going to address

10  that.  Quite frankly, they can do depositions.  We have no

11  objection, obviously, to their participating by way of video

12  conference.  So whatever we need to make it work.

13          THE COURT:  Travel some place other than Turkey where

14  a deposition can be taken, for example?

15          MR. LOCKARD:  Your Honor, it strikes me that there is

16  a lot of discussion about requests that haven't been made and

17  witnesses who haven't been identified.  As the Court knows, it

18  is not actually unusual to have overseas witnesses.  This court

19  and this district deal with Rule 15 deposition issues

20  relatively frequently.  So there are certain standards to be

21  met to trigger that procedure.  It depends on who these

22  witnesses are.  We don't know who they are.  And depends on why

23  they can't travel.  We don't know why they can't travel.  And

24  if there are reasonable accommodations that can be made on a

25  voluntary basis, we just don't know that.

H9P9ZARC

1        THE COURT:  Okay.  So will -- did you have anything

2   else?

3        MS. FLEMING:  Your Honor, just another issue that we

4   think may take -- again, we'll work with the government.  I

5   just don't want to surprise the Court down the road.  We've

6   been translating a great deal of Turkish material into English,

7   the bulk of it is in Turkish, and we have some disagreements on

8   transcripts.  We'll try to work it out with the government.

9   But that may become an issue.  There may be a battle of the

10  experts or the like on transcripts.  I'm just alerting the

11  Court.

12       MR. ROCCO:  Your Honor, I actually thought that was

13  encompassed in the motions in limine, that we would -- but

14  that -- if the government doesn't know it, we're certainly

15  telling them, we have problems with the draft transcripts that

16  they gave.  We know they're not final transcripts and, by the

17  way, that raises the collateral issue -- whether the government

18  is in the position to give us more definitive versions of their

19  transcripts, transcripts that they intend to offer at trial.

20       THE COURT:  I think it would behoove you, defense

21  counsel, to sit with the government and try and thresh these

22  issues out.  We've faced them before and successfully, in fact.

23       So let's deal with this speedy trial issue first.  I'm

24  going to exclude time until the -- Mr. Rocco's proposed trial

25  commencement date of November 27 and find under 18 United

1    States Code Section 3161 that the request for adjournment,

2    joined in by all parties, is appropriate and warrants exclusion

3    of the adjourned time from speedy trial calculations.  I

4    further find that the exclusion is designed to prevent any

5    possible miscarriage of justice, to facilitate these

6    proceedings, including pretrial preparation, and to guarantee

7    effective representation of and preparation by counsel for all

8    parties; and, thus, the need for exclusion and the ends of

9    justice outweigh the interests of the public and the defendant

10   in a speedy trial pursuant to 18 United States Code Section

11   3161(h)(7)(A) and (B).

12           And let me give you one more thought.  In the order

13   that I prepare there will also be a final pretrial conference.

14   There is no point in setting that right now because I'm not

15   sure exactly where the dates are all going to fall.  But so,

16   heads-up, there will be a conference.  It's usually a week, ten

17   days before the trial.

18           MR. BRAFMAN:  Your Honor, I asked this the last time

19   and I thought it maybe was premature but can I assume as a

20   practical matter that the October trial date which previously

21   had been set is no longer in order?

22           THE COURT:  You can now.

23           MR. BRAFMAN:  Thank you.

24           THE COURT:  You can as a result of today's conference.

25           MR. BRAFMAN:  Thank you, sir.

1          THE COURT:  Notwithstanding we don't -- you can assume

2    for purposes of planning that it won't be before November 27

3    but can't be certain yet that it will be November 27.

4          MR. BRAFMAN:  Thank you, Judge.

5          MR. ROCCO:  Your Honor, may we approach at sidebar on

6    an issue that -- it's not going to come as a surprise to the

7    government but it relates to Mr. Atilla's health and rather

8    than airing it in open court we'd like to do it privately if

9    the Court is comfortable doing it.

10          THE COURT:  Well can you discuss it with the

11    government?

12          MR. ROCCO:  Sure.

13          THE COURT:  Let me know if there is an application.

14          MR. ROCCO:  Sure.  I figured while we were here and

15    it's something -- it's actually a fresh issue and fresh in my

16    mind, I thought we'd discuss it today with the Court.

17          THE COURT:  See if --

18          MR. ROCCO:  Yes.  Thank you, Judge.

19          THE COURT:  If that won't be helpful, and then let me

20    know, I'll do whatever I can to be of help.

21          Mr. Lockard.

22          MR. LOCKARD:  Yes, your Honor.  I know the Court has

23    its own calendar to consult in order to make an assessment

24    about appropriate dates as we move towards a trial date, but I

25    just want to make clear that the government does think that

1  November 27 or a date very close to that not only would be

2  appropriate to address the concerns that have been raised by

3  defense counsel but we also think that that is an appropriate

4  sort of a date in the sense that a longer adjournment we think

5  would impact important considerations like the public interest

6  in a speedy and public trial in this matter.  You know, we

7  have, in discussions with defense counsel, we have tried to

8  make ourselves as available as possible to discuss these

9  issues, to iron them out as early as possible.  In anticipation

10 of predicting what kind of an adjournment they might request,

11 we did go back to confirm availability of the government's

12 witnesses in that late November, early to mid-December

13 timeframe, and we just don't know what will happen to witness

14 availability going forward beyond that.  So we would -- we

15 would urge a trial date be set in that frame so that we can

16 commence trial and complete trial before the end of 2017.

17         THE COURT:  I understand.  So the 27th is the Monday

18 following Thanksgiving, right?

19         MR. LOCKARD:  It is, your Honor.  And, you know, we

20 can propose additional mechanisms to help alleviate the trial

21 pressure, including things like ways to speed jury selection or

22 select a jury in advance.  But we're quite confident that trial

23 could be completed within that window between Thanksgiving and

24 the end of the year.

25         THE COURT:  That is, of course, an obvious

1   consideration.  If you start on the 27th, Christmas is

2   approximately a month away on the 25th.  So the real issue is

3   whether this all can be concluded within that span

4   realistically.

5          I do think, incidentally, that the current trial date

6   needs to be -- does need to be adjusted, Mr. Brafman, because

7   of several concerns, including Mr. Rocco's absence and the

8   superseding indictment.  So I do think there needs to be some

9   adjustment to the trial date.  And I'll see what I can come up

10  with and hopefully put it out today or tomorrow.

11         MR. LOCKARD:  Thank you, your Honor.

12         THE COURT:  Anybody anything else?

13         MR. ROCCO:  Thank you, your Honor.

14         THE COURT:  Nice to see you all.

15         Let me just, it's on my mind, I'm sure you've thought

16  about it.  So the prospect was raised by Ms. Fleming of

17  testimony by video, I guess live testimony by video.  I've not

18  had to do that.  I know it's doable.

19         MR. BRAFMAN:  Your Honor, I note that defendants are

20  not in the courtroom.  I would waive Mr. Zarrab's presence.

21         MR. ROCCO:  As I would waive Mr. Atilla's presence.

22         THE COURT:  So what I have done in more instances is

23  to have video depositions that the parties have taken, both

24  parties being present, and utilize those video depositions or

25  portions thereof in court here.  Inevitably with live video

H9P9ZARC

1    there seem to be technical difficulties, etc., hard for the

2    jury to participate, frankly, in the back and forth.  So I know

3    you'll bear that in mind in your conversations.  Thanks a lot.

4           (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25